## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FILIP TECHNOLOGIES, INC., *et al.*,[1] | Case No. 16-12192 (KG) |
| Debtors. | Jointly Administered |
| | **Hearing Date: October 24, 2016 at 10:00 a.m. (EDT)** |
| | **Re:  Docket Nos. 11, 27** |

### NOTICE OF FILING (I) STALKING HORSE AGREEMENT; (II) REVISED BIDDING PROCEDURES; (III) REVISED BIDDING PROCEDURES ORDER; AND (IV) PROPOSED SALE ORDER

**PLEASE TAKE NOTICE** that in connection with the Debtors' Motion for Orders (I)(A) Approving Bidding Procedures and Auction and (B) Scheduling Sale Hearing and Approving Notice Thereof; (II) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of All Liens, Claims, Encumbrances, and Other Interests; (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases; and (IV) Granting Related Relief [Docket No. 11] ("Bidding Procedures Motion"), Filip Technologies, Inc., and its affiliated debtors in the above-captioned chapter 11 cases, as debtors and debtors in possession (collectively, the "Debtors"), hereby file the Asset Purchase Agreement (the "Stalking Horse Agreement") entered into between the Debtors and Aricent Holdings Luxembourg S.à.r.l. (the "Stalking Horse Purchaser"), and certain documents related to the Bidding Procedures Motion as set forth immediately below.[2]

---

[1] The Debtors in these jointly administered cases are Filip Technologies, Inc. (Tax ID: 0660); Filip Technologies UK Ltd. (ID: 8339); Evado Filip AS (ID: 6131); Evado Filip Limited (ID: 7233); and Evado Filip US Ltd. (Tax Id: 3412).

[2] Capitalized terms used but not defined herein have the meanings ascribed in the Bidding Procedures Motion.

**PLEASE TAKE FURTHER NOTICE** that (i) the Stalking Horse Agreement is attached as **Exhibit A**; (ii) the revised Bidding Procedures are attached as **Exhibit B** (the "Proposed Bidding Procedures"); (iii) the revised proposed order approving the Bidding Procedures is attached as **Exhibit C** (the "Proposed Bidding Procedures Order"); and (iv) the revised proposed order approving the sale of substantially all of the Debtors' assets to the Stalking Horse Purchaser (as Successful Bidder) is attached as **Exhibit D** (the "Proposed Sale Order").

**PLEASE TAKE FURTHER NOTICE** that, pursuant to the Local Rules for the United States Bankruptcy for the District of Delaware (the "Local Rules"), certain key terms of the Stalking Horse Agreement are summarized below.

| Provision | Description of Provision |
|---|---|
| No-Shop/No-Solicitation<br><br>*Local Rule 6004-1(c)(i)(C)(1)* | The Proposed Bidding Procedures include the following:<br><br>*Following completion of the Auction, neither the Debtors nor their representatives shall initiate contact with, solicit or encourage submission or any inquiries, proposals or offers by, any person in connection with any sale or other disposition of the Assets.* |
| Bidding Increments<br><br>*Local Rule 6004-1(c)(i)(C)(3)* | The Proposed Bidding Procedures include the following :<br><br>*To constitute a Qualified Bid, a bid must, among other things, provide that the total cash consideration offered by such bidder under its Purchase Agreement exceeds the consideration offered by the Stalking Horse Bidder under the Stalking Horse Agreement plus the value of the Expense Reimbursement plus $25,000 (i.e., such total cash consideration offered by such bidder under its Purchase Agreement is at least $550,000) (the "Initial Overbid Requirement").*<br><br>*After the Bid Deadline, the Debtors, with the consent of the DIP Lender, shall determine which Qualified Bid or combination of Qualified Bids represents the then-highest or otherwise best bid for the Assets (the "Starting Qualified Bid"). The Auction shall commence with the Starting Qualified Bid and then proceed in minimum overbid increments of $25,000 (the "Overbid Increment"). Notwithstanding anything contained in the Stalking Horse Agreement or in the Bidding Procedures Order, the Debtors shall not be permitted to decrease the Overbid Increment unless and until the leading Qualified Bid at the Auction is* |

