Ex. B

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

|  |  |
|---|---|
| In re: | Chapter 11 |
| FILIP TECHNOLOGIES, INC., *et al.*,[1] | Case No. 16-12192 (KG) |
| Debtors. | (Jointly Administered) |

## BIDDING PROCEDURES

By motion dated October 5, 2016 (the "**Motion**") filed by the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned cases (the "**Cases**") [Docket No. 11],[2] the Debtors sought approval of, among other things, the procedures through which they will determine the highest or otherwise best price for the sale of substantially all, or certain of, the assets owned by the Debtors (collectively, the "**Assets**") in one or more lots to one or more successful bidders.

On October 24, 2016, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order (the "**Bidding Procedures Order**") which, among other things, (i) authorized the Debtors to determine and select the highest or otherwise best bid for the Assets (the "**Successful Bid**") through the competitive bidding and auction process set forth below (the "**Bidding Procedures**"); and (ii) scheduled **November 8, 2016 at 2:00 p.m. (Prevailing Eastern Time)**, as the date and time that a hearing before the Court to consider the Debtors' request for approval of the Successful Bid will be held (the "**Sale Hearing**"). As set forth below and in the Motion, the Debtors reserve the right to modify the Bidding Procedures in accordance with the Bidding Procedures Order.

The sale will be subject to competitive bidding as set forth herein, and approval of the Court pursuant to sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101 *et seq.* (the "**Bankruptcy Code**").

**Assets to be Sold**

The Assets generally constitute substantially all of the assets owned by the Debtors. The Debtors are offering bidders the opportunity to bid on all and/or a subset(s) of the Assets (the "**Sale**").

**Stalking Horse Bidder and Expense Reimbursement**

Pursuant to the Bidding Procedures Order, the Court approved, among other things, the Debtors' selection of Aricent Holdings Luxembourg S.à.r.l. as the proposed stalking

---

[1]  The Debtors in these jointly administered cases are Filip Technologies, Inc. (Tax ID: 0660); Filip Technologies UK Ltd. (ID: 8339); Evado Filip AS (ID: 6131); Evado Filip Limited (ID: 7233); and Evado Filip US Ltd. (Tax Id: 3412).

[2]  Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

1

horse bidder for the Assets (the "**Stalking Horse Bidder**"), pursuant to that certain Asset Purchase Agreement by and among the Debtors and the Stalking Horse Bidder, dated as of October 18, 2016, and attached as an exhibit to the Bidding Procedures Order (the "**Stalking Horse Agreement**").  In the event that the Stalking Horse is not determined to be the Successful Bidder (defined below), the Stalking Horse is entitled to reimbursement of the reasonable and actual costs and expenses incurred by the Stalking Horse Bidder in connection with its Stalking Horse Bid (the "**Expense Reimbursement**") up to the capped amount of $50,000 as provided in and subject to the terms and conditions of the Stalking Horse Agreement and the Bidding Procedures Order.

**Participation Requirements**

In order to participate in the bidding process or otherwise be considered for any purpose hereunder, a person interested in entering into a Sale for some or all of the Assets (a "**Potential Bidder**") must first deliver an executed confidentiality agreement in form and substance satisfactory to the Debtors and their counsel.  A copy of the Debtors' proposed form of confidential agreement may be obtained by contacting Debtors' counsel at the contact information provided in the "Bid Deadline" section below.[3]

**Bid Requirements**

In order to participate in the bidding process and be deemed a "**Qualified Bidder**," a Potential Bidder must submit a "**Qualified Bid**" by **November 4, 2016, at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline")**.  The Debtors, with the consent of the DIP Lender, shall make a determination regarding whether a bid is a Qualified Bid and shall notify bidders whether their bids have been determined to be Qualified Bids by no later than **5:00 p.m. (New York Time) on November 5, 2016**.  For the avoidance of doubt, the Stalking Horse Bidder on account of the Stalking Horse Agreement is a Qualified Bidder and, subject to the Stalking Horse Bidder's submission of the Minimum Deposit in accordance with the Stalking Horse Agreement, the Stalking Horse Agreement is a Qualified Bid.  The Debtors reserve their right to contact bidders before or after the Bid Deadline to discuss or clarify the terms of their bid and to indicate any terms which may need to be modified in order to conform the bid to a Qualified Bid or otherwise evaluate the bid.  If no timely, conforming Qualified Bids are submitted by the Bid Deadline, the Debtors shall not hold the Auction but expressly reserve the right to extend the Bid Deadline (with the consent of the DIP Lender).  To constitute a Qualified Bid, a bid must, among other things:

