# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>FILIP TECHNOLOGIES, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 16-12192 (KG)<br><br>Related to Docket Nos. 11 and 57 |

## ORDER (I) APPROVING BIDDING PROCEDURES IN CONNECTION WITH THE SALE OF SUBSTANTIALLY ALL ASSETS OF THE DEBTORS; (II) SCHEDULING AN AUCTION AND HEARING TO CONSIDER THE SALE OF ASSETS; AND (III) APPROVING THE FORM AND MANNER OF NOTICE THEREOF

Upon the motion (the "**Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**"), pursuant to sections 105(a), 363, 365, 503, 506, 507 and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 6004, 6006 and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 6004-1 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), for entry of an order (this "**Bidding Procedures Order**"): (i) approving bidding procedures in connection with the sale of substantially all assets of the Debtors, (ii) scheduling an auction and a hearing to consider the sale of assets, (iii) approving the form and manner of notice thereof; and (iv) granting related relief; and the Court having considered the Motion and all exhibits, objections, and other papers filed in connection therewith; and the Court having determined that the relief provided herein is in the best interest of the Debtors, their estates, creditors and other parties in interest; and due and adequate notice of the Motion having been given under the circumstances; and upon the record of the hearing on the Motion, and the full

---

[1] The Debtors in these jointly administered cases are Filip Technologies, Inc. (Tax ID: 0660); Filip Technologies, Ltd. (UK) (ID: 8339); Evado Filip AS (ID: 6131); Evado Filip Limited (ID: 7233); and Evado Filip US Ltd. (Tax Id: 3412).

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed thereto in the Motion.

record of these cases; and after due deliberation thereon; and good and sufficient cause appearing therefor, it is hereby:

**FOUND AND DETERMINED THAT:**[3]

A.  This Court has jurisdiction over the Motion and the transactions contemplated therein pursuant to 28 U.S.C. §§ 157 and 1334, and this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O). Venue in this district is proper under 28 U.S.C. §§ 1408 and 1409.

B.  Good and sufficient notice of the Motion and the relief sought therein has been given under the circumstances, and no other or further notice is required except as set forth herein with respect to the Auction and Sale Hearing. A reasonable opportunity to object or be heard regarding the relief provided herein has been afforded to parties in interest.

C.  The Debtors' proposed notice of the Bidding Procedures is appropriate and reasonably calculated to provide all interested parties with timely and proper notice of the Auction, the sale of the Debtors' assets, and the Bidding Procedures to be employed in connection therewith.

D.  The Debtors have articulated good and sufficient business reasons for this Court to approve the Bidding Procedures, including: (i) the scheduling of a Bid Deadline, Auction, and Sale Hearing for the sale of the Debtors' assets; and (ii) the establishment of procedures to fix the Cure Amounts to be paid under section 365 of the Bankruptcy Code in connection with the assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases.

E.  The Bidding Procedures are reasonably designed to maximize the value to be achieved for the Debtors' assets.

---

[3] Pursuant to Bankruptcy Rule 7052, findings of fact shall be construed as conclusions of law and conclusions of law shall be construed as findings of fact when applicable.

F.  The entry of this Bidding Procedures Order is in the best interests of the Debtors, their estates, creditors, and other parties in interest.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:**

1. The Motion is GRANTED as set forth herein.

2. All objections to the Motion or the relief provided herein that have not been withdrawn, waived or settled, and all reservations of rights included therein, hereby are overruled and denied on the merits.

3. The Debtors' selection of Aricent Holdings Luxembourg S.à.r.l. as the Stalking Horse Bidder is approved. The Stalking Horse Bid shall be and hereby is deemed a Qualified Bid for all purposes of the Bidding Procedures and the Stalking Horse Bidder shall be and hereby is deemed a Qualified Bidder for all purposes of the Bidding Procedures.

