## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | **Chapter 11** |
| **FILIP TECHNOLOGIES, INC.** *et al.,*[1] | **Case No. 16-12192 (KG)** |
| **Debtors.** | **Jointly Administered** |

## JOINT PLAN OF LIQUIDATION OF THE DEBTORS
## PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE
## PROPOSED BY THE DEBTORS, AT&T CAPITAL SERVICES, INC.,
## AND AT&T SERVICES, INC.

Counsel for Proponents:

**BIELLI & KLAUDER, LLC**
David M. Klauder (No. 5769)
Nella M. Bloom (No. 5430)
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557

*Proposed Counsel to the Debtors*

**SIDLEY AUSTIN LLP**
Michael G. Burke
Brian J. Lohan
787 Seventh Avenue
New York, NY 10019
Telephone: (212 839-5300
Facsimile: (212) 839-5599

*Counsel to AT&T Capital Services, Inc. and AT&T Services, Inc.*

**MOORE & VAN ALLEN PLLC**
Zachary H. Smith *Pro Hac Vice*
Hillary B. Crabtree *Pro Hac Vice*
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 378-1909

*Proposed Counsel to the Debtors*

**MORRIS, NICHOLS, ARSHT & TUNNELL LLP**
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989

*Counsel to AT&T Capital Services, Inc. and AT&T Services, Inc.*

Dated: October 26, 2016

---

[1] The Debtors in these jointly administered cases are Filip Technologies, Inc. (Tax ID: 0660); Filip Technologies, Limited (UK) (ID: 8339); Evado Filip AS (ID: 6131); Evado Filip Limited (ID: 7233); and Evado Filip US Limited (ID: 3412).

## Preliminary Statement

Pursuant to Chapter 11, Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, the above-captioned debtors and debtors in possession (the "Debtors"), AT&T Capital Services, Inc. (the "DIP Lender"), and AT&T Services, Inc. as co-proponents within the meaning of section 1129 of title 11 of the United States Code hereby jointly propose the following Plan of Liquidation.[2] Reference is made to the Disclosure Statement accompanying the Plan, including the exhibits thereto, for a discussion of the Debtors' history, business, results of operations, and the post-petition disposition of substantially all of the Debtors' assets, and a summary and analysis of the Plan. All Holders of Claims should read the Disclosure Statement and the Plan carefully—and consult with their counsel and other applicable professionals— before voting to accept or reject the Plan.

The Plan sets forth a proposal for the resolution of all Claims and Equity Interests against the Debtors. With the Plan, Creditors entitled to vote will receive a Ballot for voting on the Plan, a Disclosure Statement that provides information concerning the Debtors, and the Plan. The Disclosure Statement includes a summary of the assets and liabilities of the Debtors, a summary of what Creditors and Equity Interest Holders will receive under the Plan, a summary of the procedures and voting requirements necessary for confirmation of the Plan, and a discussion of certain alternatives to the Plan in the event that the Plan is not confirmed. You should thoroughly review both the Plan and Disclosure Statement before deciding whether you will vote to accept or reject the Plan.

---

[2] Capitalized terms not otherwise defined herein shall have the meaning ascribed to such terms in Article I of this Plan.

As more fully described in the Disclosure Statement, the Plan must be approved by the requisite number of Creditors, and the Bankruptcy Court must find that the Plan meets the applicable legal standards before it can be confirmed.[3] If the Plan is not confirmed, the Bankruptcy Court may order the Chapter 11 Cases dismissed or converted to liquidating cases under Chapter 7 of the Bankruptcy Code, or the Debtors or other parties in interest may propose a different plan.

## I.

## DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION

## OF TIME AND GOVERNING LAW

### A.    Rules of Interpretation, Computation of Time and Governing Law

1.    For purposes of the Plan:  (a) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and each pronoun, whether stated in the masculine, feminine, or neuter gender, shall include the masculine, feminine, and the neuter gender; (b) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (c) any reference in the Plan to an existing document or exhibit filed, or to be filed, shall mean such document or exhibit, as it may have been or may be amended, modified, or supplemented; (d) unless otherwise specified, all references in the Plan to Sections, Articles, and Exhibits are references to Sections, Articles, and Exhibits of or to the Plan; (e) the words "herein," "hereof," "hereunder," and "hereto" and similar terms refer to the Plan in its entirety rather than to a particular portion of the Plan; (f) references to a part includes the whole,

---

[3] Equity Interest Holders will receive nothing under the Plan, and therefore, the Class of Equity Interests is deemed to have rejected the Plan. Accordingly, acceptances are not being solicited from the Holders of Equity Interests.

except where the context clearly requires otherwise; (g) unless otherwise specified, "or" has the inclusive meaning represented by the phrase "and/or"; (h) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (i) the rules of construction set forth in Section 102 of the Bankruptcy Code shall apply; and (j) any term used in capitalized form in the Plan that is not defined herein but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to such term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

2.      In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

3.      Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Delaware, without giving effect to the principles of conflict of laws thereof.

**B.      <u>Defined Terms</u>**

Unless the context otherwise requires, the following terms shall have the following meanings when used in capitalized form in the Plan:

1.      "<u>Administrative and Secured Claims Reserve</u>" means the reserve funded by the Debtors pursuant to <u>Article V.R</u> of the Plan to ensure sufficient funds to pay all Administrative Claims and Secured Claims that shall or may become Allowed Administrative Claims and Allowed Secured Claims

2.      "<u>Administrative Claim</u>" means a Claim for an expense of administration of the Chapter 11 Cases arising under Sections 503(b), 507(b), 503(b)(9) or 1114(e)(2) of the Bankruptcy Code, including:  (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estates; (b) the value of any goods received by a Debtor within 20 days before the Petition Date to the extent that goods were sold to the Debtors in the ordinary course of the Debtors' business; (c) compensation for legal, financial advisory, accounting and other services and reimbursement of expenses awarded or allowed under Section 330(a) or 331 of the Bankruptcy Code; (d) all fees and charges assessed against the Estates under 28 U.S.C. §§ 1911-1930; (e) all obligations designated as Allowed Administrative Claims pursuant to an order of the Bankruptcy Court; (f) administrative claims that were timely filed prior to the Administrative Claims Bar Date; (g) any Tax Claims incurred by the Debtors after the Petition Date or relating to a tax year or period which occurs after the Petition Date; and (h) any cure amounts related to the assumption and assignment of the AT&T Contracts arising after the Petition Date.

3.      "<u>Administrative Claims Bar Date</u>" means the applicable last date set by the Bankruptcy Court for a Claimant to file a request for payment of any Administrative Claim that arose between the Petition Date and the Effective Date. The Administrative Claims Bar Date shall be thirty (30) days after the Effective Date.

4.      "<u>Allowed</u>" means, with respect to any Claim, except as otherwise provided herein:  (a) a Claim that has been scheduled by the Debtors on their Schedules as other than disputed, contingent, or unliquidated and as to which Debtors, the Liquidating Trustee or other party in interest have not filed an objection on or before the Claims Objection Deadline; (b) a Claim that is set forth in a Proof of Claim as to which no objection has been filed on or before the

Claims Objection Deadline; (c) a Claim that has been allowed by a Final Order; (d) a Claim that is allowed: (i) in any stipulation of amount and nature of Claim executed by the Debtors prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any stipulation of amount and nature of Claim executed by the Liquidating Trustee on or after the Effective Date; (iii) in any stipulation of amount and nature of any Administrative Claim, Priority Claim, or Priority Tax Claim executed by (y) the Debtors and approved by the Bankruptcy Court, or (z) the Liquidating Trustee; or (iv) in any contract, instrument, indenture or other agreement entered into or assumed by Debtors in connection with and in accordance with the Plan; (e) a Claim relating to a rejected executory contract or unexpired lease that either (i) is not a Disputed Claim or (ii) has been allowed by a Final Order; or (f) a Claim that is allowed pursuant to the terms of this Plan.

5.      "Allowed Claim" or "Allowed ... Claim" means a Claim that has been Allowed.

6.      "Approved Budget" shall have the meaning ascribed to it in the Final DIP Order.

7.      "AT&T" means, collectively, the DIP Lender, AT&T Services, and their affiliates.

8.      "AT&T Contracts" means (i) that certain Master Purchase Agreement No. 20130814.035.C dated September 30, 2013 (as amended, restated or otherwise modified to date); (ii) that certain Maintenance Agreement dated August 24, 2016 (the "Maintenance Agreement"), (iii) and that certain Supplier Supplemental Maintenance Agreement dated September 16, 2016 (the "Supplemental Maintenance Agreement").

9.      "AT&T Services" means AT&T Services, Inc.

10.     "<u>AT&T Unsecured Claim</u>" means any pre-petition claim by AT&T under the AT&T Contracts. For the avoidance of doubt, the $240,000 advanced by AT&T to the Debtors under the Maintenance Agreement and Supplemental Maintenance Agreement shall be included in the AT&T Unsecured Claim.

11.     "<u>Available Cash</u>" means the aggregate amount of all Cash held by the Debtors on the Effective Date.  After the Effective Date, Available Cash shall also mean the proceeds of the Liquidating Trust Assets, other than the Reserves (except as provided in <u>Article II.B</u> and <u>Article V.S</u> of the Plan), the GUC Distribution, or the Liquidating Trust Assets that became Liquidating Trust Assets pursuant to <u>Article II.B</u> of the Plan.

12.     "<u>Ballots</u>" mean the ballots upon which the Holders of Impaired Claims entitled to vote on the Plan shall indicate their acceptance or rejection of the Plan in accordance with the Plan and the Voting Instructions.

13.     "<u>Bankruptcy Code</u>" means title I of the Bankruptcy Reform Act of 1978, as amended from time to time, as set forth in Sections 101 *et seq*. of title 11 of the United States Code, and applicable portions of titles 18 and 28 of the United States Code.

14.     "<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over these Chapter 11 Cases.

15.     "<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure, as amended from time to time, as applicable to the Chapter 11 Cases, promulgated under 28 U.S.C. § 2075 and the General and Local Rules of the Bankruptcy Court.

16.     "<u>Bar Date</u>" means (i) 4:00 p.m. prevailing Eastern time on November __, 2016, which is the date set by the Bankruptcy Court as the last day for filing a Claim arising prior to the Petition Date against the Debtors in these Chapter 11 Cases, and (ii) 5:00 p.m. prevailing

7

Eastern time on April 3, 2017, which is the date set by the Bankruptcy Court as the last day for government entities to file a Claim arising prior to the Petition Date against the Debtors in these Chapter 11 Cases.

17.    "<u>Beneficiaries</u>" means holders of Allowed Claims entitled to receive Distributions from the Liquidating Trust under the Plan, whether or not such Claims were Allowed on the Effective Date.

18.    "<u>Business Day</u>" means any day, other than a Saturday, Sunday or legal holiday (as defined in Bankruptcy Rule 9006(a)).

19.    "<u>Cash</u>" means cash and cash equivalents, including, but not limited to, bank deposits, wire transfers, checks, and readily marketable securities, instruments, and legal tender of the United States of America or instrumentalities thereof.

20.    "<u>Causes of Action</u>" means all claims, actions, causes of action, choses in action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, remedies, rights of setoff, third-party claims, subrogation claims, contribution claims, reimbursement claims, indemnity claims, counterclaims, and crossclaims (including, without limitation, all claims and any avoidance, preference, recovery, subordination or other actions against Creditors, insiders, and/or any other entities under the Bankruptcy Code, and any and all state and common-law claims for breach of fiduciary duty against the Debtors' current directors and officers or former directors and officers, based in law or equity, including, without limitation, under the Bankruptcy Code, whether direct, indirect, derivative, or otherwise and whether asserted or unasserted as of the Effective Date.