CHAR2\1844212v4

| Provision | Description of Provision |
|---|---|
| | *equal to or greater than $600,000. The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment.* |
| Purchase Price<br><br>*Local Rule 6004-1(b)(iv)* | *Subject to the provisions of Section 3.4 of the APA (Diligence), the aggregate consideration for the Acquired Assets shall be equal to (i) $475,000 in cash; plus (ii) the assumption of the Assumed Liabilities.*<br><br>See Section 3.1 of Stalking Horse Agreement. |
| Releases<br><br>*Local Rule 6004-1(b)(iv)(C)* | Paragraph 25 of the Proposed Sale Order contains the following release:<br><br>*Upon the occurrence of the Closing and to the fullest extent permissible under applicable law, (i) Mr. Jonathan Peachey, in Mr. Peachey's capacity as Chief Executive Officer and Chairman of the Board of Directors of Filip Technologies, Inc.; (ii) the Debtors; (iii) the DIP Lender and its affiliates; and (iv) the Successful Bidder, and any and all of each such party's (as applicable) officers, directors, respective employees, representatives, financial advisors, attorneys, or agents, acting in such capacity, or any of their successors and assigns (collectively, the "<u>Released Parties</u>"), (A) shall not have or incur any liability to, or be subject to any right of action by, and shall be deemed fully and finally released by, the Debtors, any holder of a claim against, or equity interest in, any of the Debtors or any other party in interest, or any of their respective employees, representatives, financial advisors, attorneys, or agents, acting in such capacity, or any of their successors and assigns, for any act or omission in connection with, related to or arising out of, the Debtors' chapter 11 cases, the operation of the Debtors' businesses during the chapter 11 cases, the formulation, preparation, negotiation, execution, delivery, implementation, or consummation of the transactions contemplated in the Prevailing APA, or any other act or omission in connection with the Debtors' bankruptcy on or prior to the Closing (collectively, the "<u>Released Matters</u>"); and (B) shall be deemed to be released from the Released Matters by the other Released Parties; <u>provided</u>, <u>however</u>, that this release shall not affect liability that otherwise would result from any act or omission by any Released Party to the extent determined by a final, non-appealable order by the Bankruptcy Court or another court with jurisdiction to have constituted fraud, gross negligence, or willful misconduct; and <u>provided</u>, <u>further</u>, that this paragraph 25 shall not release any of the Debtors or the Successful Bidder from its respective obligations under the Prevailing APA.* |

CHAR2\1844212v4

| Provision | Description of Provision |
|---|---|
| Closing Date<br><br>*Local Rule 6004-1(b)(iv)(E)* | *Not later than November 10, 2016, provided that all of the conditions to Closing set forth in Article 8 and Article 9 have been satisfied or waived, unless such date is extended by agreement of the Parties hereto (the "Closing Date").*<br><br>*See* Section 4.1 of Stalking Horse Agreement. |
| Good Faith Deposit<br><br>*Local Rule 6004-1(b)(iv)(F)* | *The Buyer will make a "Good Faith Deposit" of $47,500 (the "Escrow Deposit") within one (1) Business Day following the entry of the Bidding Procedures Order naming Buyer as stalking horse and in conformity with Section 7.4 hereof. The Escrow Deposit shall be governed by the terms of the Bidding Procedures Order and is refundable in accordance therewith.*<br><br>*See* Section 3.2 of Stalking Horse Agreement. |
| Record Retention<br><br>*Local Rule 6004-1(b)(iv)(J)* | *Following the Closing, for a period of the earlier of (i) two (2) years after the Closing Date and (ii) the date of entry of an order of the Bankruptcy Court closing the Bankruptcy Cases, or if converted to a case under chapter 7 of the Bankruptcy Code, an order of the Bankruptcy Court closing such case, each Party shall accord to the other Party and its representatives reasonable access to all of the books and records turned over to the Buyer by Sellers or retained by Sellers relating to the Acquired Assets and Assumed Liabilities for purposes related to taxes.*<br><br>*See* Section 7.10 of Stalking Horse Agreement. |
| Relief from Bankruptcy Rule 6004(h)<br><br>*Local Rule 6004-1(b)(iv)(O)* | *The Debtors seek relief from the stay requirements of Bankruptcy Rule 6004(h).* |