(i)     provide to the Debtors and their counsel the most current audited and latest unaudited financial statements (collectively, the "**Financials**") of the Potential Bidder, or, if the Potential Bidder is an entity formed for the purpose of a transaction with the Debtors, (x) Financials of the equity holder(s) of the Potential Bidder or such other form of financial disclosure as is acceptable to the Debtors that demonstrates the Potential Bidder's

---

[3] To the extent any party executed a confidentiality agreement prior to the entry of an order approving these Bidding Procedures, such party does not need to execute another confidentiality agreement in order to comply with the Bidding Procedures or become a Qualified Bidder.

financial ability to consummate a Sale transaction and (y) a written commitment acceptable to the Debtors of the equity holder(s) of the Potential Bidder to be responsible for the Potential Bidder's obligations in connection with a Sale transaction (including being bound by the terms and conditions of the Bidding Procedures); provided that if a Potential Bidder is unable to provide Financials, the Debtors may accept such other information sufficient to demonstrate to the Debtors' reasonable satisfaction that such Potential Bidder has the financial wherewithal to consummate a Sale transaction. Potential Bidders shall not be allowed to review or obtain the Financials of other Potential Bidders;

(ii)     include a cover letter identifying whether the Potential Bidder is interested in purchasing some or all of the Assets;

(iii)    state that the Potential Bidder offers to consummate the Sale pursuant to a proposed form of purchase agreement (the "**Purchase Agreement**") and enclose a clean signed copy of the proposed Purchase Agreement;

(iv)    include a blackline comparison of the Purchase Agreement to the Stalking Horse Agreement, reflecting all of such Potential Bidder's proposed revisions, modifications, amendments, or other changes to the Stalking Horse Agreement;

(v)     if any bid is conditioned on the assumption and assignment of executory contracts and/or unexpired leases, then such Potential Bidder shall be required to provide evidence of its ability to provide adequate assurance of future performance of such contracts or leases along with the bid;

(vi)    either (i) be an all-cash bid; or (ii) be accompanied with verified financing;

(vii)   provide that the total cash consideration offered by such bidder under its Purchase Agreement exceeds the consideration offered by the Stalking Horse Bidder under the Stalking Horse Agreement plus the value of the Expense Reimbursement plus $25,000 (i.e., such total cash consideration offered by such bidder under its Purchase Agreement is at least $550,000) (the "**Initial Overbid Requirement**");

(viii)  contain a list of the Debtors' executory contracts and unexpired leases with respect to which the Potential Bidder seeks assignment from the Debtors;

(ix)    confirm that the offer shall remain open and irrevocable as provided below;

(x)     be accompanied with a certified or bank check or wire transfer in an amount equal to ten percent (10%) of the proposed purchase price set forth in the bid as a minimum good faith deposit (the "**Minimum Deposit**"), which Minimum Deposit shall be (i) deposited into an escrow account

3

pursuant to an executed escrow agreement; and (ii) used to fund a portion of the purchase price provided for in the bid;

(xi)   indicate whether the Potential Bidder intends to operate the Assets as a going concern;

(xii)   not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder; and

(xiii)   fully disclose the identity of each entity that will be bidding for the Assets or otherwise participating in connection with such bid, and the complete terms of any such participation.

If a bid submitted on or prior to the Bid Deadline fails to meet all the requirements of a Qualified Bid, the Debtors are entitled to work with the bidder in an effort to cure any defects in the bid and to cause such bid to become a Qualified Bid prior to the commencement of the Auction.   In addition, the Debtors may, with the consent of the DIP Lender, waive one or more of the requirements specified in the "Bid Requirements" section above and deem such bid to be a Qualified Bid prior to the commencement of or during the Auction; provided, however, that the Debtors may not waive the Initial Overbid Requirement. The Debtors may, with the consent of the DIP Lender, aggregate separate bids from unaffiliated Potential Bidders to create one Qualified Bid, provided, however, that all such Potential Bidders shall remain subject to the provisions of section 363(n) of the Bankruptcy Code regarding collusive bidding.

The DIP Lender (or one or more of its designees, affiliates or assignees) shall have the unqualified right to perform due diligence and credit bid up to the full amount of any DIP Obligations (as defined in the *Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Scheduling and Final Hearing, and (V) Granting Related Relief* [Docket No. 30] and the proposed Final Order with respect thereto (collectively, the "**Financing Orders**")), as provided in the Financing Orders, as a bidder (including, for the avoidance of doubt, in connection with any Auction), in any Sale of the Assets.   For the avoidance of doubt, the DIP Lender shall be deemed a Qualified Bidder, and any bid, including a credit bid, for the Assets submitted by the DIP Lender shall be deemed a Qualified Bid without the need to satisfy any of the other bid requirements set forth herein.