4. The Expense Reimbursement in the amount of $50,000 to be provided to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement is deemed approved by the Court; <u>provided, however</u>, that if the Purchase Price pursuant to the terms of the Stalking Horse Agreement is less than $475,000, the Stalking Horse Bidder shall be entitled to an Expense Reimbursement equal to 10.52631% of the Purchase Price. The Debtors are authorized to pay the Expense Reimbursement to the Stalking Horse Bidder pursuant to the terms of the Stalking Horse Agreement and without further order of the Court, subject to submission of an invoice by the Stalking Horse Bidder to the Debtors (with a copy delivered simultaneously to the United States Trustee), which invoice shall include reasonable detail of the expenses included in such Expense Reimbursement and as to which the Debtors and the United States Trustee (respectively) shall have ten (10) days from receipt of such invoice to submit an objection with respect thereto. If the Stalking Horse Agreement is terminated pursuant to Sections 10.1(a)(2),

10.1(a)(5) and 10.1(a)(8), the Debtors shall pay the Stalking Horse Bidder the Expense Reimbursement as provided in Section 7.6 of the Stalking Horse Agreement. The Expense Reimbursement constitutes an allowed administrative expense claim under sections 503 and 507 of the Bankruptcy Code in these chapter 11 cases and shall constitute a carve out from any and all Encumbrances on Acquired Assets (as such terms are defined in the Stalking Horse Agreement), including, without limitation, the DIP Facility (as such term is defined in the Stalking Horse Agreement), which carve out shall transfer to any and all Encumbrances on the proceeds thereof at the closing of an Alternative Transaction (as such terms is defined in the Stalking Horse Agreement); provided, for the avoidance of doubt, the foregoing is not intended to nor shall it be deemed to undermine, impair, alter, or modify in any respect whatsoever the priority of the Professionals' Carve-Out as defined in the Financing Orders (defined below), or any other term or provision of the Financing Orders (defined below). Except for the Stalking Horse Bidder, no other Potential Bidder shall be entitled to any breakup fee, overbid fee, termination fee, expense reimbursement, or similar type of payment.

5. If the Stalking Horse Agreement is terminated for any reason other than pursuant to Section 10.1(a)(3), the Minimum Deposit shall be returned to the Stalking Horse Bidder. For the avoidance of doubt, a termination of the Stalking Horse Agreement by the Debtors pursuant to Section 3.4 shall not constitute a termination pursuant to Section 10.1(a)(3).

6. Notwithstanding anything contained in the Bidding Procedures or the Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Claims, (IV) Scheduling and Final Hearing, and (V) Granting Related Relief [Docket No. 30] and the proposed Final Order with respect thereto (collectively, the "**Financing Orders**"), if the Stalking Horse Bidder fails to

consummate the Sale for any reason, the DIP Lender's sole remedy against the Stalking Horse Bidder shall be the Stalking Horse Bidder's forfeiture of the Minimum Deposit to the Debtors.

7. The Bidding Procedures, in substantially the form attached hereto as **Exhibit 1**, are incorporated herein and approved, and shall apply with respect to the sale of the Debtors' assets. The Debtors are authorized to take all actions necessary or appropriate to implement the Bidding Procedures.

8. As further described in the Bidding Procedures, the deadline for submitting Qualified Bids for the Debtors' assets is **November 4, 2016 at 5:00 p.m.** prevailing Eastern time (the "**Bid Deadline**"). No bid shall be deemed to be a Qualified Bid (as defined in the Bidding Procedures) or otherwise considered for any purposes unless such bid meets the requirements set forth in the Bidding Procedures, provided, however, that the Debtors may, with the consent of the DIP Lender, waive one or more defects and cause a bid to be deemed a Qualified Bid; provided, further, that the Debtors may not waive the Initial Overbid Requirement (as defined in the Bidding Procedures).

9. The Debtors may sell their assets by conducting an Auction in accordance with the Bidding Procedures. If Qualified Bids are timely received by the Debtors in accordance with the Bidding Procedures, the Auction shall take place on **November 7, 2016 at 10:00 a.m.** prevailing Eastern time at the offices of counsel for the DIP Lender, Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, 16th Floor, Wilmington, Delaware 19899, or at such other place and time as the Debtors shall notify all Qualified Bidders and other invitees and creditors. If, however, no such Qualified Bid, other than the bid of the Stalking Horse Bidder, is received by the Bid Deadline, then the Auction will not be held.

10. Each Qualified Bidder participating at the Auction will be required to confirm on the record of the Auction that it has not engaged in any collusion with respect to the bidding or the sale. The Auction will be conducted openly. Bidding at the Auction shall be transcribed or videotaped.

11. The Sale Hearing shall be held before this Court on **November 8, 2016, at 2:00 p.m. (prevailing Eastern Time)**, or as soon thereafter as counsel and interested parties may be heard.