21.    "Chapter 11 Cases" means the Chapter 11 cases commenced when the Debtors each filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on the Petition Date and with the following case numbers:  16-12192 (KG), 16-12193 (KG), 16-12194 (KG), 16-12195 (KG) and 16-12196 (KG), which are jointly administered under case number 16-12192 (KG).

22.    "Claim" means a claim (as defined in Section 101(5) of the Bankruptcy Code) against a Debtor, including, but not limited to:  (a) any right to payment from a Debtor whether or not such right is reduced to judgment, liquidated, unliquidated, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (b) any right to an equitable remedy for breach of performance if such performance gives rise to a right of payment from a Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

23.    "Claimant" means the Holder of a Claim.

24.    "Claims Agent" means Kurtzman Carson Consultants LLC, which was appointed as the Debtors' claims, noticing, and balloting agent.

25.    "Claims Objection Deadline" means (a) 180 days after the Effective Date, or (b) such other period for objecting to Claims as may be fixed by an order of the Bankruptcy Court, following notice to Holders of Disputed Claims and an opportunity to be heard.

26.    "Class" means a category of Holders of Claims or Equity Interests, as set forth in Article 3 of the Plan.

27.    "Class 3 Liquidating Trust Interests" means Liquidating Trust Interests following the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Claims, and Secured Claims entitling Holders to a Distribution of their Pro Rata share up to $50,000. Class

3 Liquidating Trust Interest shall be senior in right of Distribution to Class 4 Liquidating Trust Interests.

28.    "Class 4 Liquidating Trust Interests" means Liquidating Trust Interests entitling its Holders to their Pro Rata share of Liquidating Trust Assets in excess of Distributions to Holders of Class 3 Liquidating Trust Interests. For the avoidance of doubt, Class 4 Liquidating Trust Interests shall be junior and subordinated in right of Distribution to Class 3 Liquidating Trust Interests.

29.    "Confirmation" means the entry of the Confirmation Order, subject to all conditions specified in Article VII of the Plan having been (a) satisfied or (b) waived pursuant to Article VII.

30.    "Confirmation Date" means the date upon which the Confirmation Order is entered by the Bankruptcy Court on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

31.    "Confirmation Order" means the order of the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Bankruptcy Code which shall be in the form and manner acceptable to the Proponents.

32.    "Consummation" or "Consummate" means the occurrence of the Effective Date.

33.    "Contingent Claim" means any Claim for which a Proof of Claim has been filed with the Bankruptcy Court but was not filed in a sum certain and which Claim has not been estimated, fixed, or liquidated by the Bankruptcy Court at a sum certain as of the Effective Date, or a Claim that has accrued but nonetheless remains dependent on the occurrence of a future event that may never occur.

34. "Creditor" means any Holder of a Claim against Debtors that arose on or prior to the Petition Date.

35. "D&O Liability Insurance Policy" means all insurance policies for directors', managers' and officers' liability maintained by the Debtors as of the Petition Date, as well as any "tail" policies with respect to each of the foregoing.

36. "Debt" means liability on a Claim.

37. "Debtors" means Filip Technologies, Inc.; Filip Technologies, Limited (UK); Evado Filip AS; Evado Filip Limited and Evado Filip US Limited.

38. "DIP Claims" means Post-Petition DIP Advances, Roll-Up Claims and Other DIP Claims.

39. "DIP Lender" means AT&T Capital Services, Inc.

40. "Disallowed Claim" means (i) a Claim, or any portion thereof, that has been disallowed by a Final Order or by other agreement of a Claimant; (ii) a Claim that has been listed in the Schedules at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim has been filed; or (iii) a Claim that has not been listed in the Schedules and as to which no Proof of Claim has been filed.

41. "Disclosure Statement" means Proponents' Disclosure Statement dated October 28, 2016, as amended, supplemented, or modified from time to time, describing the Plan, which was prepared and distributed in accordance with the Bankruptcy Code and Bankruptcy Rules and other applicable law.

42. "Disclosure Statement Approval Order" means the order to be entered by the Bankruptcy Court, in form and substance acceptable to the Proponents, (i) scheduling the

Confirmation Hearing; (ii) establishing the Distribution Record Date; (iii) establishing the Voting Deadline; and (iv) establishing the Confirmation Objection Deadline.

43.    "Disputed" means, with respect to any Claim or Equity Interest, any Claim or Equity Interest:  (a) listed on the Schedules as unliquidated, disputed, or contingent, and as to which no Proof of Claim has been filed; (b) as to which the Debtors, the Liquidating Trustee, or any other party in interest has interposed a timely objection or request for estimation in accordance with the Bankruptcy Code and the Bankruptcy Rules or is otherwise disputed by the Debtors or the Liquidating Trustee in accordance with applicable law, which objection, request for estimation or dispute has not been withdrawn or determined by a Final Order; or (c) unless otherwise indicated in the Plan, a Claim as to which the period within which to object to such Claim has not yet expired.

44.    "Disputed Claim" means:  (i) any Claim or portion of a Claim as to which an objection to the allowance thereof has been interposed as of the deadline fixed under the Plan or by order of the Bankruptcy Court, which objection has not been withdrawn or determined by Final Order; (ii) any Claim scheduled by the Debtors in the Schedules as disputed, contingent, or unliquidated, and as to which no Proof of Claim has been filed; (iii) a Proof of Claim filed in a greater amount, or of a different nature or priority, than the amount, nature, or priority listed for that Claim in the Schedules; or (iv) a Claim that is not listed in the Schedules. To the extent an objection relates to the allowance of only a part of a Claim, such Claim shall be a Disputed Claim only to the extent of the objection.

45.    "Distributions" means the distributions of Cash to be made in accordance with the Plan.

46.    "Distribution Dates" means collectively the Initial Distribution Date, any Subsequent Distribution(s) Date, and the date of the Final Distribution.

47.     "<u>Distribution Record Date</u>" means the close of business on the Business Day immediately preceding the Effective Date.

48.     "<u>Effective Date</u>" means the date selected by the Debtors which is a Business Day after the Confirmation Date on which:  (a) no stay of the Confirmation Order is in effect, and (b) all conditions specified in <u>Article VII</u> of the Plan have been satisfied, unless waived by the Debtors. Within five (5) business days after the Effective Date, notice of the Effective Date shall be filed with the Bankruptcy Court by the Liquidating Trustee.

49.     "<u>Entity</u>" means an entity as defined in Section 101(15) of the Bankruptcy Code.

50.     "<u>Equity Interest</u>" means any equity interest in any Debtor, including, but not limited to, all issued, unissued, authorized, or outstanding shares or stock, together with any warrants, options, or contract rights to purchase or acquire such interests at any time.

51.     "<u>Estates</u>" means the estates of the Debtors in these Chapter 11 Cases created pursuant to Section 541 of the Bankruptcy Code upon the commencement of these Chapter 11 Cases.

52.     "<u>Exculpated Parties</u>" means, collectively, (a) the Proponents, (b) Purchaser, and (c) with respect to each of the forgoing, their respective current and former members (including ex officio members), officers, directors, employees, partners, attorneys, financial advisors, accountants, managed funds, investment bankers, investment advisors, actuaries, professionals, agents and representatives (in each case in their respective capacities as such).

53.     "<u>Final Decree</u>" means the decree contemplated under Bankruptcy Rule 3022.

54.     "Final Distribution" means the last payment to Holders of Allowed Claims in accordance with the provisions of the Plan.

55.     "Final DIP Order" means that Order entered on October [], 2016 [Docket No.]

56.     "Final Order" means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction:  (i) that has not been reversed, stayed, modified, or amended; (ii) as to which the time to or the right to appeal or seek reconsideration, review, rehearing, or certiorari has expired or been waived (without regard to whether the time to seek relief from a judgment under Bankruptcy Rule 9024 has expired); and (iii) as to which no appeal or petition for reconsideration, review, rehearing, or certiorari is pending.

57.     "Governmental Unit" means the United States; State; Commonwealth, District, Territory, municipality, foreign state, department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under Chapter 11), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

58.     "GUC Contribution" means, if Holders of Unsecured Claims vote to accept the Plan, $10,000.  If Holders of Unsecured Claims vote to reject the Plan, the GUC Contribution shall equal $0.

59.     "Holder" means an Entity holding a Claim or Equity Interest.

60.     "Impaired" means with respect to a Claim or Class of Claims, a Claim or Class of Claims that is impaired within the meaning of Section 1124 of the Bankruptcy Code.

61.    "Initial Distribution Date" means the Effective Date, or as soon as practicable thereafter when the initial distribution shall be made to the Holders of Allowed Claims, as determined by the Liquidating Trustee in its reasonable discretion.

62.    "Insider" means an insider of any Debtor, as defined in Section 101(31) of the Bankruptcy Code.

63.    "Intercompany Claim" means a Claim held by a Debtor against another Debtor.

64.    "Interim Fee Order" means that certain "Order Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals" [D.I. ____] entered by the Bankruptcy Court on November __ , 2016.

65.    "Lien" means any charge against or interest in property (including, but not limited to, any mortgage, lien, pledge, charge, security interest, encumbrance, or other security device of any kind) to secure payment of a debt or performance of an obligation.

66.    "Liquidation Proceeds" means any Cash or other consideration paid to or realized by the Debtors or the Liquidating Trustee, as applicable, upon the sale, transfer, assignment, or other disposition of the Liquidating Trust Assets.

67.    "Liquidating Trust" means the grantor trust to be created upon the Effective Date for the benefit of the Trust Beneficiaries.

68.    "Liquidating Trust Agreement" means the agreement, substantially in the form included in the Plan Supplement governing the Liquidating Trust, as it may be subsequently modified from time to time.

69.    "Liquidating Trust Assets" means the assets held in the Liquidating Trust comprised of (i) Professional Fee Reserve; (ii) Administrative and Secured Claim Reserve;

(iii) Priority Claim Reserve; (iv) GUC Contribution (if any); (v) all Causes of Action; (vi) all Claims and rights of the Debtors under any D&O Liability Insurance Policy; (vii) any and all other assets, interests, rights, claims and defenses of the Debtors or Estates, including, without limitation, all rights under the Sale Order or any order of the Bankruptcy Court and (viii) after the Effective Date, Available Cash but solely to the extent that it that becomes a Liquidating Trust Asset pursuant to Article II.B of the Plan. Notwithstanding the foregoing, the proceeds of the Liquidating Trust Assets, other than the Professional Fee Reserve, Administrative and Secured Claim Reserve, Priority Claim Reserve and GUC Contribution (if any), shall be subject to the DIP Recovery Waterfall set forth in Article II.B of the Plan. To the extent the Liquidating Trust receives proceeds that are payable to the DIP Lender pursuant to the DIP Recovery Waterfall such funds shall not be Liquidating Trust Assets and shall be immediately payable and paid to the DIP Lender pursuant to Article II.B of the Plan.

70.    "Liquidating Trust Assets Account" means an interest-bearing bank account or money-market account to be established and held in trust by the Liquidating Trustee on or after the Effective Date for the purpose of holding the Liquidating Trust Assets and Trust Proceeds to be distributed under the Plan and any interest, dividends, or other income earned upon the investment of the Liquidating Trust Assets. The Liquidating Trust Assets Account will be funded by the Debtors or Liquidating Trustee, as applicable, on or immediately after the Effective Date with the Available Cash.

71.    "Liquidating Trust Interests" means the non-transferable interests in the Liquidating Trust, distributions of which will be made to Holders of Allowed Secured Claims, Allowed Priority Claims, Allowed Unsecured Claims and Allowed AT&T Unsecured Claims in accordance with Article V hereof.