CHAR2\1844212v4

| Provision | Description of Provision |
|---|---|
| Break-Up/Topping Fees and Expense Reimbursement<br><br>*Local Rule 6004-1(b)(iv)(D), 6004-1(b)(iv)(G), 6004-1(c)(1)(C)(2) and 6004-1(c)(1)(C)(4)* | Sections 7.6 and 10.1(b) of the Stalking Horse Agreement provide that Buyer shall be entitled to expense reimbursement of $50,000 in the event the Stalking Horse Agreement is terminated (i) pursuant to 10.1(a)(2) (Material Breach by Sellers or Dismissal/Conversion of the Bankruptcy Cases), or 10.1(a)(5) (Alternative Bid); (ii) by Sellers pursuant to 10.1(a)(8) (failure to close by 11/10/16, provided that the Party seeking to terminate shall not be the cause of the delay or be in default of the Stalking Horse Agreement); or (iii) by Buyer pursuant to 10.1(a)(8) (failure to close by 1/7/17).<br><br>Section 7.6(b) of the Stalking Horse Agreement further provides:<br><br>*Subject to the Bidding Procedures Order, the claim of the Buyer in respect of the Termination Fee shall constitute a super-priority administrative expense claim, senior to all other administrative expense claims of the Debtors, as administrative expenses under sections 503 and 507(b) of the Bankruptcy Code in these chapter 11 cases and shall constitute a carve out from any and all Encumbrances on Acquired Assets (as such terms are defined in the Stalking Horse Agreement), including, without limitation, the DIP Facility (as such term is defined in the Stalking Horse Agreement), which carve out shall transfer to any and all Encumbrances on the proceeds thereof at the closing of an Alternative Transaction (as such term is defined in the Stalking Horse Agreement), and shall not be subject to any secured claim; provided, for the avoidance of doubt, the foregoing is not intended to nor shall it be deemed to undermine, impair, alter, or modify in any respect whatsoever the priority of the Professionals' Carve-Out as defined in the Financing Orders, or any other term or provision of the Financing Orders. If not otherwise paid, the Expense Reimbursement will be payable in first order of priority from the closing of an Alternative Transaction. Sellers acknowledge that the Termination Fee shall survive termination of this Agreement.* |

**PLEASE TAKE FURTHER NOTICE** that a hearing with respect to the Bidding Procedures Motion will be held before the Honorable Kevin Gross at the United States Bankruptcy Court for the District of Delaware, 824 Market Street, 6th Floor, Courtroom No. 3, Wilmington, Delaware 19801 on **October 24, 2016 at 10:00 a.m. (EDT)**, at which time the Debtors will seek approval of the Stalking Horse Agreement and the Proposed Bidding Procedures.

Dated: October 18, 2016
Wilmington, Delaware

**BIELLI & KLAUDER, LLC**

*/s/ David M. Klauder*
David M. Klauder (No. 5769)
Nella M. Bloom (No. 5430)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com
Email: nbloom@bk-legal.com
and

**MOORE & VAN ALLEN PLLC**

Zachary H. Smith (admitted *pro hac vice*)
Hillary B. Crabtree (admitted *pro hac vice*)
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 378-1909
Email: zacharysmith@mvalaw.com
Email: hillarycrabtree@mvalaw.com

*Proposed Counsel to the Debtors*
*and Debtors-In-Possession*

CHAR2\1844212v4