A bid received from a Potential Bidder that meets the requirements set forth above which is timely received will be considered a Qualified Bid if the Debtors believes that such bid would be consummated if selected as a Successful Bid (defined below).

After the Bid Deadline (defined below), the Debtors, with the consent of the DIP Lender, shall determine which Qualified Bid or combination of Qualified Bids represents the Starting Qualified Bid (defined below).   Prior to the commencement of the Auction, the Debtors shall distribute copies of all Qualified Bids to each Qualified Bidder, and shall indicate therein which Qualified Bid has been selected by the Debtors with the consent of the DIP Lender as the Starting Qualified Bid (defined below).

4

**Bid Deadline**

   **The Bid Deadline for submitting bids on the Assets by a Potential Bidder shall be November 4, 2016, at 5:00 p.m. (prevailing Eastern Time).**

   A Potential Bidder that desires to make a bid must deliver written and electronic copies of their bid so that they are actually received prior to the Bid Deadline by:  (i) proposed counsel for the Debtors, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, North Carolina 28202 (Attn:  Zachary H. Smith, Esq. (zacharysmith@mvalaw.com)), and Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, Delaware 19801 (Attn:  David M. Klauder, Esq. (dklauder@bk-legal.com)); and (ii) counsel for the DIP Lender, Sidley Austin LLP, 787 7th Avenue, New York, New York 10019 (Attn: Brian J. Lohan, Esq. (blohan@sidley.com), and Michael G. Burke, Esq. (mburke@sidley.com)), and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, Delaware 19899 (Attn: Derek C. Abbott, Esq. (dabbott@mnat.com).

**Obtaining Due Diligence Access**

   The Debtors shall afford each Potential Bidder reasonable due diligence information.  Site access shall be provided upon reasonable request to the Debtors at the discretion of the Debtors within its reasonable business judgment.  Potential Bidders cannot question the Debtors' employees without the Debtors' consent.  The due diligence period will end on the Bid Deadline (and for the avoidance of doubt, as provided above, a Qualified Bid may not be conditioned on obtaining financing or the outcome of any due diligence by the Potential Bidder).

   The Debtors shall not be obligated to furnish any information relating to the Debtors, the Assets and/or the Sale to any person except to a Potential Bidder.  The Debtors shall give each Potential Bidder reasonable access to all written due diligence information provided to another Potential Bidder.

   The Debtors shall coordinate all reasonable requests for additional information and due diligence access from Potential Bidders.  No conditions relating to the completion of due diligence shall be permitted to exist after the Bid Deadline.

**Due Diligence from Potential Bidders**

   Each Potential Bidder shall comply with all reasonable requests for additional information by the Debtors or their advisors regarding such Potential Bidder's financial wherewithal to consummate and perform obligations in connection with the Sale.  Failure by the Potential Bidder to comply with requests for additional information may be a basis for the Debtors to determine that a Potential Bidder is not a Qualified Bidder and that a bid made by a Potential Bidder or a Qualified Bidder is not a Qualified Bid.

CHAR2\1842913v5

**"As Is, Where Is"**

The Sale of the Assets shall be on an "as is, where is" basis and without representations or warranties of any kind, nature or description by the Debtors, their agents or estates, except to the extent set forth in the purchase agreement between the Debtors and the Successful Bidder.  All of the Debtors' right, title and interest in and to the Assets shall be sold free and clear of all pledges, liens, security interests, encumbrances, claims, charges, options and interests thereon (collectively, the "**Interests**"), if any, with such Interests to attach to the net proceeds of the Sale of the Assets, with the same validity and priority as existed immediately prior to such Sale.

Each bidder shall be deemed to acknowledge and represent that it has had an opportunity to inspect and examine the Assets prior to making its offer, that it has relied solely upon its own independent review, investigation and/or inspection of any documents in making its bid, and that it did not rely upon any written or oral statements, representations, promises, warranties or guaranties whatsoever, whether express, implied, by operation of law or otherwise, regarding the Assets or the completeness of any information provided in connection with the bidding process, in each case except as expressly stated in the marked Purchase Agreement.