12. On or before one (1) business day after entry of the Bidding Procedures Order, or as soon thereafter as such parties can be identified, the Debtors will cause a notice in substantially the form annexed hereto as **Exhibit 2** (the "**Notice of Auction and Sale Hearing**"), and a copy of this Bidding Procedures Order, to be sent, by first-class mail, postage prepaid, to the following: (i) the Office of the United States Trustee; (ii) counsel to the DIP Lender; (iii) all parties who are known to assert a security interest, lien, or claim in any of the Assets, if any; (iv) all non-Debtor parties to the Executory Contracts and Unexpired Leases and any parties who are known to claim interests therein; (v) all applicable federal, state, and local taxing authorities; (vi) all applicable county and state consumer protection agencies; (vii) all applicable state attorneys general; (viii) all other government agencies required to receive notice under the Bankruptcy Rules; (ix) the Debtors' 30 largest unsecured creditors on a consolidated basis; (x) the Debtors' insurance providers; (xi) all known parties that the Debtors contacted during their prepetition marketing process at any time after March 1, 2016 as potentially interested in purchasing some or all of the Debtors' assets, and/or that have expressed interest to the Debtors since March 1, 2016 in purchasing some or all of the Debtors' assets; (xii) all known litigation parties of the Debtors; and (xiii) all parties that have requested or that are required to receive

CHAR2\1844947v6

special notice pursuant to Bankruptcy Rule 2002.[4] In addition to the foregoing, electronic notification of this Motion, the Bidding Procedures Order and the Notice of Auction and Sale Hearing also will be posted on the Court's electronic case filing (ECF) website, http://ecf.deb.uscourts.gov.

13. On or before (i) one (1) business day after entry of this Bidding Procedures Order, the Debtors will serve the Notice of Auction and Sale Hearing on all parties appearing on the Debtors' creditor matrix filed with the Court (which includes, without limitation, all known creditors of the Debtors); and (ii) two (2) business days after entry of this Bidding Procedures Order, the Debtors will publish the Notice of Auction and Sale Hearing once in one or more publications as the Debtors deem appropriate, including but not limited to *The New York Times* (national edition).

14. On or before one (1) business day after entry of this Bidding Procedures Order, the Debtors will serve, by first class mail or hand delivery on all non-Debtor parties to the Executory Contracts and Unexpired Leases, a notice of potential assumption, assignment and/or transfer of the Executory Contracts and Unexpired Leases in substantially the form annexed hereto as **Exhibit 3** (the "**Notice of Assumption and Assignment**"). The Notice of Assumption and Assignment shall identify the calculation of the cure amounts that the Debtors believe must be paid to cure all defaults under the Assigned Contracts (the "**Cure Amounts**").[5]

---

[4] The Notice of Auction and Sale Hearing will direct parties to contact the Debtors' counsel for more information and will provide that any party in interest that wishes to obtain a copy of any related document, subject to any necessary confidentiality agreement, may make a request in writing as specified in the Notice of Auction and Sale Hearing.

[5] The inclusion of any contract or unexpired lease of nonresidential real property on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment shall not be an admission by the Debtors or their estates that any such contract or unexpired lease so included is an executory contract. Nor shall the inclusion of any contract or unexpired lease on any Notice of Assumption and Assignment or Supplemental Notice of Assumption and Assignment constitute an admission of liability by the Debtors or their estates or effectuate the assumption or assignment of such contract or lease, absent entry of an order of the Court approving the assumption and/or assignment of such contract or lease of nonresidential real property in conjunction or as part of the Sale Approval Order.