72.     "Liquidating Trustee" means Roy Messing, Senior Managing Director of Ankura Consulting Group, LLC or such successor appointed as the trustee in accordance with the Liquidating Trust Agreement.

73.     "Litigation" means the interest of the Estates, the Debtors, or the Liquidating Trust, as applicable, in any and all claims, rights, and Causes of Action that have been or may be commenced by the Debtors or the Liquidating Trust, as applicable. Litigation includes any action not otherwise adjudicated, waived, released, abandoned, sold or compromised pursuant to any Order of this Court or the Sale Agreement including, without limitation, an action:  (i) to avoid and recover any transfers of property determined to be preferential, fraudulent, or avoidable pursuant to Sections 544, 545, 547, 548, 549(a), and 550 of the Bankruptcy Code; (ii) for the turnover of property to the Debtors or the Liquidating Trust, as applicable; (iii) for the recovery of property or payment of money that belongs to or can be asserted by the Debtors or the Liquidating Trust, as applicable; (iv) for compensation for damages incurred by the Debtors; and (v) equitable subordination actions against Creditors.

74.     "Litigation Recovery" means any Cash or other property received by the Debtors or the Liquidating Trust, as applicable, from all or any portion of the Litigation, including, but not limited to, awards of damages, attorneys' fees and expenses, interest, and punitive damages, whether recovered by way of settlement, execution on judgment, or otherwise. If any Litigation is pursued on a contingent-fee basis, the Litigation Recovery will be net of any contingent fee paid to legal counsel.

75.     "Other DIP Claims" means all obligations owed to the DIP Lender pursuant to the Final DIP Order other than Post-Petition DIP Advances and Roll-Up Claims. For the avoidance of doubt, Other DIP Claims include, without limitation, interest on Post-Petition DIP

Advances and Roll-Up Claims, as well as fees and expenses payable to the DIP Lender by the Debtors pursuant to the Final DIP Order.

76.    "Permitted Variance" means ten percent (10%).

77.    "Person" means any individual, corporation, limited liability company, general partnership, association, joint stock company, joint venture, estate, trust, unincorporated organization, Governmental Unit, or other Entity.

78.    "Petition Date" means October 5, 2016, the date on which Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.

79.    "Plan" means Plan of Liquidation, either in its present form or as it may be altered, amended, modified, or supplemented from time to time in accordance with the Plan, the Bankruptcy Code, and the Bankruptcy Rules, including, without limitation, any exhibits and schedules hereto, either in its present form or as the same may be amended, modified, or supplemented from time to time in accordance with the terms and provisions hereof.

80.    "Plan Documents" means the Plan, the Disclosure Statement, the Plan Supplement, any plan support letters, or other documents or pleadings filed by the Debtors relating to the Plan.

81.    "Plan Interest Rate" means the rate of interest determined by the Bankruptcy Court upon Confirmation, if necessary, for purposes of the application of Section 1124 (impairment) or Section 1129(b) of the Bankruptcy Code (Present Value), as the case may be, to the distributions to certain Creditors under the Plan. The Plan Interest Rate may be different for different Classes of Claims.

82.    "Plan Objection Deadline" means the deadline established by the Bankruptcy Court for filing and serving objections to Confirmation of the Plan.

83.     "Plan Supplement" means the pleading or pleadings identified in the Plan or Disclosure Statement for filing with the Bankruptcy Court not later than ten (10) calendar days prior to the earlier of the Plan Objection Deadline or the deadline for submission of Ballots, which shall include certain exhibits and schedules to this Plan, as well as documents, agreements, and instruments evidencing and effectuating the Plan.

84.     "Post-Petition DIP Advance" means the outstanding principal amount advanced by the DIP Lender to the Debtors after the Petition Date.  In addition, Post-Petition DIP Advance shall include claims by the DIP Lender for indemnification.

85.     "Present Value" means the present value as of the Effective Date of Cash payments made under the Plan by the Debtors using the Plan Interest Rate.

86.     "Priority Claim" means any Claim, other than an Administrative Claim or a Priority Tax Claim, to the extent entitled to priority under Section 507(a) of the Bankruptcy Code.

87.     "Priority Claims Reserve" means the reserve funded by the Debtors pursuant Article V.S of the Plan, in an amount acceptable to the DIP Lender, to pay Priority Claims that shall or may become Allowed Priority Claims in accordance with the terms of the Plan.

88.     "Priority Tax Claim" means a Claim of a Governmental Unit of the kind specified in Sections 502(i) and 507(a)(8) of the Bankruptcy Code.

89.     "Priority Tax Claims Reserve" means the reserve funded by the Debtors pursuant to Article V.S. the Plan, in an amount acceptable to the DIP Lender, to pay Priority Tax Claims that shall or may become Allowed Priority Tax Claims in accordance with the terms of the Plan.

90.     "Proponents" means the Debtors and AT&T.

91.     "Pro Rata" means proportionately so that, with respect to a Claim, the ratio of: (a) (i) the amount of property distributed on account of a particular Claim to (ii) the Allowed amount of the Claim, is the same as the ratio of (b) (i) the amount of property distributed on account of all Allowed Claims in the Class or Classes entitled to share in the applicable distribution to (ii) the amount of all Allowed Claims in such Class or Classes.

92.     "Professional" means an Entity: (a) employed pursuant to a Final Order in accordance with Sections 327 and 1103 of the Bankruptcy Code and to be compensated for services rendered prior to the Effective Date, pursuant to Sections 327, 328, 329, 330, and 331 of the Bankruptcy Code, or (b) for which compensation and reimbursement has been allowed by the Bankruptcy Court pursuant to Section 503(b)(4) of the Bankruptcy Code.

93.     "Professional Fee Claim" means those fees and expenses claimed by Professionals pursuant to Sections 330, 331, or 503 of the Bankruptcy Code, and accrued and unpaid as of the Effective Date.

94.     "Professional Fee Reserve" means the reserve, in an amount acceptable to the DIP Lender, funded by the Debtors pursuant to Article V.S. of the Plan to pay Fee Claims that shall or may become Allowed Fee Claims in accordance with the terms of the Plan. For the avoidance of doubt, the amount of the Professional Fee Reserve shall not exceed the professional fees included in the Approved Budget plus the Permitted Variance.

95.     "Proof of Claim" means a proof of claim filed pursuant to Section 501 of the Bankruptcy Code or any order of the Bankruptcy Court, together with supporting documents.

96.     "Purchaser" means the successful bidder under the Sale Agreement.

97.     "Reserve Estimate" means the amount of funds necessary to fund the Reserves for payments pursuant to the Plan, which amounts shall be acceptable to the DIP Lender.

98.    "Reserves" means the reserves provided for in this Plan, including the Administrative and Secured Claims Reserve, the Priority Tax Claims Reserve, the Professional Fee Reserve, and the Priority Claims Reserve, each of which shall be funded with the Reserve Estimate.

99.    "Roll-Up Claims" means principal amounts owed to the DIP Lender allowed pursuant to the Final DIP Order for advances made by the DIP Lender (or its affiliates) prior to the Petition Date.

100.    "Sale Agreement" means the Asset Purchase Agreement by and among the Debtors and the Purchaser in connection with the sale of substantially all of the assets of the Debtors, and as further amended, supplemented, or modified from time to time.

101.    "Sale Order" means any order authorizing the sale of substantially all of the assets of the Debtors.

102.    "Schedules" means the schedules of assets and liabilities as the Bankruptcy Court required the Debtors to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time, and the Debtors' statements of financial affairs filed with the Bankruptcy Court, as the Bankruptcy Court required the Debtors to file pursuant to Section 521 of the Bankruptcy Code, the Official Bankruptcy Forms, and the Bankruptcy Rules, as they may be amended and supplemented from time to time.

103.    "Secured Claim" means any Claim that is secured in whole or part, as of the Petition Date, by a Lien which is valid, perfected, and enforceable under applicable law and is not subject to avoidance under the Bankruptcy Code or applicable non-bankruptcy law, or subject to

setoff under Section 553 of the Bankruptcy Code, to the extent of the value of such Lien or right of setoff as determined under Sections 506(a) or 1129(b) of the Bankruptcy Code, as applicable.

104.   "Subsequent Distribution Date" means any date after the Initial Distribution Date upon which the Liquidating Trust makes a distribution to any Holders of Allowed Administrative, Secured, Priority, or Unsecured Claims.

105.   "Tax" means any tax, charge, fee, levy, impost, or other assessment by any federal, state, local, or foreign taxing authority, including, without limitation, income, excise, property, sales, transfer, employment, payroll, franchise, profits, license, use, *ad valorem*, estimated, severance, stamp, occupation, and withholding tax. "Tax" shall include any interest or additions attributable to, imposed on, or with respect to such assessments.

106.   "Tax Claim" means all or that portion of an Allowed Claim held by a Governmental Unit for a Tax assessed or assessable against a Debtor.

107.   "Trust Proceeds" means the aggregate amount of Cash or other funds of the Debtors available for payment of the Allowed Claims of Creditors of the Liquidating Trust, including, without limitation, Available Cash of the Liquidating Trust and any proceeds of Liquidating Trust Assets.

108.   "Unimpaired Claim" means an unimpaired Claim within the meaning of Section 1124 of the Bankruptcy Code.

109.   "Unsecured Claim" means any Claim against any of the Debtors or their Estate that is not a Secured Claim, Administrative Claim, Priority Tax Claim, Priority Claim, Intercompany Claim or AT&T Unsecured Claim.

110.   "U.S. Trustee" means the Office of the United States Trustee for the District of Delaware.

111. "<u>Voting Instructions</u>" means the instructions for voting on the Plan contained in <u>Article IV</u> of the Disclosure Statement and in the Ballots.

112. "<u>Voting Record Date</u>" means the date as of which the identity of Holders of Claims is set for purposes of determining the Entities entitled to receive and vote on the Plan. Pursuant to Bankruptcy Rules 3017(d) and 3018(a); this date is the date of commencement of the hearing to consider approval of the Disclosure Statement, November __, 2016.

## II.

## UNCLASSIFIED ADMINISTRATIVE CLAIMS, PROFESSIONAL FEES, AND PRIORITY TAX CLAIMS

### A.   Introduction

Certain types of Claims are not placed into voting Classes; instead they are unclassified. They are not considered Impaired and they do not vote on the Plan because they are automatically entitled to the specific treatment provided for them in the Bankruptcy Code. As such, the Debtors have not placed the following Claims in a Class:

### B.   DIP Claims

In order to facilitate Distributions to junior creditors under this Plan, the DIP Lender has agreed to impair its recoveries under the Plan. Accordingly, unless the DIP Lender shall agree to different treatment, the DIP Lender shall receive Cash in accordance with the DIP Recovery Waterfall on account of the DIP Claims.

1. DIP Recovery Waterfall. On the Effective Date, the Debtors shall fund the Reserves from the Available Cash. After funding the Reserves, if the Holders of Class 3 Claims vote to accept the Plan, the Debtors shall also fund the GUC Distribution. Immediately after funding such reserves and the GUC Distribution, if applicable, the Reserves and GUC Distribution

shall become Liquidating Trust Assets. Remaining Available Cash (or, if after the Effective Date, proceeds of Liquidating Trust Assets (other than the Reserves and GUC Distribution)) shall be distributed as follows:

      a.      To the DIP Lender to repay Post-Petition DIP Advances.

      b.      Next, to the DIP Lender to repay the Roll-Up Claim.

      c.      The remaining Available Cash shall be distributed as follows:

      (i)      Until the DIP Lender is paid in full on account of its Other DIP Claims:

      (A)      Fifty percent (50%) to the DIP Lender on account of the Other DIP Claims; and

      (B)      Fifty percent (50%) to the Liquidating Trust as a Liquidating Trust Asset

      (ii)      Thereafter, remaining Available Cash shall be a Liquidating Trust Asset.