**The Auction**

If more than one Qualified Bid by a Qualified Bidder is received by the Bid Deadline (or if a non-qualified bid received by the Bid Deadline is qualified prior to the commencement of the Auction), other than the bid of the Stalking Horse Bidder, an Auction with respect to a sale of the Assets shall take place on **November 7, 2016, at 10:00 a.m. (prevailing Eastern Time)**, at the offices of Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19899, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees.  If, however, no such Qualified Bids other than the bid of the Stalking Horse Bidder are received by the Bid Deadline, or if a non-qualified bid received by the Bid Deadline is not qualified prior to the commencement of the Auction, then the Auction will not be held, the Stalking Horse Agreement shall be designated as the Successful Bid, and the Debtors shall seek approval of the Sale of the Assets to the Stalking Horse Bidder in accordance with the Stalking Horse Agreement at the Sale Hearing.

Auction Rules:

(i)      Only Qualified Bidders who have submitted a Qualified Bid for some or all of the Assets and their authorized representatives will be eligible to participate at the Auction and to increase their bids.  Representatives of the DIP Lender and the Committee, if any, as well as any creditor of the Debtors in accordance with applicable Local Rules, may attend the Auction.  After the Bid Deadline, the Debtors, with the consent of the DIP Lender, shall determine which Qualified Bid or combination of Qualified Bids represents the then-highest or otherwise best bid for the Assets (the "**Starting Qualified Bid**").  The Auction shall commence with the Starting Qualified Bid and then proceed in minimum overbid increments of $25,000 (the "**Overbid Increment**").  Notwithstanding anything

6

contained herein or in the Bidding Procedures Order, the Debtors shall not be permitted to decrease the Overbid Increment unless and until the leading Qualified Bid at the Auction is equal to or greater than $600,000. The Debtors shall not consider any subsequent bid in the Auction unless any bid after the Starting Qualified Bid exceeds the previous highest bid by at least the Overbid Increment. During the course of the Auction, the Debtors shall inform each participant which Qualified Bid(s) reflects, in the Debtors' view, after consultation with the DIP Lender and the Committee, if any, the highest or otherwise best offer or combination of offers.

(ii)  The Auction may be adjourned as the Debtors and DIP Lender deem appropriate. Reasonable notice of such adjournment and the time and place for the resumption of the Auction shall be given to all Qualified Bidders that have submitted a Qualified Bid and counsel for the DIP Lender and Committee, if any.

(iii)  Each Qualified Bidder participating at the Auction will be required to confirm that it has not engaged in any collusion with respect to the bidding or Sale; provided, however, in order to obtain the highest and/or otherwise best bid, the Debtors may engage in discussions with one or more Qualified Bidders if they determine, with the consent of the DIP Lender, that the combination of all or a portion of bids received from such Qualified Bidders would yield the highest and/or otherwise best offer at the Auction.

(iv)  Bidding at the Auction shall be transcribed or videotaped.

**Other Terms**

All Qualified Bids, the Auction, and the Bidding Procedures are subject to modification and/or additional terms and conditions as are announced by the Debtors (with the consent of the DIP Lender) solely to the extent not inconsistent with the Bidding Procedures Order or these Bidding Procedures. At the conclusion of the Auction, the Debtors shall announce the bid or combination of bids made pursuant to the Bidding Procedures Order that represents, in the Debtors' discretion (with the consent of the DIP Lender), the Successful Bid and close the Auction. Prior to the entry of the Sale Order (defined below), the Debtors shall announce the identity of the Qualified Bidder or combination of Qualified Bidders who submitted the Successful Bid at the Auction (the "**Successful Bidder**"). If an Auction is held, the Debtors shall be deemed to have accepted a Qualified Bid only when (i) such bid is declared the Successful Bid at the Auction, (ii) definitive documentation has been executed in respect thereof and (iii) the Court has approved the Sale to the Successful Bidder. Such acceptance by the Debtors is conditioned upon approval by the Court of the Successful Bid and the entry of an order approving such Successful Bid.

Following completion of the Auction, neither the Debtors nor their representatives shall initiate contact with, solicit or encourage submission or any inquiries, proposals or offers by, any person in connection with any sale or other disposition of the Assets.

**Irrevocability of Certain Bids**

The Successful Bid and the bid of the Qualified Bidder or combination of Qualified Bidders (the "**Back-Up Bidder**") that submits the next highest or otherwise best bid or combination of bids (the "**Back-Up Bid**") shall be irrevocable until the earlier of: (i) sixty (60) days after entry of the Sale Order approving the Successful Bid; and, (ii) closing of the Sale to the Successful Bidder or the Back-Up Bidder. Following the entry of the Sale Order, if the Successful Bidder fails to consummate the Sale for any reason, the Back-Up Bid will be deemed the new Successful Bid, and the Debtors will be authorized, but not required, to consummate the Sale with the Back-Up Bidder without further order of the Court. In such case, the defaulting Successful Bidder's Minimum Deposit shall be forfeited to the Debtors and, solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, the Debtors (and/or the DIP Lender) shall have the right to seek any and all other remedies and damages from the defaulting Successful Bidder.