15. Unless the non-Debtor party to an Executory Contract or Unexpired Lease files an objection (the "**Cure Amount/Assignment Objection**") to its scheduled Cure Amount and/or (ii) the proposed assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease by **November 4, 2016 at 4:00 p.m. (prevailing Eastern Time)** (the "**Cure/Assignment Objection Deadline**") and serves a copy of the Cure Amount/Assignment Objection so as to be received no later than the Cure/Assignment Objection Deadline by (i) counsel for the Debtors, Moore & Van Allen, PLLC, 100 North Tryon Street, Suite 4700, Charlotte, NC 28202 (Attn: Zachary H. Smith, Esq.), and Bielli & Klauder, LLC, 1204 N. King Street, Wilmington, DE 19801 (Attn: David M. Klauder, Esq.); (ii) counsel for the DIP Lender, Sidley Austin LLP, 787 7th Avenue, New York, NY 10019 (Attn: Brian J. Lohan, Esq. and Michael G. Burke, Esq.), and Morris, Nichols, Arsht & Tunnell LLP, 1201 North Market Street, P.O. Box 1347, Wilmington, DE 19899 (Attn: Derek C. Abbott, Esq.); and (iii) counsel for the Stalking Horse Bidder, Pepper Hamilton LLP, 19th Floor, High Street Tower, 125 High Street, Boston, MA 02110 (Attn: Todd A Feinsmith, Esq.), and Pepper Hamilton LLP, Hercules Plaza, Suite 5100, 1313 Market Street, P.O. Box 1709, Wilmington, DE 19899 (Attn: Evelyn J. Meltzer, Esq.) (collectively, the "**Bid and Objection Notice Parties**"), then such non-Debtor party shall (i) be forever barred from objecting to the Cure Amount and from asserting any additional cure or other amounts with respect to such Executory Contract or Unexpired Lease and the Debtors shall be entitled to rely solely upon the Cure Amount and (ii) subject to the procedures for objecting to adequate assurance of future performance as set forth below, be deemed to have consented to the assumption, assignment and/or transfer of such Executory Contract or Unexpired Lease to the Successful Bidder or Back-Up Bidder and shall be forever barred and estopped from asserting or claiming against the Debtors, the Successful Bidder or Back-Up Bidder, in relation to this sale,

that any additional amounts are due or defaults exist, or additional conditions to assumption, assignment and/or transfer must be satisfied, under such Executory Contract or Unexpired Lease.

16. Cure Objections shall set forth the cure amount being claimed by the objecting party (the "**Claimed Cure Amount**"), the dates and corresponding amounts of the alleged defaults by the Debtors, and a brief statement of any and all other grounds for objection to assumption and assignment. Upon receipt of a Cure Amount/Assignment Objection, the Debtors, with the approval of the Successful Bidder, may resolve any Cure Objection by mutual agreement with the objecting counterparty to any Executory Contract or Unexpired Lease without further order of the Court. In the event that the Debtors, the Successful Bidder and any objecting party are unable to consensually resolve any Cure Objection prior to the Sale Hearing, the Debtors shall request that the Court resolve such Cure Objection at the Sale Hearing.

17. The DIP Lender or any of its affiliates (collectively, "**AT&T**") may engage in discussions with one or more Potential Bidders regarding its agreement(s) or commercial relationship with the Debtors, including the terms under which AT&T would agree to the assumption and assignment of its agreement(s) in connection with the proposed sale. Such discussions and interactions shall not be deemed to be collusive or otherwise improper conduct.

18. The Successful Bidder or the Back-Up Bidder, as the case may be, may determine to exclude any Executory Contract or Unexpired Lease from the list of Executory Contracts and Unexpired Leases to be assumed and assigned under the Purchase Agreement or Stalking Horse Agreement through the Closing Date; provided, however, the non-Debtor party or parties to any such excluded contract or lease will be notified of such exclusion by written notice mailed within two (2) business days of such determination.

CHAR2\1844947v6

19. Any objection by non-Debtor parties to any Executory Contract or Unexpired Lease concerning whether the Stalking Horse Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code (the "**Stalking Horse Adequate Assurance Objection**") must be filed and served by the Sale Objection Deadline (defined below) and comply with the requirements of paragraph 21 below.

20. The Notice of Assumption and Assignment shall state that an entity other than the Stalking Horse Bidder may be selected as the Successful Bidder at the Auction, and that any non-Debtor counterparty to any Executory Contract or Unexpired Lease wishing to know the identities of all Qualified Bidders (and therefore potential Successful Bidders), and the actual Successful Bidder, prior to the Sale Hearing, may provide such non-Debtor counterparty's email address or fax number to Debtors' counsel prior to the Bid Deadline. All such parties who provide an email address or fax number as provided above (i) will be emailed by Debtors' counsel the identities of all Qualified Bidders the day after the Bid Deadline; and (ii) if they wish, may request prior to the Auction copies from Debtors' counsel of the adequate assurance information submitted to the Debtors by any Qualified Bidder (which information shall be provided subject to such non-Debtor counterparty's entry into a confidentiality agreement acceptable to such Qualified Bidder). All such non-Debtor counterparties who provide an email address or fax number to Debtors' counsel in accordance with the foregoing will be notified of the Successful Bidder by email from Debtors' counsel immediately (and by no later than two (2) hours) after the Auction concludes. If the Stalking Horse Bidder is not the Successful Bidder, then any objection by non-Debtor parties to the Assigned Contracts solely concerning the issue of whether the Successful Bidder can provide adequate assurance of future performance as required by section 365 of the Bankruptcy Code may be raised at the Sale Hearing.