For the avoidance of doubt, to the extent the Liquidating Trustee receives proceeds of Liquidating Trust Assets (other than the Reserves, GUC Distribution or Liquidating Trust Assets from the foregoing waterfall), the Liquidating Trustee shall apply the foregoing waterfall to such proceeds, and to the extent such proceeds are payable to the DIP Lender such proceeds shall not be considered Liquidating Trust Assets and shall be immediately payable to the DIP Lender.

**C.**    **Administrative Claims**

Except to the extent that a Holder of an Allowed Administrative Claim agrees to a less favorable treatment, each Holder of an Allowed Administrative Claim, other than a Professional Fee Claim, shall receive, without interest, Cash equal to the Allowed amount of such Claim:  (a) on

or as soon as practicable after the later of (i) the Effective Date, or (ii) the date upon which the Bankruptcy Court enters a Final Order determining or approving such Claim; (b) in accordance with the terms and conditions of agreements between the Holder of such Claim and the Debtors or the Liquidating Trustee, as the case may be; (c) with respect to any Administrative Claims representing obligations incurred in the ordinary course of the Debtors' business, upon such regular and customary payment or performance terms as may exist in the ordinary course of the Debtors' business or as otherwise provided in the Plan; or (d) with respect to statutory fees due pursuant to 28 U.S.C. § 1930(a)(6), such fees will be paid as and when due under applicable law.

Holders of Administrative Claims (including, without limitation, Professionals requesting compensation or reimbursement of such expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code) that do not file requests or applications for payment by the applicable deadline provided for herein shall be prohibited and forever barred, estopped and enjoined from asserting such claims against the Debtors, their Estates, the Liquidating Trust, or their successors or assigns, or their property and such claims shall be deemed discharged as of the Effective Date. Any objection to Professional Fee Claims shall be filed on or before the objection deadline specified in the application for final compensation or order of the Bankruptcy Court.

The Administrative Claims Bar Date for all Administrative Claims (other than Professional Fee Claims) shall be thirty (30) days after the occurrence of the Effective Date. The Debtors shall serve a notice, within five days after the Effective Date, of the Administrative Claims Bar Date on all potential Holders of Administrative Claims. Notwithstanding the foregoing, all fees due and payable under 28 U.S.C. § 1930 that have not been paid shall be paid on or before the Effective Date, and the U.S. Trustee shall not be required to file a request for payment of such fees.

**D.     <u>Professional Fee Claims</u>**

Professionals requesting compensation or reimbursement of expenses pursuant to Sections 327, 328, 330, 331, 503(b), or 1103 of the Bankruptcy Code or required to file fee applications by order of the Bankruptcy Court for services rendered prior to the Effective Date must file and serve pursuant to the notice provisions of the Interim Fee Order, an application for final allowance of compensation and reimbursement of expenses no later than forty-five (45) days after the Effective Date. All such applications for final allowance of compensation and reimbursement of expenses will be subject to the authorization and approval of the Bankruptcy Court. For avoidance of doubt, the Liquidating Trustee is not authorized under the Plan to object to applications for final allowance of compensation and reimbursement of expenses.

**E.**     **Priority Tax Claims**

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in exchange for full and final satisfaction, settlement, release and discharge of each Allowed Priority Tax Claim, the Liquidating Trust shall pay each holder of an Allowed Priority Tax Claim the full unpaid amount of such Allowed Priority Tax Claim under one of the following options (at the Liquidating Trust's sole and exclusive election): (i) payment on the Effective Date, (ii) payment on the date such Allowed Priority Tax Claim becomes an Allowed Claim, (iii) payment on the date such Allowed Priority Tax Claim is payable under applicable non-bankruptcy law, or (iv) payment within the time specified under Bankruptcy Code Section 1129(a)(9).

**III.**

**CLASSIFICATION AND TREATMENT OF**

**CLASSIFIED CLAIMS AND EQUITY INTERESTS**

**A.**     **Summary**

26

The categories of Claims and Equity Interests listed below classify Claims and Equity Interests for all purposes, including voting, Confirmation, and Distribution (if any) pursuant to the Plan and pursuant to Sections 1122 and 1123(a)(1) of the Bankruptcy Code. A Claim or Equity Interest shall be deemed classified in a particular Class only to the extent that the Claim or Equity Interest qualifies within the description of that Class and shall be deemed classified in a different Class to the extent that any remainder of such Claim or Equity Interest qualifies within the description of such different Class. A Claim or Equity Interest is in a particular Class only to the extent that such Claim or Equity Interest is Allowed in that Class and has not been paid or otherwise settled prior to the Effective Date. There is only a single Class for each category of Claims or Equity Interests into which all such Claims or Equity Interests against any one or more of the Debtors are classified.

**B.**    **Classification and Treatment of Claims against the Debtor**

The classification of Claims and Equity Interests against the Debtors pursuant to the Plan is as follows:

| Class | Status | Voting Rights |
|---|---|---|
| Class 1 – Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 2 – Secured Claims | Impaired | Entitled to Vote |
| Class 3 – Unsecured Claims | Impaired | Entitled to Vote |
| Class 4 – AT&T Unsecured Claim | Impaired | Entitled to Vote |
| Class 5 – Intercompany Claims | Impaired | Not Entitled to Vote |
| Class 6 – Equity Interests | Impaired | Not Entitled to Vote |

1.    Class 1 – Priority Claims

a.    **Classification:**  Class 1 consists of Priority Claims.

b.    **Treatment:**  The Liquidating Trustee shall pay the Allowed amount of each Priority Claim to each Entity holding a Priority Claim as soon as practicable following the later of:  (a) the Effective Date and (b) the date such Priority Claim becomes an Allowed Claim

(or as otherwise permitted by law). The Liquidating Trustee shall pay each Entity holding a Priority Claim in Cash in full in respect of such Allowed Claim without interest from the Petition Date; *provided, however*, that such Entity may be treated on such less favorable terms as may be agreed to in writing by such Entity.

       **c.**    **Voting:**  Class 1 is not an Impaired Class and Holders of Priority Claims are not entitled to vote on the Plan.

      2.    <u>Class 2 – Secured Claims</u>

       **a.**    **Classification:**  Class 2 consists of Secured Claims.

       **b.**    **Treatment:**  Except to the extent previously paid in full, to the extent any Secured Claims exist, at the option of the Debtors or the Liquidating Trustee, as applicable, one of the following treatments shall be provided:  (i) the Holder of such Claim shall retain its Lien on its collateral until such collateral is sold, and the proceeds of such sale, less costs and expenses of disposing of such collateral, shall be paid to such Holder in full satisfaction, release, and discharge of such Allowed Secured Claim; (ii) on or as soon as practicable after the later of (a) the Effective Date, or (b) the date upon which the Bankruptcy Court enters a Final Order determining or allowing such Claim, or as otherwise agreed between the Holder of such Claim and the Debtors or the Liquidating Trustee, as applicable, the Holder of such Secured Claim will receive a Cash payment equal to the amount of its Allowed Secured Claim in full satisfaction, release, and discharge of such Secured Claim; or (iii) the collateral securing the Creditor's Secured Claim shall be abandoned to such Creditor, in full satisfaction, release, and discharge of such Secured Claim.

       **c.**    **Voting:**  Class 2 is an Impaired Class and Holders of Secured Claims are entitled to vote to accept or reject the Plan.

3.    Class 3 – Unsecured Claims

a.    **Classification:**  Class 3 consists of Unsecured Claims.

b.    **Treatment:**  Each Holder of an Allowed Unsecured Claim in Class 3 shall receive a Pro Rata share of the Class 3 Liquidating Trust Interests following the payment or reserve for Administrative Claims, Priority Tax Claims, Priority Claims, and Secured Claims. Unsecured Claims are subject to all statutory, equitable, and contractual subordination claims, rights, and grounds available to the Debtors, the Estates, and pursuant to this Plan, the Liquidating Trustee, which subordination claims, rights, and grounds are fully enforceable prior to, on, and after the Effective Date.  The DIP Lender will contribute the GUC Distribution if Holders of Unsecured Claims vote to accept the Plan. If Holders of Unsecured Claims reject the Plan the GUC Contribution shall equal $0. Holders of Unsecured Claims shall also be entitled to receive a Pro Rata share of the Class 4 Liquidating Trust Interests distributed to Holders of Class 4 AT&T Unsecured Claims. For the avoidance of doubt Holders of Class 4 AT&T Unsecured Claims shall not be entitled to receive Class 3 Liquidating Trust Interests.

c.    **Voting:**  Class 3 is an Impaired Class and Holders of Unsecured Claims are entitled to vote to accept or reject the Plan.

4.    Class 4 – AT&T Unsecured Claims

a.    **Classification:**  Class 4 consists of AT&T Unsecured Claims

b.    **Treatment:**  Each Holder of an Allowed AT&T Unsecured Claim in Class 4 shall, along with Holders of Class 3 Unsecured Claims, receive a Pro Rata share of the Class 4 Liquidating Trust Interests.

c.    **Voting:**  Class 4 is an Impaired Class and Holders of AT&T Unsecured Claims are entitled to vote to accept or reject the Plan.

5.    <u>Class 5 - Intercompany Claims</u>

a.    **Classification:**  Class 5 consists of all Intercompany Claims

b.    **Treatment:**  There shall be no Distribution on account of Class 5 Intercompany Claims. The Holders of Allowed Intercompany Claims shall receive nothing on account of such Allowed Intercompany Claim and such Allowed Intercompany Claim shall be discharged as of the Effective Date.

c.    **Voting:**  Class 5 is Impaired. However, the Holders of Claim 5 Claims are not entitled to vote to accept or reject the Plan pursuant to section 1124(g) of the Bankruptcy Code and their votes will not be solicited. The Holders of Class 5 Claims are deemed to reject the Plan.

6.    <u>Class 6 – Equity Interests</u>

a.    **Classification:**  Class 6 consists of all Equity Interests in the Debtors.

b.    **Treatment:**  There shall be no Distribution on account of Class 6 Equity Interests. Upon the Effective Date, the Equity Interests will be deemed cancelled and will cease to exist.

c.    **Voting:**  Holders of Equity Interests will receive no distribution under the Plan and therefore are deemed to have rejected the Plan. Accordingly, Holders of Equity Interests are not entitled to vote.

**IV.**

**<u>ACCEPTANCE OR REJECTION OF THE PLAN</u>**

A.    **<u>Voting Classes</u>**

Each Holder of an Allowed Claim in Classes 2, 3 and 4 is entitled to vote either to accept or to reject the Plan. Only those votes cast by Holders of Allowed Claims shall be counted in determining whether acceptances have been received sufficient in number and amount to obtain Confirmation.

**B.**      **Acceptance by Impaired Classes**

An Impaired Class of Claims shall have accepted the Plan if:  (a) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of at least two-thirds in amount of the Allowed Claims actually voting in such Class have voted to accept the Plan, and (b) the Holders (other than any Holder designated under Section 1126(e) of the Bankruptcy Code) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept the Plan.

**C.**      **Presumed Rejection of Plan**

The Holders of Class 5 Intercompany Claims and Class 6 Equity Interests shall not receive any distributions under the Plan and are therefore deemed to reject the Plan and are not entitled to vote.