The Debtors will present the results of the Auction to the Bankruptcy Court at the Sale Hearing (as defined below) and the Debtors will request certain findings from the Bankruptcy Court regarding the Auction, including, among other things, that (i) the Auction was conducted and the Successful Bidder was selected in accordance with these Bidding Procedures, (ii) the Auction was fair in substance and procedure and (iii) consummation of the Sale contemplated by the Successful Bid will provide the highest or otherwise best value for the Assets and is in the best interests of the Debtors and their creditors.

**Sale Hearing**

A hearing to consider approval of the Sale of the Assets to the Successful Bidder will take place on **November 8, 2016, at 2:00 p.m. (prevailing Eastern Time)**, before the Honorable Kevin Gross in the United States Bankruptcy Court District of Delaware, 824 N. Market St., Wilmington, DE 19801. If no other Qualified Bid is received by the Debtors and the Stalking Horse Bidder's original Stalking Horse Agreement is the Successful Bid, then the Debtors will seek entry of an order at the Sale Hearing authorizing and approving the Sale (the "**Sale Order**"), including the sale of the Assets to the Stalking Horse Bidder, pursuant to the terms and conditions of the Stalking Horse Agreement. If a different bid is the Successful Bid, then the Debtors anticipate that they will seek the entry of an order, modified as necessary to reflect the terms of the Successful Bid, authorizing and approving the sale of the Assets to the Successful Bidder.

**Return of Deposit**

Except as otherwise provided in this paragraph with respect to any Successful Bid and any Back-Up Bid, the Minimum Deposits of all Qualified Bidders that submitted such a deposit under the Bidding Procedures shall be returned upon or within five (5) business days after the conclusion of the Sale Hearing. The Minimum Deposit of the Successful Bidder shall be held until the closing of the Sale of the Assets, as applicable, and applied in accordance with the Successful Bid. The Minimum Deposit of any Back-Up Bidder shall be returned upon or

CHAR2\1842913v5

within the earlier of (i) sixty (60) days after entry of the Sale Order (the "**Outside Back-Up Date**") or (ii) the closing of the Sale of the Assets to the Successful Bidder.

**Failure to Close**

If the Successful Bidder fails to consummate the transaction in accordance with the terms of the applicable agreement executed by the Successful Bidder by the closing date contemplated in the purchase agreement agreed to by the parties for any reason, the Debtors shall: (i) solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, retain the Successful Bidder's Minimum Deposit; (ii) solely to the extent provided for in the applicable Purchase Agreement or Stalking Horse Agreement, maintain the right to pursue all available remedies, whether legal or equitable; and (iii) be free to consummate the proposed transaction with the Back-Up Bidder at the highest price bid by the Back-Up Bidder at the Auction, without the need for an additional hearing or Order of the Court. Notwithstanding the foregoing and subject to the Bidding Procedures Order, nothing herein shall prejudice the rights of the DIP Lender to exercise whatever rights and remedies it may have pursuant to the Financing Orders.

**Reservation of Rights**

Except as otherwise provided in the Bidding Procedures Order or these Bidding Procedures, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, with the consent of the DIP Lender, to: (i) determine which bidders are Qualified Bidders; (ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove the Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders; (viii) extend the deadlines set forth herein; (ix) on prior notice to the Stalking Horse Bidder to the extent practicable under the circumstances, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as the Debtors may determine to be in the best interests of their estates; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

**Expenses**

Except to the extent provided for in the Stalking Horse Agreement and the Bidding Procedures Order, any Potential Bidders presenting bids shall bear their own expenses in connection with the proposed Sale, whether or not such Sale is ultimately approved.

**DIP Lender's Consent/Consultation Rights**

If the DIP Lender exercises its right to bid, including credit bid, at any time during the Auction, the Debtors shall not be required to consult with or obtain the consent of the DIP Lender as would otherwise be required under these Bidding Procedures during any round of bidding in which the DIP Lender tenders a credit bid, provided, however, that upon the DIP

CHAR2\1842913v5

Lender either withdrawing its credit bid or informing the Debtors that it is no longer bidding, the Debtors shall resume consultation with the DIP Lender during subsequent rounds of bidding. Further, the Debtors shall establish precautions necessary to safeguard against the DIP Lender receiving information that other Potential Bidders and/or Qualified Bidders are not entitled to receive for so long as the DIP Lender exercises its right to bid.

CHAR2\1842913v5