21. Objections to the sale of the Debtors' assets, adequate assurance of future performance by the Stalking Horse Bidder or the relief requested in the Motion (other than with respect to the conduct of the Auction or adequate assurance of future performance by the Successful Bidder if the Successful Bidder is not the Stalking Horse Bidder) must: (i) be in writing; (ii) comply with the Bankruptcy Rules and the Local Rules; (iii) be filed with the clerk of the Bankruptcy Court for the District of Delaware, 824 N. Market St., Wilmington, DE 19801, on or before **November 4, 2016 at 4:00 p.m. (prevailing Eastern Time)** (the "**Sale Objection Deadline**"), or such later date and time as the Debtors may agree; and (iv) be served so as to be received no later than 4:00 p.m. (prevailing Eastern Time) on the same day upon the Bid and Objection Notice Parties.  Objections, if any, to the conduct of the Auction, or (as provided in paragraph 21 hereof) adequate assurance of future performance by the Successful Bidder if the Successful Bidder is not the Stalking Horse Bidder, may be raised at the Sale Hearing.  All objections must state with specificity the nature of such objection and will be heard by the Court at the Sale Hearing.

22. The Notice of Auction and Sale Hearing and the Notice of Assumption, and Assignment to be issued in connection with the proposed sales of the Debtors' assets, substantially in the forms annexed hereto as **Exhibit 2** and **Exhibit 3**, respectively, are approved.

23. The Sale Hearing may be adjourned, from time to time, without further notice to creditors or other parties in interest by announcement of said adjournment in open Court.

24. Except as otherwise provided in this Bidding Procedures Order or the Bidding Procedures, the Debtors reserve the right as they may reasonably determine to be in the best interests of their estates, with the consent of the DIP Lender (to the extent not inconsistent with the Debtors' fiduciary duties), to:  (i) determine which bidders are Qualified Bidders;

CHAR2\1844947v6

(ii) determine which bids are Qualified Bids; (iii) determine which Qualified Bid or combination of Qualified Bids is the highest or otherwise best proposal and which is the next highest or otherwise best proposal; (iv) reject any bid that is (a) inadequate or insufficient, (b) not in conformity with the requirements of the Bidding Procedures or the requirements of the Bankruptcy Code, or (c) contrary to the best interests of the Debtors and their estates; (v) remove the Assets from the Sale; (vi) waive terms and conditions set forth herein with respect to all Potential Bidders; (vii) impose additional terms and conditions with respect to all Potential Bidders (to the extent such modifications and/or additional terms and conditions are not more onerous to Potential Bidders than otherwise would be the case under the Bidding Procedures); (viii) extend the deadlines set forth herein; (ix) on prior notice to the Stalking Horse Bidder and Potential Bidders to the extent practicable under the circumstances, adjourn or cancel the Auction and/or Sale Hearing in open court without further notice; (x) modify the Bidding Procedures, as the Debtors may determine to be in the best interests of their estates; or (xi) withdraw the Motion at any time prior to the Sale Hearing with or without prejudice.

25. To the extent the Debtors believe the DIP Lender's consent (or lack thereof) is inconsistent with the Debtors' exercise of their fiduciary duties, the Debtors shall consult with the DIP Lender regarding the matter(s) to which such consent relates.

26. The stays provided for in Bankruptcy Rules 6004(h) and 6006(d) are waived and Bidding Procedures Order shall be effective immediately upon its entry.

27. This Court shall retain jurisdiction over any matters related to or arising from the implementation of this Order.

Wilmington, Delaware  
Date: **OCT. 24**, 2016

_____  
The Honorable Kevin Gross  
United States Bankruptcy Judge

CHAR2\1844947v6