**D.**      **Nonconsensual Confirmation**

Because Classes 5 and 6 are deemed to reject the Plan by operation of law, the Proponents reserve the right to amend the Plan in accordance with Article X.F of the Plan or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both. With respect to Impaired Classes of Claims or Equity Interests that are deemed to reject the Plan, the Proponents shall request that the Bankruptcy Court confirm the Plan pursuant to section 1129(b) of the Bankruptcy Code.

**V.**

**MEANS FOR IMPLEMENTATION OF THE PLAN**

**A.      Appointment of the Liquidating Trustee**

The Proponents hereby appoint Roy Messing, Senior Managing Director of Ankura Consulting Group, LLC as the Liquidating Trustee. From and after the Effective Date, any professionals may be retained by the Liquidating Trustee, without further need for documentation or Bankruptcy Court approval. All fees and expenses incurred by the professionals retained by the Liquidating Trustee following the Effective Date shall be paid by the Liquidating Trust from the Liquidating Trust Assets (after payment in full of all Allowed Administrative Claims) in accordance with the Liquidating Trust Agreement.

The Liquidating Trustee shall serve in accordance with the Liquidating Trust Agreement and this Plan. The Liquidating Trustee may be replaced in accordance with the provisions of the Liquidating Trust Agreement.

**B.      The Liquidating Trust**

      1.      Formation of the Liquidating Trust

On the Effective Date, the Liquidating Trust shall be established pursuant to the Liquidating Trust Agreement for the purpose of, *inter alia*, (a) administering the Liquidating Trust Assets, (b) prosecuting and/or resolving all Disputed Claims, (c) investigating and pursuing the Causes of Action, and (d) making all Distributions to the Beneficiaries provided for under the Plan. The Liquidating Trust is intended to qualify as a liquidating trust pursuant to Treas. Reg. § 301.7701-4(d).

      2.      Funding of the Liquidating Trust

On the Effective Date, the Liquidating Trust Assets shall vest automatically in the Liquidating Trust. The Plan shall be considered a motion pursuant to Sections 105, 363 and 365 of the Bankruptcy Code for such relief. The transfer of the Liquidating Trust Assets to the Liquidating Trust shall be made for the benefit and on behalf of the Beneficiaries. The assets comprising the Liquidating Trust Assets will be treated for tax purposes as being transferred by the Debtors to the Beneficiaries pursuant to the Plan in exchange for their Allowed Claims and then by the Beneficiaries to the Liquidating Trust in exchange for the beneficial interests in the Liquidating Trust. The Beneficiaries shall be treated as the grantors and owners of the Liquidating Trust. Upon the transfer of the Liquidating Trust Assets, the Liquidating Trust shall succeed to all of the Debtors' rights, title and interest in the Liquidating Trust Assets, and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets.

Except to the extent definitive guidance from the IRS or a court of competent jurisdiction (including the issuance of applicable Treasury Regulations or the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one) indicates that such valuation is not necessary to maintain the treatment of the Liquidating Trust as a liquidating trust for purposes of the Internal Revenue Code and applicable Treasury Regulations, as soon as possible after the Effective Date, the Liquidating Trustee shall make a good-faith valuation of the Liquidating Trust Assets. The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Liquidating Trust and the Beneficiaries) for all federal income tax purposes.

C.    **Rights and Powers of the Liquidating Trustee**

The Liquidating Trustee shall be deemed the Estates' representative in accordance with Section 1123 of the Bankruptcy Code and shall have all the rights and powers set forth in Section

II of the Liquidating Trust Agreement, including, without limitation, the powers of a trustee under Sections 704 and 1106 of the Bankruptcy Code and Rule 2004 of the Bankruptcy Rules to act on behalf of the Liquidating Trust. Without limiting the foregoing, the Liquidating Trustee will have the right to, among other things, (1) effect all actions and execute all agreements, instruments and other documents necessary to implement the provisions of the Plan and the Liquidating Trust Agreement; (2) liquidate the Liquidating Trust Assets; (3) investigate, prosecute, settle, abandon or compromise any Causes of Action; (4) make Distributions as contemplated hereby, (5) establish and administer any necessary reserves for Disputed Claims that may be required; (6) object to the Disputed Claims and prosecute, settle, compromise, withdraw or resolve in any manner approved by the Bankruptcy Court such objections; (7) assert or waive any attorney-client privilege on behalf of the Debtors and their Estates with regard to acts or events during time periods prior to the Petition Date; and (8) employ and compensate professionals and other agents, including, without limitation, existing Professionals employed by the Debtors in accordance with the Liquidating Trust Agreement or the Plan, *provided, however*, that any such compensation shall be made only out of the Liquidating Trust Assets, to the extent not inconsistent with the status of the Liquidating Trust as a liquidating trust within the meaning of Treas. Reg. § 301.7701-4(d) for federal income tax purposes.

D.    **Fees and Expenses of the Liquidating Trust**

Subject to payment in full of all Allowed Administrative Claims, and except as otherwise ordered by the Bankruptcy Court, expenses incurred by the Liquidating Trust on or after the Effective Date shall be paid in accordance with the Liquidating Trust Agreement without further order of the Bankruptcy Court.

E.    **Transfer of Beneficial Interests in the Liquidating Trust**

Liquidating Trust Interests shall not be transferable except upon death of the interest holder or by operation of law. The Liquidating Trust shall not have any obligation to recognize any transfer of Claims or Equity Interests occurring after the Distribution Record Date.

**F.      Available Cash**

On or as soon as practicable following the Effective Date, the Liquidating Trust Assets Account shall be opened by the Liquidating Trustee and funded with the Liquidating Trust Assets, which funds shall constitute Liquidating Trust Assets. Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Litigation Recovery, but subject to the terms of this Plan (including Article II.B) the Liquidating Trustee shall deposit such funds into the Liquidating Trust Assets Account, and they shall become part of the Liquidating Trust Assets.

**G.      Litigation**

Except as otherwise provided in this Plan, all Litigation is retained, vested in the Liquidating Trust, and preserved pursuant to Section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Liquidating Trustee. To the extent any Litigation is already pending on the Effective Date, the Liquidating Trustee, as successor to the Debtors (in any derivative capacity or as an intervening party), will continue the prosecution of such Litigation and shall be substituted as plaintiff, defendant, or in any other capacity for the Debtors pursuant to this Plan and the Confirmation Order on the Effective Date without need for any further motion practice or notice in any case, action, or matter.

**H.      Full and Final Satisfaction**

Commencing upon the Effective Date, subject to the terms of this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall be authorized and directed to distribute the amounts required under the Plan to the Holders of Allowed Claims according to the provisions of

the Plan. Upon the Effective Date, all Debts of the Debtors shall be deemed fixed and adjusted pursuant to this Plan, and the Liquidating Trust shall have no liability on account of any Claims or Equity Interests except as set forth in this Plan and in the Liquidating Trust Agreement. All payments and all distributions made by the Liquidating Trustee under the Plan shall be in full and final satisfaction, settlement, and release of all Claims against the Liquidating Trust; *provided, however*, that nothing contained in this <u>Article V</u> of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtors under Bankruptcy Code Section 1141(d).

I.    **Distribution Procedures**

1.    <u>Distribution Dates</u>. The Liquidating Trustee shall make Distributions to Holders of Claims as provided in <u>Article III</u> of the Plan. Subject to the terms of the Liquidating Trust Agreement, the Liquidating Trustee may, in its sole discretion, make a full or partial Pro Rata Distribution to the Holders of Class 3 Unsecured Claims and Class 4 AT&T Unsecured Claims on the Initial Distribution Date or a Subsequent Distribution Date.

2.    <u>Subsequent Distributions</u>. Any Distribution not made on the Initial Distribution Date or a Subsequent Distribution Date because the Claim relating to such Distribution had not been Allowed on that Distribution Date shall be held by the Liquidating Trust for Distribution on any Subsequent Distribution Date after such Claim is Allowed. No interest shall accrue or be paid on the unpaid amount of any Distribution.

3.    <u>Distribution Record Date</u>. Except as otherwise provided in a Final Order of the Bankruptcy Court, the transferees of Claims that are transferred pursuant to Bankruptcy Rule 3001 on or prior to the Distribution Record Date will be treated as the Holders of those Claims for all purposes, notwithstanding that any period provided by Bankruptcy Rule 3001 for objecting to

the transfer may not have expired by the Distribution Record Date. The Liquidating Trustee shall have no obligation to recognize any transfer of any Claim occurring after the Distribution Record Date. In making any Distribution with respect to any Claim, the Liquidating Trustee shall be entitled instead to recognize and deal with, for all purposes hereunder, only the Entity that is listed on the proof of claim filed with respect thereto or on the Schedules as the Holder thereof as of the close of business on the Distribution Record Date and upon such other evidence or record of transfer or assignment that is known to the Liquidating Trustee as of the Distribution Record Date.

4.    <u>Manner of Cash Payments Under the Plan or Liquidating Trust Agreement</u>. Cash payments made pursuant to the Plan or Liquidating Trust Agreement shall be in United States dollars by checks drawn on a domestic bank selected by the Liquidating Trustee or by wire transfer from a domestic bank, at the option of the Liquidating Trustee.

5.    <u>Time Bar to Cash Payments by Check</u>. Checks issued by the Liquidating Trustee on account of Allowed Claims shall be null and void if not negotiated within 120 days after the date of issuance thereof. Requests for the reissuance of any check that becomes null and void pursuant to this Article shall be made directly to the Liquidating Trustee by the Holder of the Allowed Claim to which the check was originally issued. Any Claim in respect of such voided check shall be made in writing on or before the later of six months after the Effective Date or 120 days after the date of issuance thereof. After the later of such dates, any Holder of a Claim relating to a voided check shall not be entitled to any Distribution from the Liquidating Trust on account of such Claim, and the proceeds of such check shall revest in and become the property of the Liquidating Trust as unclaimed property in accordance with Section 347(b) of the Bankruptcy Code.

**J.    <u>Liquidating Trust Assets Account</u>**

Unless otherwise provided in the Confirmation Order, the Liquidating Trust Assets Account shall be invested by the Liquidating Trustee in a manner consistent with the objectives of Section 345(a) of the Bankruptcy Code and in its reasonable and prudent exercise of discretion. The Liquidating Trustee shall have no obligation or liability to Beneficiaries in connection with such investments in the event of any unforeseeable insolvency of any financial institution where such funds are held.

K.      **Resolution of Disputed Claims**

1.      <u>No Distribution Pending Allowance</u>. Notwithstanding any other provision of the Plan, the Liquidating Trustee shall not Distribute any Cash or other property on account of any Disputed Claim unless and until such Claim becomes Allowed. Nothing contained herein, however, shall be construed to prohibit or require payment or Distribution on account of any undisputed portion of a Claim.

2.      <u>Resolution of Disputed Claims</u>. Unless otherwise ordered by the Bankruptcy Court after notice and a hearing, the Liquidating Trustee shall have the right to the exclusion of all others (except as to the Professionals' applications for allowance of compensation and reimbursement of expenses under Sections 330 and 503 of the Bankruptcy Code) to make, file, prosecute, settle, withdraw, or resolve objections to Claims. The costs of pursuing the objections to Claims shall be borne by the Liquidating Trust. From and after the Confirmation Date, all objections with respect to Disputed Claims shall be litigated to a Final Order except to the extent, the Liquidating Trustee elects to withdraw any such objection or the Liquidating Trustee and the Claimant elect to compromise, settle, or otherwise resolve any such objection, in which event they may settle, compromise, or otherwise resolve any Disputed Claim or Disputed Equity Interest without approval of the Bankruptcy Court.

3.     Objection Deadline. All objections to Disputed Claims shall be filed and served upon the Claimant not later than the Claims Objection Deadline. If and when the Liquidating Trustee ever determines that there is likely to be remaining Liquidation Proceeds realized by the Liquidating Trust after the payment in full of all Liquidating Trust expenses, Allowed Administrative Claims, Allowed Priority Claims, Allowed Secured Claims, and Allowed Unsecured Claims, with interest accrued from and after the Petition Date, the Liquidating Trustee will file a notice to this effect with the Bankruptcy Court.

4.     Estimation of Claims. At any time, (a) prior to the Effective Date, the Debtors, and (b) after the Effective Date, the Liquidating Trustee, may request that the Bankruptcy Court estimate any contingent or unliquidated Claim to the extent permitted by Section 502(c) of the Bankruptcy Code regardless of whether the Debtors or the Liquidating Trust have previously objected to such Claim or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall have jurisdiction to estimate any Claim at any time during Litigation concerning any objection to such Claim, including during the pendency of any appeal relating to any such objection. If the Bankruptcy Court estimates any contingent or unliquidated Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on the Claim, as determined by the Bankruptcy Court. If the estimated amount constitutes a maximum limitation on the Claim, the Debtors or the Liquidating Trust, as applicable, may elect to pursue supplemental proceedings to object to the ultimate allowance of the Claim. All of the aforementioned Claims objection, estimation, and resolution procedures are cumulative and not exclusive of one another. Claims may be estimated and subsequently compromised, settled, withdraw, or resolved by any mechanism of the Bankruptcy Court.

5.      <u>Disallowance of Certain Claims</u>. Any Claims held by Entities from which property is recoverable under Sections 542, 543, 550, or 553 of the Bankruptcy Code or Entities that are transferees of transfers avoidable under Section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, provided that such Cause of Action is retained by the Liquidating Trust, shall be deemed disallowed pursuant to Section 502(d) of the Bankruptcy Code, and Holders of such Claims may not receive any Distributions on account of such Claims until such time as such Causes of Action against that Entity have been resolved or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Estates by that Entity have been turned over or paid to the Debtors or Liquidating Trust. Notwithstanding the foregoing, such Claims shall be treated as Disputed Claims for purposes of the Disputed Claim Reserve.

6.      <u>Adjustment Without Objection</u>. Any Claim that has been paid or satisfied, or any Claim that has been amended or superseded, may be adjusted or expunged on the Claims Register at the direction of the Debtors or the Liquidating Trustee, as applicable, without an objection filed and without further notice to or action, order, or approval of the Bankruptcy Court.

**L.      Reserve Provisions for Disputed Claims**

1.      <u>Establishment of Disputed Reserve</u>. On or after the Effective Date, the Liquidating Trustee shall establish a Cash reserve for the treatment of Disputed Claims (the "<u>Disputed Claim Reserve</u>"). On each Distribution date after the Effective Date in which the Liquidating Trustee makes Distributions to Holders of Allowed Claims, the Liquidating Trustee shall retain on account of Disputed Claims an amount the Liquidating Trustee estimates is necessary to fund the Pro Rata Share of such Distributions to Holders of Disputed Claims if such Claims were Allowed, with any Disputed Claims that are unliquidated or contingent being reserved in an amount reasonably determined by the Liquidating Trustee.

2.      <u>Maintenance of Disputed Reserve</u>. The Liquidating Trust shall hold property in the Disputed Claim Reserve in trust for the benefit of the Holders of Claims ultimately determined to be Allowed. The Disputed Claim Reserve shall be closed and extinguished by the Liquidating Trust when all Distributions and other dispositions of Cash of other property required to be made hereunder will have been made in accordance with the terms of the Plan. Upon closure of the Disputed Claim Reserve, all Cash or other property held in that Reserve shall revest in and become unrestricted property of the Liquidating Trust. All funds or other property that vest or revest in the Liquidating Trust pursuant to this paragraph shall be (a) used to pay the fees and expenses of the Liquidating Trust as and to the extent set forth in the Liquidating Trust Agreement, and (b) thereafter distributed on a Pro Rata basis to Holders of Allowed Claims.

3.      Limitations on Funding Disputed Reserve. Except as expressly set forth in the Plan, neither the Debtors nor the Liquidating Trustee shall have any duty to fund the Disputed Claim Reserve.

**M.    <u>Rounding</u>**

Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

**N.    <u>No Interim Cash Payments of Less Than $50 on Account of Allowed Claims</u>**

Notwithstanding anything herein to the contrary, except with respect to Administrative, Priority Tax, Secured and Priority Claims, if a Distribution to be made to a Holder of an Allowed Claim on the Initial Distribution Date or any Subsequent Distribution Date would be $50 or less in the aggregate, no such Distribution will be made to that Holder unless a request therefor is made in writing to the Liquidating Trustee no later than 20 days after the Effective Date. Such Cash shall be held for such Holder until the earlier of (i) the next time an interim distribution is made to the

Holders of Allowed Claims (unless the distribution would still be less than $50, in which case this Section shall again apply), or (ii) subject to Article V.O below, the date on which Final Distributions are made to the Holders of Allowed Claims.

## O.    Delivery of Distributions and Unclaimed Property

1.    Delivery of Distributions. Subject to Bankruptcy Rule 9010 and except as otherwise provided herein, Distributions to the Holders of Allowed Claims shall be made by the Liquidating Trustee at (a) the address of each Claimant as set forth in the Schedules, unless superseded by the address set forth on proof(s) of claim filed by such Claimant, or (b) the last known address of such Claimant if no proof of claim is filed or the Debtors have been notified in writing of a change of address. If any Distribution is returned as undeliverable, the Liquidating Trustee shall make reasonable efforts to determine the current address of the Holder of the Claim with respect to which the Distribution was made as the Liquidating Trustee deems appropriate, but no Distribution to any such Holder shall be made unless and until the Liquidating Trustee has determined the then-current address of such Holder, at which time the Distribution to such Holder shall be made without interest. Amounts in respect of any undeliverable Distributions shall be returned to, and held in trust by, the Liquidating Trustee until the Distributions are claimed or are deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code, as set forth in the Plan. The Liquidating Trustee shall have the discretion to determine how to make Distributions in the most efficient and cost-effective manner possible; *provided, however*, that its discretion may not be exercised in a manner inconsistent with any express requirements of the Plan or Liquidating Trust Agreement. On or about the time that the Final Distribution is made, the Liquidating Trustee may make a charitable donation with undistributed funds if, in the reasonable judgment of the Liquidating Trustee, the cost of calculating and making the Final Distribution of the remaining

funds is excessive in relation to the benefits to the holders of Claims that would otherwise be entitled to such Distributions, and such charitable donation is provided to an entity not otherwise related to the Debtors or the Liquidating Trustee.

2.      Unclaimed Property. Except with respect to property not distributed because it is being held in a Disputed Claim Reserve, Distributions that are not claimed by the later of the expiration of six (6) months from the Effective Date or one hundred twenty (120) days after the date of a Distribution shall be deemed to be unclaimed property under Section 347(b) of the Bankruptcy Code and shall vest or revest in the Liquidating Trust. Nothing contained in the Plan shall require the Liquidating Trust to attempt to locate any holder of an Allowed Claim. All funds or other property that vest or revest in the Liquidating Trust pursuant to this Article shall be distributed by the Liquidating Trustee to the other holders of Allowed Claims in accordance with the provisions of the Plan or the Liquidating Trust Agreement.

**P.      Withholding Taxes**

In connection with making Distributions under this Plan, to the extent applicable, the Liquidating Trustee shall comply with all tax withholding and reporting requirements imposed on it by any Governmental Unit, and all Distributions pursuant to this Plan shall be subject to such withholding and reporting requirements. The Liquidating Trustee may withhold the entire Distribution to any Holder of an Allowed Claim until such time as such Holder provides the necessary information to comply with any withholding requirements of any Governmental Unit.

Any property so withheld will then be paid by the Liquidating Trustee to the appropriate authority. If the Holder of an Allowed Claim fails to provide the information necessary to comply with any withholding requirements of any Governmental Unit within six months after the date of first notification to the Holder of the need for such information or for the Cash necessary to comply

with any applicable withholding requirements, then such Holder's Distribution shall be treated in accordance with this Article V.P of the Plan.

**Q.     U.S. Trustee Fees**

All outstanding amounts due under 28 U.S.C. § 1930 that have not been paid shall be paid by the Debtors on or before the Effective Date. Thereafter, the Liquidating Trustee shall pay any statutory fees due pursuant to 28 U.S.C. § 1930(a)(6) and such fees shall be paid until entry of a Final Decree or an order converting or dismissing the Chapter 11 Cases.

**R.     Funding of the Reserves**

On the Effective Date, the Debtors shall fund each of the Reserves in an amount no less than the Reserve Estimate (less any portion of the Reserve Estimate that was paid to a Holder of a Claim on or prior to the Effective Date).

**S.     Release of Funds in Reserve**

No later than 120 days after the Effective Date (which may be extended by the Proponents), any Cash remaining in any of the Reserves after all applicable distributions or other payments have been made from all Reserves shall be released therefrom by the Liquidating Trustee and be considered Available Cash for purposes of Article II.B of the Plan. After applying the waterfall in Article II.B of the Plan the Liquidating Trustee shall distribute to the DIP Lender all funds that are not Liquidating Trust Assets.

**T.     Additional Reserve Funding**

To the extent any Reserve (other than the Professional Fee Reserve) requires additional funding after funding pursuant to Article V.R of the Plan, such additional funds may be transferred from any other Reserve (other than the Professional Fee Reserve), provided however, that neither

the DIP Lender nor the Liquidating Trustee shall be required to fund any Reserve requiring additional funding.

**U.**     **Books and Records**

The Debtors shall transfer dominion and control over all of their books and records, in whatever form, manner or media, including, without limitation, the specific provision and presentation, to the Liquidating Trustee of all passcodes for security systems and computers, keys, keycards, and notice letters to landlords, warehousemen or other relevant parties.

**VI.**

**TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**A.**     **Rejection of Executory Contracts and Unexpired Leases**

Except with respect to executory contracts or unexpired leases that:  (i) were previously assumed or rejected by order of the Bankruptcy Court, or (ii) are the subject of a pending motion to assume or reject, pursuant to Section 365 of the Bankruptcy Code, on the Effective Date, each executory contract and unexpired lease entered into by Debtors prior to the Petition Date that has not previously expired or terminated pursuant to its own terms shall be deemed rejected pursuant to Section 365 of the Bankruptcy Code; *provided, however*, that nothing in this Article VI.A shall cause the rejection, breach, or termination of any contract of insurance benefiting the Debtors and their Estates and/or the Liquidating Trust. Furthermore, this Plan shall be deemed a motion to assume such insurance contracts. Nothing in this Article VI shall be construed as an acknowledgement that a particular contract or agreement is executory or is properly characterized as a lease. The Confirmation Order shall constitute an order of the Bankruptcy Court approving such rejections pursuant to Section 365 of the Bankruptcy Code, as of the Effective Date. The non-Debtor parties to any rejected personal property leases shall be responsible for taking all steps

necessary to retrieve the personal property that is the subject of such executory contracts and leases, and the Liquidating Trust shall bear no liability for costs associated with such matters.

**B.    Claims Based on Rejection of Executory Contracts or Unexpired Leases**

All proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases pursuant to Confirmation of the Plan, if any, must be filed with the Claims Agent within thirty (30) days after the earlier of (a) service of a notice of the occurrence of the Effective Date, which shall include the filing deadline and identify known contracts and leases being rejected pursuant to Confirmation, or (b) service of an order of the Bankruptcy Court approving such rejection. Any Claim arising from the rejection of an executory contract or unexpired lease pursuant to Confirmation of the Plan that is not filed within such times will be subject to objection. All such Claims that are ultimately Allowed will be treated as Unsecured Claims subject to the provisions of Article III hereof.

**THE FAILURE TO PROPERLY FILE AND SERVE A PROOF OF CLAIM WITH RESPECT TO A REJECTION DAMAGE CLAIM BY THE DEADLINES SET FORTH IN THIS ARTICLE VI, AS APPLICABLE, SHALL RESULT IN SUCH CLAIM BEING DEEMED FOREVER BARRED, DISALLOWED AND DISCHARGED AS OF THE EFFECTIVE DATE AUTOMATICALLY WITHOUT THE NEED FOR ANY OBJECTION FROM THE PROPONENTS OR THE LIQUIDATING TRUSTEE OR ANY ACTION BY THE BANKRUPTCY COURT.**

**C.    D&O Liability Insurance Policies**

Notwithstanding anything herein to the contrary, as of the Effective Date, the Debtors shall assume all of the D&O Liability Insurance Policies pursuant to Section 365(a) of the Bankruptcy Code. Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of the

Debtors' assumption of the D&O Liability Insurance Policies. Notwithstanding anything to the contrary contained herein, Confirmation of the Plan shall not discharge, impair or otherwise modify any obligations assumed by the foregoing assumption of the D&O Liability Insurance Policies, and each such obligation shall be deemed and treated as an executory contract that has been assumed by the Debtors under the Plan as to which no Proof of Claim need be Filed. To the extent one or more of the D&O Liability Insurance Policies provide potential coverage related to one or more Causes of Action the Debtors shall, to the extent permissible under each D&O Liability Insurance Policy, assign all of their respective rights thereunder with respect to the Causes of Action to the Liquidating Trust and, the Debtors and the Liquidating Trustee shall otherwise reasonably cooperate in diligently pursuing such recoveries, and the Debtors shall promptly transfer any recovery received by them to the Liquidating Trust, all net proceeds (including, for the avoidance of doubt, net of any deductibles or retentions) of D&O Liability Insurance Policies received by the Liquidating Trust shall be treated as proceeds of the Causes of Action for all purposes under the Plan. The Debtors shall take no action to or otherwise impair the D&O Liability Insurance Policies. Nothing in this Plan shall diminish or impair the enforceability of the D&O Liability Insurance Policies and related agreements that may cover Claims and Causes of Action against the Debtors or any other Entity.

**VII.**

**CONDITIONS PRECEDENT TO CONFIRMATION**

**OF THE PLAN AND TO THE EFFECTIVE DATE**

**A.**     **Conditions to Confirmation of the Plan**

Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Proponents:  (i) the

Bankruptcy Court shall have approved a disclosure statement to this Plan in form and substance acceptable to the Debtors, (ii) the Bankruptcy Court shall have signed the Confirmation Order and entered it on the docket of the Debtors' Chapter 11 Cases, (iii) the transaction contemplated by the Sale Agreement shall have closed, (iv) the Proponents shall have agreed on the Reserve Estimates and (v) sufficient funds are available to fund the Reserve Estimates in an amount no less than the Reserve Estimate.

**B.**      **Effect of Failure of Conditions to Confirmation**

If any one or more of the conditions in <u>Article VII.A</u> is not met, the Proponents may withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

**C.**      **Conditions to Effective Date**

The occurrence of the Effective Date is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Proponents: (i) the Confirmation Order shall have become a Final Order which is not subject to any stay of effectiveness; and (ii) the appointment of the Liquidating Trustee shall have been confirmed by order of the Bankruptcy Court, which may be the Confirmation Order.

**D.**      **Effective Date**

Provided the above-referenced conditions to the occurrence of the Effective Date are satisfied, this Plan shall become effective on the Effective Date.

**VIII.**

**EFFECTS OF CONFIRMATION**

**A.**      **Binding Effect of Plan**

The provisions of the confirmed Plan shall bind the Proponents, the Liquidating Trust, the Liquidating Trustee, any Entity acquiring property under the Plan, and any Creditor or Equity

Interest Holder, whether or not such Creditor or Equity Interest Holder has filed a Proof of Claim or Equity Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Equity Interest of such Equity Interest Holder is impaired under the Plan, and whether or not such Creditor or Equity Interest Holder has accepted or rejected the Plan. All Claims and Debts shall be fixed and adjusted pursuant to this Plan. This Plan shall also bind any taxing authority, recorder of deeds, or similar official for any county, state, or Governmental Unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded with respect to any taxes of the kind specified in Bankruptcy Code Section 1146(a).

**B.**    **Vesting of Property of Debtors in the Liquidating Trust**

Upon the Effective Date, subject and pursuant to the provisions of the Plan, title to all property of the Estates of the Debtors in the Chapter 11 Cases shall vest in the Liquidating Trust and shall be retained by the Liquidating Trust for the purposes contemplated under this Plan pursuant to the Liquidating Trust Agreement. Without limiting the generality of the foregoing, all Causes of Action, Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Trust Assets earmarked for distribution to Creditors under the Plan shall vest in the Liquidating Trust upon the Effective Date and shall no longer constitute property of the Estates.

**C.**    **Property Free and Clear**

Except as otherwise provided in this Plan or the Confirmation Order, all property that shall vest in the Liquidating Trust shall be free and clear of all Claims, Equity Interests, Liens, interests, charges, or other encumbrances of Creditors or Interest Holders, other than as set forth herein, in the Liquidating Trust Agreement, and in relevant documents, agreements, and instruments contained in the Plan Supplement, which Plan Supplement documents, agreements, and instruments shall be in form and substance acceptable to the Proponents. Following the Effective

Date, the Liquidating Trustee may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

### D.    Limitation of Liability

Upon and effective as the Effective Date, the Exculpated Parties will all be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including Section 1125(e) of the Bankruptcy Code.

Except with respect to any acts or omissions expressly set forth in and preserved by the Plan, the Exculpated Parties shall neither have, nor incur, any liability to any entity for any pre-petition or post-petition act taken or omitted to be taken through and including the Effective Date in connection with, or arising from or relating in any way to:   (i) the Chapter 11 Cases; (ii) formulating, negotiating, preparing, disseminating, implementing, administering, or effecting the consummation of the Sale Agreement, the Disclosure Statement, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan or any other pre-petition or post-petition act taken or omitted to be taken in connection with or in contemplation of the restructuring and liquidation of the Debtors; (iii) the solicitation of votes for the Plan and the pursuit of Confirmation and consummation of the Plan; and (iv) the administration of the Plan and/or the property to be distributed under the Plan. In all respects, each Exculpated Party shall be entitled to rely upon the advice of counsel concerning his, her or its respective duties under, pursuant to or in connection with the Plan and the Confirmation Order.

### E.    Releases by the Debtors

On the Effective Date and effective as of the Effective Date, to the fullest extent permitted by applicable law, for good and valuable consideration provided by the Exculpated Parties, including (i) the discharge of debt and all other good and valuable consideration paid pursuant to the Plan, and (ii) the services of the Exculpated Parties facilitating the expeditious implementation of the Sale Agreement and the liquidation contemplated by the Plan, each of the Debtors unconditionally, irrevocably and forever discharges and releases the Exculpated Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the pre- and post-petition interaction with the Debtors, the Debtors' liquidation and wind-down, the Chapter 11 Cases, the negotiation and preparation of the Plan or the Disclosure Statement or upon any other act or omission, transaction, agreement, document, event or other occurrence taking place on or before the Effective Date, including those that the Debtors would have been legally entitled to assert in its or their own right (whether individually or collectively) other than Claims or liabilities arising out of or relating to any act or omission of a Exculpated Party that constitutes fraud, gross negligence, willful misconduct, criminal conduct, malpractice, misuse of confidential information that causes damages, competition with the Debtors in violation of applicable non-competition agreements or ultra vires act as determined by a Final Order.

The foregoing release shall not apply to any express contractual or financial obligations or any right or obligations arising under or that is part of the Plan or any agreements entered into pursuant to, in connection with or contemplated by the Plan**.**

**F.**      **Releases by Holders of Claims or Equity Interests**

On the Effective Date and effective as of the Effective Date, to the fullest extent permitted by applicable law, any holder of a Claim or Equity Interest that is Impaired or Unimpaired under the Plan shall be deemed to have conclusively, absolutely, unconditionally, irrevocably and forever released and discharged the Exculpated Parties from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims asserted on behalf of a Debtor, whether known or unknown, foreseen or unforeseen, existing or hereafter arising, in law, equity or otherwise, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the Debtors' liquidation and wind-down, the Chapter 11 Cases, the Sale Agreement, the purchase, sale or rescission of the purchase or sale of any security of the Debtors or the Liquidating Trustee, the subject matter of, or the transactions or events giving rise to, any Claim or Equity Interest that is treated in the Plan, the business or contractual arrangements between the Debtors and any Exculpated Party, the liquidation of Claims before or during the Chapter 11 Cases, the negotiation, formulation or preparation of the Plan, the Disclosure Statement, the Plan Supplement, any related agreements to the foregoing, instruments or other documents, upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date, other than Claims or liabilities arising out of or relating to any act or omission of a Exculpated Party that constitutes fraud, gross negligence, criminal conduct, malpractice, misuse of confidential information that causes damages or ultra vires act as determined by a Final Order; provided, however, that the releases provided in this paragraph shall not apply to any holder of a Claim that elects to "opt out" of such releases by making such election on its timely submitted Ballot (to the extent that it receives a Ballot) or in a written notice submitted to the Solicitation Agent on or before the Plan Objection Deadline.

Notwithstanding anything to the contrary in the foregoing, the release by holders of Claims and Equity Interests set forth above does not release any Post-Effective Date obligations of any party under the Plan or any document, instrument or agreement (including those set forth in the Plan Supplement, if any) executed to implement the Plan.

## G.  Injunction

This Plan is the sole means for resolving, paying or otherwise dealing with Claims and Equity Interests. To that end, except as expressly provided herein, at all times on and after the Effective Date, through and including the date of entry of a Final Decree closing the Chapter 11 Cases, all Persons who have been, are, or may be holders of Claims against or Equity Interests in the Debtors arising before the Effective Date shall be enjoined from taking any of the following actions against or affecting the Debtors, their Estates, the Liquidating Trustee, or any of their respective Assets or property, and with respect to such Claims or Equity Interests (other than actions brought to enforce any rights or obligations under this Plan, or actions brought by the Debtors to enforce any rights or obligations under the Sale Agreement):

1.      Commencing or continuing in any manner, directly or indirectly any suit, action, or other proceeding of any kind (including all suits, actions, and proceedings that are pending as of the Effective Date);

2.      enforcing, levying, attaching, collecting, or otherwise recovering by any manner or means whether directly or indirectly any judgment, award, decree, or order;

3.      creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any Lien;

4.      asserting any setoff, right of subrogation, or recoupment of any kind, directly or indirectly against any obligation due to the Debtors, their Estates, the Liquidating Trustee or

their property; _provided_, that any defenses, offsets or counterclaims which the Debtors, or the Liquidating Trustee may have or assert in respect of the above referenced Claims are fully preserved to the extent provided in the Plan; and

        5.    proceeding in any manner in any place whatsoever against the Operating Debtors, their Estates, the Liquidating Trustee, or their property, or their property that does not conform to or comply with the provisions of this Plan.

Moreover, holders of Claims against or Equity Interests in the Debtors arising before the Effective Date shall be enjoined from taking any **action against any Exculpated Party that is released pursuant to Article VIII hereof. Nothing contained in this Section shall prohibit the Holder of a timely-filed Proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Liquidating Trust under this Plan.**

**H.**      **Preservation of Rights of Action**

        1.    Vesting of Causes of Action.

        (a)    Except as otherwise provided in the Plan or Confirmation Order, in accordance with Section 1123(b)(3) of the Bankruptcy Code, any Causes of Action that the Debtors may hold against any Entity shall vest upon the Effective Date in the Liquidating Trust.

        (b)    Except as otherwise provided in the Plan or Confirmation Order, after the Effective Date, the Liquidating Trustee shall have the exclusive right to institute, prosecute, abandon, settle, or compromise any Causes of Action, in accordance with the terms of the Liquidating Trust Agreement and without further order of the Bankruptcy Court, in any court

or other tribunal, including, without limitation, in an adversary proceeding filed in one or more of the Chapter 11 Cases.

(c)   Causes of Action and recoveries therefrom shall remain the sole property of the Liquidating Trust, for the Beneficiaries of the Liquidating Trust, and holders of Claims shall have no right to any such recovery.

2.   Preservation of All Causes of Action Not Expressly Settled or Released.

(a)   Unless a Cause of Action against a holder of a Claim or other Entity is expressly waived, relinquished, released, compromised, or settled in the Plan an or any final Order (including the Confirmation Order), the Debtors and the Liquidating Trustee expressly reserve such retained Cause of Action for later adjudication by the Debtors or the Liquidating Trustee (including, without limitation, Causes of Action not specifically identified or described in the Plan Supplement or elsewhere, or of which the Debtors may be presently unaware, or which may arise or exist by reason of additional facts or circumstances unknown to the Debtors at this time, or facts or circumstances that may change or be different from those the Debtors now believe to exist) and, therefore, no preclusion doctrine, including, without limitation, the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, waiver, estoppel (judicial, equitable, or otherwise) or laches shall apply to such Causes of Action upon or after the entry of the Confirmation Order or Effective Date based on the Disclosure Statement, Plan, or Confirmation Order, except where such Causes of Action have been released or otherwise resolved by a final Order (including the Confirmation Order). In addition, the Debtors and Liquidating Trustee expressly reserve the right to pursue or adopt claims alleged in any lawsuit in which the Debtors are a defendant or an interested party against any Entity, including, without limitation, the plaintiffs or co-defendants in such lawsuits.

(b)     Subject to the immediately preceding paragraph, and except as otherwise released under the Sale Agreement, any Entity to which the Debtors have incurred an obligation (whether on account of services, the purchase or sale of goods, or otherwise), or has received services from the Debtors or a transfer of money or property of the Debtors, or has received services from the Debtors or a transfer or money or property of the Debtors, or has transacted business with the Debtors, or leased equipment or property from the Debtors, should assume that any such obligation, transfer, or transaction may be reviewed by the Liquidating Trustee subsequent to the Effective Date and may be the subject of an action after the Effective Date, regardless of whether (i) such Entity has filed a proof of claim against the Debtors in these Chapter 11 Cases; (ii) the Debtors or Liquidating Trustee have objected to any such Entity's proof of claim; (iii) any such Entity's Claim was included in the Schedules; (iv) the Debtors or Liquidating Trustee have objected to any such Entity's scheduled Claim; or (v) any such Entity's scheduled Claim has been identified by the Debtors or Liquidating Trustee as disputed, contingent, or unliquidated.

(c)     The Liquidating Trustee shall not be subject to any counterclaims with respect to any Causes of Action that have vested with the Liquidating Trust pursuant to the Plan and Confirmation Order.

## IX.

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

1.     To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, approval of any necessary claims reconciliation

protocols, or any controversy as to the classification of a Claim in a particular Class under the Plan;

2. To administer the Plan, the Liquidating Trust, the Trust Assets and the Trust Proceeds;

3. To liquidate any Disputed Claims;

4. To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date or otherwise relating to, arising from, or in connection with the Litigation; *provided, however*, that the Liquidating Trustee shall reserve the right to commence actions in all appropriate jurisdictions;

5. To hear and determine any and all motions and/or objections to fix and allow any Claims arising therefrom;

6. To hear and determine any and all applications by Professionals for an award of Professional Fees;

7. To enable the Liquidating Trustee to commence and prosecute any Litigation which may be brought after the Effective Date;

8. To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document, or instrument contemplated by the Plan;

9. To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified, or vacated;

10. To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in

the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

11.    To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code;

12.    To enter any orders as required by Rule 23 of the Federal Rules of Civil Procedure; and

13.    To close the Chapter 11 Cases when administration of the Liquidating Trust and the Cases have been completed.

## X.

## MISCELLANEOUS

### A.    Revocation of Plan of Reorganization

Each of the Proponents reserves its right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If either Proponent revokes or withdraws the Plan pursuant to this Section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void. In the event that this Plan or the Confirmation Order is revoked or withdrawn, nothing in this Plan, and no actions taken in preparation for consummation of this Plan shall (i) constitute a waiver or release of any Claim by or against or Equity Interest in the applicable Debtors; (ii) prejudice in any manner the rights of the Proponents; (iii) constitute an admission, acknowledgment, offer or undertaking by the Proponents or any other entity or party in interest; or (iv) constitute a waiver or release of the rights of the Proponents to move to dismiss any of the

Chapter 11 Cases or convert any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code.

**B.      Severability of Plan Provisions**

In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration, or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**C.      Exhibits**

All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Proponents reserve the right to make non-substantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing.

**D.**    **Notices**

All notices required or permitted to be made in accordance with the Plan shall be in writing

and shall be delivered personally or by nationally recognized overnight or next-day courier service,

first-class mail, electronic mail, or via facsimile with electronic confirmation of receipt as follows:

BIELLI & KLAUDER, LLC
Attn: David M. Klauder
1204 N. King Street
Wilmington, DE 19801
Phone: (302) 803-4600
Fax: (302) 397-2557
Email: dklauder@bk-legal.com

MOORE & VAN ALLEN PLLC
Attn: Zachary H. Smith
100 N. Tryon Street, Suite 4700
Charlotte, NC 28202
Telephone: (704) 331-1000
Facsimile: (704) 378-1909
Email:    zacharysmith@mvalaw.com

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Derek C. Abbott (No. 3376)
Daniel B. Butz (No. 4227)
1201 North Market Street, 16th Floor
Wilmington, DE 19801
Telephone: (302) 658-9200
Facsimile: (302) 658-3989
Email: dabbott@mnat.com

SIDLEY AUSTIN LLP
Michael G. Burke
Brian J. Lohan
787 Seventh Avenue
New York, NY 10019
Telephone: (212 839-5300
Facsimile: (212) 839-5599
Email: blohan@sidley.com

E.    <u>**Reservation of Rights**</u>

Neither the filing of the Plan nor any statement or provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in interest of any action with respect to the Plan, shall:  (a) be or be deemed to be an admission against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any other party in interest, and, until the Effective Date, all such rights are specifically reserved. In the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may be used or relied upon in any manner in any suit, action, proceeding, or controversy within or without these Chapter 11 Cases involving the Proponents, except with respect to Confirmation of the Plan.

F.    <u>**Defects, Omissions and Amendments**</u>

The Proponents may, with the approval of the Bankruptcy Court and without notice to all Holders of Claims or Interests, insofar as it does not materially and adversely affect Holders of Claims, correct any defect, omission, or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in Section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of Holders of Claims, so long as the Plan, as modified, complies with Sections 1122 and 1123 of the Bankruptcy Code and the Proponents have complied with Section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial Consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects Holders of Claims, so long as the Plan, as modified, complies with

Bankruptcy Code Sections 1122 and 1123, the Debtors have complied with Bankruptcy Code Section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code Section 1129.

**G.    Filing of Additional Documents**

The Debtors shall file with the Bankruptcy Court such agreements, instruments, pleadings, orders, papers, or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

**H.    Successors and Assigns**

The rights, benefits, and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors, and/or assigns of such entity.

**I.    Setoffs and Recoupments**

The Liquidating Trust may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Liquidating Trust, or the Estates, as applicable, may have against the Holder of such Claim. Neither the failure to exercise a right of setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Liquidating Trust, or the Estates, against such Holder.

Notwithstanding anything in the Plan Documents to the contrary, (a) any setoff or recoupment claims held by Creditors shall be preserved as set forth under Sections 506 and 553 of the Bankruptcy Code and other applicable authority, and (b) a Creditor shall receive notice and an opportunity to object with respect to any setoff or recoupment that the Liquidating Trust may seek to exercise against it.

**J.    Tax Exemption**

Pursuant to Section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security under this Plan, or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtors, if on the Effective Date, and the Liquidating Trustee, if after the Effective Date, of the Debtors' property in implementation of or as contemplated by this Plan (including, without limitation, any subsequent transfer of property by the Liquidating Trust) shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee. Consistent with the foregoing, each recorder of deeds or similar official for any county, city or Governmental Unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax, or similar tax.

**K.    Securities Exemption**

Any rights issued under, pursuant to, or in effecting this Plan, and the offering and issuance thereof by any party, including without limitation, the Liquidating Trustee or the Liquidating Trust, shall be exempt from Section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, Section 1145 of the Bankruptcy Code.

**L.**      **Plan Interest Rate**

If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in this Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

**M.**      **Implementation**

Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

**N.**      **Record Date**

To the extent a "Record Date" is required for implementation of this Plan, the record date shall be the voting record date established by the Bankruptcy Court in the order approving the Disclosure Statement or such other date as the Bankruptcy Court may set.

**O.**      **Certain Actions**

1.      By reason of entry of the Confirmation Order, prior to, on, or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of directors or stockholders of the Debtors under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of the Debtors, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the applicable Debtor is chartered, organized, or incorporated, without any requirement of further action by the directors and stockholders of the Debtors.

2.      Effective upon the Effective Date, each of the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under Section 1123(a)(6) of the Bankruptcy Code.

3.      On or as soon as practicable following the Effective Date, the Liquidating Trustee shall be authorized to cancel, annul, and extinguish all Equity Interests.

**P.      <u>Waiver of Fourteen-Day Stay</u>**

The Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the 14-day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the 14-day stay of Bankruptcy Rule 6004(g).

**REMAINDER OF PAGE INTENTIONALLY LEFT BLANK**

Dated:  October 26, 2016                    Respectfully submitted,


Debtors:                                    FILIP TECHNOLOGIES, INC.

                                            /s/  Roy Messing_____
                                            By:  Roy Messing
                                            Title:  Chief Restructuring Officer


                                            FILIP TECHNOLOGIES, LIMITED (UK)

                                            /s/  Roy Messing_____
                                            By:  Roy Messing
                                            Title:  Chief Restructuring Officer


                                            EVADO FILIP AS

                                            /s/  Roy Messing_____
                                            By:  Roy Messing
                                            Title:  Chief Restructuring Officer


                                            EVADO FILIP LIMITED

                                            /s/  Roy Messing_____
                                            By:  Roy Messing
                                            Title:  Chief Restructuring Officer


                                            EVADO FILIP US LIMITED

                                            /s/  Roy Messing_____
                                            By:  Roy Messing
                                            Title:  Chief Restructuring Officer


AT&T:                                       AT&T CAPITAL SERVICES, INC.

                                            /s/  James W. Grudus_____
                                            By:  James W. Grudus
                                            Title:  Authorized Signatory


                                            AT&T SERVICES, INC.

                                            /s/  James W. Grudus_____
                                            By:  James W. Grudus
                                            Title:  Authorized Signatory