## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| FILIP TECHNOLOGIES, INC., *et al.*,[1] | Case No. 16-12192 (KG) |
| Debtors. | (Jointly Administered) |
| | **Related to Docket Nos. 5, 30** |

## FINAL ORDER (I) AUTHORIZING DEBTORS TO OBTAIN POST-PETITION FINANCING, (II) AUTHORIZING THE USE OF CASH COLLATERAL, (III) GRANTING LIENS AND SUPERPRIORITY CLAIMS, AND (IV) GRANTING RELATED RELIEF

Upon the motion (the "**DIP Motion**")[2] of the above-captioned debtors and debtors in possession (collectively, the "**Debtors**") for entry of an interim order (the "**Interim Order**") and this final order (this "**Final Order**" and together with the Interim Order, collectively, the "**Financing Orders**"), pursuant to sections 105, 361, 362, 363, 364, 506, 507, and 552 of title 11 of the United States Code (the "**Bankruptcy Code**"), Rules 2002, 4001, 6004, and 9014 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), and Rule 4001-2 of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "**Local Rules**"), that, among other things:

 i.  authorizes Filip Technologies, Inc. (the "**Borrower**") to obtain, and each of the other Debtors (collectively, the "**Guarantors**", and the Borrower and Guarantors being referred to herein collectively as the "**Obligors**") to unconditionally guaranty, jointly and severally, the Borrower's and each other's obligations in respect of, a senior secured superpriority multiple draw term loan facility (the "**DIP Facility**") provided pursuant to the terms of (w) the Financing Orders, (x) that certain Summary of Proposed Terms and Conditions for Debtor-In-Possession Financing, dated as of October 5, 2016, a true and correct copy of which is attached hereto as <u>Exhibit A</u> (the "**Term Sheet**" and together with any

---

[1] The Debtors in these jointly administered cases are Filip Technologies, Inc. (Tax ID: 0660); Filip Technologies UK Ltd. (ID: 8339); Evado Filip AS (ID: 6131); Evado Filip Limited (ID: 7233); and Evado Filip US Ltd. (Tax Id: 3412).

[2] Unless otherwise specified in this Final Order, all capitalized terms used but not defined herein shall have the meanings given to such terms in the DIP Motion and DIP Credit Agreement (as defined herein), as applicable.

definitive documentation in form and substance acceptable to the DIP Lender, and each as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with their respective terms and by the Financing Orders, the "**DIP Credit Agreement**"), by and among the Borrower, the Guarantors, and AT&T Capital Services, Inc., as lender under the DIP Facility (in such capacity, the "**DIP Lender**"), (y) with respect to the Roll-Up Loans, that certain Secured Promissory Note, dated September 28, 2016, by and among the Borrower and AT&T Capital Services, Inc. as pre-petition lender (in such capacity, "**AT&T Capital**") (collectively with any other agreements and documents executed or delivered in connection therewith (each as may be amended, restated, supplemented, or otherwise modified from time to time), the "**AT&T Prepetition Promissory Note**") and (z) any and all other credit documents (as contemplated by the Term Sheet, and together with the DIP Credit Agreement and the AT&T Prepetition Promissory Note, collectively, the "**DIP Loan Documents**");

ii.      authorizes the use of the proceeds of the DIP Facility to, among other things, make payments as permitted by the Initial Budget (defined below), a copy of which is attached hereto as <u>Exhibit B</u>, and each subsequent Authorized Budget (defined below) for operating expenses, general and ordinary purposes of the Debtors, the satisfaction of interest, fees, and costs due under the DIP Credit Agreement, and for other administrative expenses, including budgeted professional fees, all subject to the conditions set forth in the final DIP Loan Documents and in this Final Order;

iii.     approves the conversion of certain outstanding senior prepetition indebtedness (the "**Senior Prepetition Indebtedness**") borrowed pursuant to the AT&T Prepetition Promissory Note including, without limitation, outstanding principal and accrued interest and fees thereon into the DIP Facility (the "**Roll-Up Loans**"), such that automatically upon the entry of this Final Order, (a) the Roll-Up Loans shall be deemed to have been incurred under the DIP Facility, (b) the Prepetition AT&T Collateral (defined below) to the extent of the value of the Roll-Up Loans shall be deemed to be DIP Collateral (defined below), and (c) the Prepetition AT&T Liens (defined below) to the extent of the value of the Roll-Up Loans shall be deemed to be DIP Liens (defined below);

iv.     approves the terms of, and authorizes the Debtors to perform under, the Term Sheet (as modified by the Financing Orders) and authorizes and directs the Debtors to perform such other and further acts as may be required in connection with the Term Sheet (including, without limitation, the negotiation, execution, and delivery of any definitive documentation in form and substance acceptable to the DIP Lender and consistent with the terms of the Financing Orders) and this Final Order;

v.      grants to the DIP Lender, (x) the DIP Liens on all of the DIP Collateral pursuant to sections 364(c)(1), 364(c)(2), and 364(d)(1) of the Bankruptcy Code, which DIP Liens are senior to all other liens and (y) pursuant to section 364(c)(1) of the

Bankruptcy Code, superpriority administrative claims having recourse to all pre-petition and post-petition property of the Debtors' estates, now owned or hereafter acquired and the proceeds of each of the foregoing, including,[3] any Debtor's rights under section 549 of the Bankruptcy Code and the proceeds thereof and the Avoidance Actions and proceeds thereof (as defined below);

vi.     authorizes the Debtors to use "cash collateral," as such term is defined in section 363 of the Bankruptcy Code (the "**Cash Collateral**"), including Cash Collateral in which the DIP Lender has a lien or other interest, in each case whether existing on the Petition Date, arising pursuant to the Financing Orders or otherwise;

vii.    vacates the automatic stay imposed by section 362 of the Bankruptcy Code solely to the extent necessary to implement and effectuate the terms and provisions of the DIP Loan Documents and this Final Order;

viii.   waives certain rights of the Debtors to surcharge against collateral pursuant to section 506(c) of the Bankruptcy Code; and

ix.     provides for the immediate effectiveness of this Final Order and waives any applicable stay (including under Bankruptcy Rule 6004) to permit such immediate effectiveness.

Having considered the DIP Motion, the Term Sheet, the Declaration of Roy Messing in Support of the Debtors' Chapter 11 Petitions and Requests for First Day Relief (the "**First Day Declaration**"), and the evidence submitted or proffered at the hearing on the Interim Order held before this Court on October 6, 2016 (the "**Interim Hearing**") and the hearing on this Final Order held on October 27, 2016 (the "**Final Hearing**"), and in accordance with Bankruptcy Rules 2002, 4001(b), 4001(c), and 4001(d), 6004(c), and 9014 and all applicable Local Rules, due and sufficient notice of the DIP Motion, the Interim Hearing, the entry of the Interim Order, and the Final Hearing having been provided pursuant to Bankruptcy Rule 4001(b)(1)(C); the Interim Hearing having been held and concluded on October 6, 2016 and the Court having entered the *Interim Order (I) Authorizing Debtors to Obtain Post-Petition Financing, (II) Authorizing the Use of Cash Collateral, (III) Granting Liens and Superpriority Claims,*

---

[3] As used herein, the words "including" or "include" and variations thereof shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation."

*(IV) Scheduling and Final Hearing, and (V) Granting Related Relief* [D.I. 30]; the Final Hearing

having been held and concluded on October 27, 2016; this Court having considered all the

pleadings, motions and other papers filed in connection therewith; this Court having overruled all

unresolved objections to the relief requested in the DIP Motion; this Court having considered the

record made by the Debtors at the Interim Hearing and the Final Hearing; this Court having

considered the representations made by the DIP Lender at the Final Hearing that the DIP Lender

is a co-proponent of, and agrees to support, the Joint Plan of Liquidation for the Debtors filed on

October 26, 2016 (which may be amended or modified with the consent of the DIP Lender); and

it appearing that approval of the relief requested in the DIP Motion is necessary to avoid

immediate and irreparable harm to the Debtors and otherwise is fair and reasonable and in the

best interests of the Debtors, their creditors, their estates and all parties in interest, and is

essential for the continued operation of the Debtors' business and the preservation of the value of

the Debtors' assets; and it appearing that the Debtors' entry into the DIP Facility pursuant to the

Term Sheet and the other DIP Loan Documents (as modified by the Financing Orders) is a sound

and prudent exercise of the Debtors' business judgment; and after due deliberation and

consideration, and good and sufficient cause appearing therefor:

**THIS COURT MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:[4]**

        A.    **Petition Date**.  On October 5, 2016 (the "**Petition Date**"), each of the

Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in the

United States Bankruptcy Court for the District of Delaware (this "**Court**") commencing these

chapter 11 cases (the "**Chapter 11 Cases**").  The Debtors have continued in the management and

---

[4] Findings of fact shall be construed as conclusions of law, and conclusions of law shall be construed as findings of fact, as appropriate, pursuant to Bankruptcy Rule 7052.

operation of their businesses and properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No statutory committee of unsecured creditors (to the extent such committee is appointed, a "**Committee**"), trustee, or examiner has been appointed in these Chapter 11 Cases.

    B.  **Jurisdiction and Venue**.  This Court has core jurisdiction over these Chapter 11 Cases, the DIP Motion, and the parties and property affected hereby pursuant to 28 U.S.C. §§ 157(b) and 1334 and the Amended Standing Order of Reference from the United States District Court for the District of Delaware dated as of February 29, 2012.  Venue for the Chapter 11 Cases and proceedings on the DIP Motion is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and other predicates for the relief sought herein are sections 105, 361, 362, 363, 364, 506, 507 and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 6004, and 9014, and Local Rule 4001-2.

    C.  **Notice**.  The Interim Hearing and the Final Hearing were held pursuant to the authorization of Bankruptcy Rule 4001.  Notice of the Final Hearing and the relief requested in the DIP Motion was provided by the Debtors, whether by facsimile, electronic mail, overnight courier or hand delivery, to certain parties in interest, including: (i) the Office of the United States Trustee for the District of Delaware (the "**U.S. Trustee**"), (ii) those entities or individuals included on the Debtors' List of Creditors Holding 30 Largest Unsecured Claims on a Consolidated Basis, (iii) counsel to the DIP Lender, (iv) all other known lienholders, and (v) any party that has requested notice pursuant to Bankruptcy Rule 2002.  Under the circumstances, such notice of the DIP Motion, the relief requested therein, and the Final Hearing complies with Bankruptcy Rules 4001(b), (c) and (d), and the Local Rules, and no other notice need be provided for entry of this Final Order.

D.    **Debtors' Stipulations Regarding the Senior Prepetition Indebtedness**.

Subject only to the rights of parties in interest that are specifically set forth in Paragraph 6 below,

the Debtors, on their behalf and on behalf of their estates, admit, stipulate, acknowledge, and

agree (collectively, the "**Debtors' Stipulations**") as follows:

      i.    *Senior Prepetition Indebtedness*.  As of the Petition Date, the Borrower was truly and justly indebted to AT&T Capital in the aggregate principal amount of $480,000 pursuant to the AT&T Prepetition Promissory Note, plus accrued and unpaid interest and any additional fees, costs and expenses without defense, counterclaim, reduction or offset of any kind.  The Senior Prepetition Indebtedness is comprised of (I) a loan in the amount of $160,000 pursuant to that certain Maintenance Agreement dated as of August 24, 2016, by and among the Borrower and AT&T Services, Inc. ("**AT&T Services**" and, together with AT&T Capital and their affiliates, collectively, "**AT&T**"), (II) a loan in the amount of $80,000 pursuant to that certain Supplemental Maintenance Agreement, dated as of September 16, 2016, by and among the Borrower and AT&T Services (the "**Maintenance Agreement**" and "**Supplemental Maintenance Agreement**," respectively, and each as may be amended, restated, supplemented, or otherwise modified from time to time, collectively, the "**Prepetition Maintenance Agreements**" and the loans extended thereunder, the "**Maintenance Amounts**"), and (III) new borrowings in the amount of $240,000 and a roll-up of the Maintenance Amounts (which Maintenance Amounts were assigned by AT&T Services to AT&T Capital) pursuant to the AT&T Prepetition Promissory Note (the Prepetition Maintenance Agreements and the AT&T Prepetition Promissory Note, collectively, the "**AT&T Prepetition Loan Documents**").

      ii.    *AT&T Prepetition Collateral and Liens*.  The first priority liens and security interests granted to AT&T Capital in all of the Borrower's assets pursuant to the AT&T Prepetition Promissory Note (the "**AT&T Prepetition Collateral**" and the liens securing the AT&T Prepetition Collateral, the "**AT&T Prepetition Liens**") (a) are legal, valid, binding, enforceable, and perfected liens, (b) were granted to, or for the benefit of, AT&T Capital for fair consideration and reasonably equivalent value, and (c) are not subject to avoidance, recharacterization, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law.

    iii.    *Cash Collateral*.  All of the Borrower's cash, including any cash in deposit accounts of the Borrower, wherever located, constitutes Cash Collateral of AT&T Capital.

    iv.    The Senior Prepetition Indebtedness and obligations under the AT&T Prepetition Loan Documents constitute legal, valid, and binding obligations of the Borrower, enforceable in accordance with the terms of the AT&T Prepetition Loan Documents (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code and except as expressly modified, amended, or superseded by the Term Sheet or the Financing Orders), and (x) no setoffs, recoupments, offsets, defenses, or counterclaims to any of the Senior Prepetition Indebtedness or obligations under the AT&T Prepetition Loan Documents exist, (y) no portion of the Senior Prepetition Indebtedness or any payments made to AT&T pursuant to the AT&T Prepetition Loan Documents are subject to avoidance, disallowance, disgorgement, recharacterization, recovery, subordination, attack, offset, counterclaim, defense, or "claim" (as defined in the Bankruptcy Code) of any kind pursuant to the Bankruptcy Code or applicable non-bankruptcy law, and (z) the Borrower's obligations under the AT&T Prepetition Loan Documents shall continue in full force and effect notwithstanding any use of Cash Collateral permitted hereunder or any financing and financial accommodations extended by the DIP Lender to the Debtors pursuant to the terms of this Final Order or the Term Sheet.

E.    **Findings Regarding the DIP Facility**.

    (i)    <u>Need for Post-Petition Financing</u>.  The Debtors have an immediate need to obtain the DIP Facility and use Cash Collateral to, among other things, permit the orderly continuation of their businesses, to make payroll, to satisfy other working capital and operational needs, to complete the Debtors' marketing and sale process and to otherwise preserve the value of the Debtors' estates.  The Debtors' access to sufficient working capital and liquidity through the use of Cash Collateral and borrowing under the DIP Facility is vital to a successful sale and/or to otherwise preserve the value of the Debtors' estates.  If immediate financing is not obtained and permission to use Cash Collateral is not granted, in each case in accordance with the terms of this Final Order and the DIP Loan Documents, the Debtors will have no other

alternative other than liquidation under chapter 7 of the Bankruptcy Code, and their estates will incur immediate and irreparable harm.

(ii)    No Credit Available on More Favorable Terms. The Debtors have been and continue to be unable to obtain financing on more favorable terms from sources other than the DIP Lender under the DIP Loan Documents and this Final Order. The Debtors are unable to obtain unsecured credit allowable under section 503(b)(1) of the Bankruptcy Code as an administrative expense or secured credit allowable only under sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code. The Debtors are unable to obtain secured credit under section 364(d)(1) of the Bankruptcy Code without (a) granting to the DIP Lender the rights, remedies, privileges, benefits, and protections provided herein and in the DIP Loan Documents, including the DIP Liens and the DIP Superpriority Claims (as defined below), (b) allowing the DIP Lender to provide the loans and other financial accommodations under the DIP Facility, and (c) the conversion of Prepetition Senior Indebtedness in the amount of $240,000 into Roll-Up Loans under the DIP Facility on the terms set forth herein and in the DIP Loan Documents (all of the foregoing described in clauses (a), (b), and (c) above, collectively, the "**DIP Protections**").

F.    **DIP Financing and Consent to Use Cash Collateral**. The DIP Facility is a senior secured superpriority multiple draw term loan facility consisting of post-petition financing in a total amount of $1,000,000, inclusive of Roll-Up Loans in an amount equal to $240,000 (representing the new borrowings advanced to the Debtors under the Prepetition Promissory Note), of which an aggregate principal amount of $150,000 was advanced by the DIP Lender to the Debtors pursuant to the Interim Order. The DIP Lender is willing to provide financing to the Debtors and/or consent to the use of Cash Collateral by the Debtors, subject to (i) the entry of this Final Order and the terms and conditions set forth herein, and (ii) the terms

and conditions of the DIP Loan Documents; provided, however, that the consent of the DIP Lender is limited to the present DIP Facility and shall not be applicable to any other debtor-in-possession loan facility even if such debtor-in-possession loan facility contains economic terms which are substantially similar to the economic terms of the DIP Facility.

   G. **Initial Budget**.  Attached hereto as <u>Exhibit B</u> is an initial thirteen (13) week budget (the "**Initial Budget**").  The Initial Budget is an integral part of this Final Order and has been relied upon by the DIP Lender in consenting to this Final Order, to provide the DIP Facility, and to permit the use of the Cash Collateral.

   H. **Business Judgment and Good Faith Pursuant to Section 364(e)**.  Based on the DIP Motion and on the record presented to this Court at the Final Hearing:

   (i) The terms and conditions of the use of the Cash Collateral and the DIP Facility (including the conversion of Prepetition Senior Indebtedness in the amount of $240,000 into Roll-Up Loans under the DIP Facility) as set forth in the Term Sheet and this Final Order, and the fees, expenses, and other charges paid and to be paid thereunder or in connection therewith, are fair, reasonable, consistent with the Bankruptcy Code, including section 506(b) thereof, and the best available under the circumstances, reflect the Debtors' exercise of prudent business judgment consistent with their fiduciary duties, and are supported by reasonably equivalent value and fair consideration.

   (ii) The DIP Facility was negotiated in good faith and at arms' length among the Debtors and the DIP Lender.

   (iii) Use of the proceeds extended and to be extended under the DIP Facility have been and will be so extended in good faith, and for valid business purposes and uses, as a consequence of which the DIP Lender is entitled to the protection and benefits of

9

section 364(e) of the Bankruptcy Code.  The DIP Liens, DIP Superpriority Claims, and other

DIP Protections are reasonable to protect the interests of the DIP Lender and shall be entitled to

the full protection of section 364(e) of the Bankruptcy Code.

I.    **Relief Essential; Best Interest**.  For the reasons stated above, the Debtors

have requested entry of this Final Order pursuant to Bankruptcy Rules 4001(b)(2) and

4001(c)(2), and the Local Rules.  Absent granting the relief set forth in this Final Order, the

Debtors' estates, their businesses and properties, and their ability to successfully sell their assets

or otherwise preserve the value of their estates will be immediately and irreparably harmed.  The

Court concludes that entry of this Final Order is therefore in the best interests of the Debtors'

estates and creditors and will allow for the continued operation of the Debtors' businesses and

preserve the value of their assets pending the pursuit of a competitive sale process and

consummation of a sale transaction.

NOW, THEREFORE, based on the DIP Motion and the record before this Court with

respect to the DIP Motion, and with the consent of the Debtors and the DIP Lender to the form

and entry of this Final Order, and good and sufficient cause appearing therefor:

IT IS ORDERED that:

1.    **Motion Granted**.  The DIP Motion is hereby granted in accordance with

the terms and conditions set forth in this Final Order.  Any objections to the DIP Motion with

respect to the entry of this Final Order that have not been withdrawn, waived, or settled, and all

reservations of rights included therein, are hereby denied and overruled.  This Final Order shall

become effective immediately upon its entry.

2.    **DIP Loan Documents and DIP Protections**.

(a)    <u>Approval of DIP Loan Documents</u>.  The Debtors are expressly and

immediately authorized to establish the DIP Facility, to execute, deliver, and perform under the

10

Term Sheet and this Final Order, to incur the DIP Obligations (defined below) (including to automatically and immediately convert Prepetition Senior Indebtedness in the amount of $240,000 into Roll-Up Loans under the DIP Facility), in accordance with, and subject to, the terms of this Final Order and the Term Sheet, and to execute, deliver, and perform under all other instruments, certificates, agreements, and documents that may be required or necessary for the performance by the applicable Debtors under the DIP Loan Documents and the creation and perfection of the DIP Liens described in, and provided for by, this Final Order and the DIP Loan Documents.  The Debtors are hereby authorized to do and perform all acts and pay the principal, interest, fees, expenses, and other amounts described in the DIP Loan Documents as such become due pursuant to the DIP Loan Documents and this Final Order, including, without limitation, all professional fees, and disbursements arising under the DIP Loan Documents and this Final Order, in accordance with Paragraph 2(f) of this Final Order.  Upon their execution and delivery, the DIP Loan Documents shall represent the legal, valid and binding obligations of the applicable Debtors enforceable against such Debtors in accordance with their terms.  Subject to Paragraph 6 hereof, no obligation, payment, transfer or grant of security under the DIP Loan Documents or this Final Order shall be stayed, restrained, voided, voidable, or recoverable under the Bankruptcy Code or under any applicable non-bankruptcy law, or subject to any defense, reduction, setoff, recoupment or counterclaim.  Each officer of a Debtor acting singly is hereby authorized to execute and deliver each of the DIP Loan Documents, such execution and delivery to be conclusive evidence of such officer's respective authority to act in the name of and on behalf of the Debtors.

(b)    <u>Authorization to Incur DIP Obligations and Use Cash Collateral</u>.
For purposes of this Final Order, the term "**DIP Obligations**" shall mean all amounts and other

obligations and liabilities owing by the respective Debtors to the DIP Lender under the Term

Sheet, the other DIP Loan Documents (including, without limitation, all "DIP Obligations" as

defined and described in the Term Sheet and including all Roll-Up Loans), and the Financing

Orders.  DIP Obligations shall include the wholesale cost of any wearable devices provided by

the DIP Lender (or its affiliates) to the Debtors at the Debtors' request, for the purposes of

honoring any customer warranty claims pursuant to the *Interim Order Authorizing Debtors To*

*Honor And Continue Certain Customer Programs In The Ordinary Course Of Business* [D.I. 29],

any final order with respect thereto, and on a postpetition basis in the ordinary course of the

Debtors' business.  To enable the Debtors to continue to operate their business and preserve and

maximize the value of their estates, during the period from the entry of this Final Order through

and including a Termination Event (as defined below), in each case unless extended by written

agreement of the DIP Lender and approved by this Court, the Borrower is hereby authorized

(x) to use Cash Collateral and (y) subject to the Term Sheet, to borrow under the DIP Facility;

provided that any proposed use of the proceeds of the DIP Facility or use of Cash Collateral shall

be consistent with the terms and conditions of this Final Order and the Term Sheet, including the

Authorized Budget (defined below).  All DIP Obligations shall be unconditionally guaranteed,

on a joint and several basis, by each of the Guarantors, as further provided in the DIP Loan

Documents.

        (c)    Roll-Up Loans.  Senior Prepetition Indebtedness in the amount of

$240,000 shall immediately, automatically, and irrevocably be deemed to have been converted

into Roll-Up Loans and shall be entitled to all the priorities, privileges, rights, and other benefits

afforded to the other DIP Obligations hereunder and in the other DIP Loan Documents.

(d)    <u>Perfection in Cash</u>. All financial institutions in which the Debtors' deposit accounts are located are authorized to comply with any request of the Debtors or DIP Lender to turn over to the Debtors, or in the event of an Event of Default, the DIP Lender, all funds therein without offset or deduction of any kind, and the Debtors are authorized to enter into such blocked account agreements with cash dominion with the DIP Lender and such financial institutions as the DIP Lender may require. During an Event of Default, all funds turned over to the DIP Lender pursuant to the foregoing shall be used by the DIP Lender to reduce the then-outstanding DIP Obligations. Alternatively, the DIP Lender shall be entitled to continue to enjoy the benefit of all control agreements to which the DIP Lender is a party without the need to enter into new blocked account agreements.

(e)    <u>Authorized Budget; Cash Flow Reporting</u>. The Debtors shall prepare for the DIP Lender's review and consent an updated thirteen (13) week detailed rolling cash projection one (1) business day prior to each requested borrowing under the DIP Facility (each a "**Proposed Budget**"). Upon the Debtors' receipt of the DIP Lender's consent to a Proposed Budget, such budget shall become an "**Authorized Budget**" for the applicable thirteen (13) week period and shall replace the then-operative Authorized Budget for all purposes. As used in this Final Order, the term "Authorized Budget" shall include the Initial Budget. The Borrower shall (and shall cause its subsidiaries to) operate in accordance with the Authorized Budget and all disbursements shall be consistent with the provisions of the Authorized Budget. The Borrower may submit additional Proposed Budgets to the DIP Lender, but until any such Proposed Budget is consented to by the DIP Lender, it shall not become an Authorized Budget and the Borrower shall (and shall cause its subsidiaries to) continue to comply with the then operative Authorized Budget. The then-current Authorized Budget may be replaced with

another Authorized Budget pursuant to the above procedures without the need for further approval from the Bankruptcy Court. Compliance with the Authorized Budget shall be measured in accordance with the terms and conditions of the Term Sheet.

           (f)      Interest, Fees, Costs, and Expenses. The DIP Obligations shall bear interest at the rates, and be due and payable (and paid), as set forth in, and in accordance with the terms and conditions of, this Final Order and the DIP Loan Documents, in each case without further notice, motion, or application to, order of, or hearing before, this Court. The Debtors shall accrue all fees, costs, indemnities, expenses (including reasonable out-of-pocket legal and other professional fees and expenses of the DIP Lender) and other charges payable under the terms of the DIP Loan Documents and the foregoing shall be deemed DIP Obligations as they accrue; however, such amounts shall be only payable upon the Termination Date (defined below). Notwithstanding the foregoing, DIP Obligations shall not include any indemnities arising from any objection or challenge raised during the Challenge Period (as defined in Paragraph 6 hereof). All such fees, costs, indemnities, expenses and disbursements, whether incurred, paid or required to be paid pre-petition or post-petition and whether or not budgeted in the Authorized Budget, are hereby affirmed, ratified, authorized and payable (and any funds held by the DIP Lender and/or its professionals as of the Petition Date for payment of such fees, costs, indemnities, expenses and disbursements may be applied for payment) as contemplated in this Final Order and the DIP Loan Documents. Professionals for the DIP Lender shall not be required to comply with the U.S. Trustee fee guidelines, however any time that such professionals seek payment of fees and expenses from the Debtors, each professional shall provide copies of invoices (redacted for privilege) to the U.S. Trustee (and counsel for any Committee, if appointed) contemporaneously with the delivery of such invoices to the Debtors.

To the extent that the U.S. Trustee (or Committee, if appointed) has an objection to the reasonableness of the fees and expenses of any such professional, and cannot resolve the objection within ten (10) days of receipt of the invoice, then the U.S. Trustee (or Committee, if appointed) shall file with this Court and serve on such Professionals an objection (the "**Fee Objection**"), and any failure by the U.S. Trustee (or Committee) to file a Fee Objection within the ten (10) day period shall constitute a waiver of any right of such party to object to the applicable invoice. All unpaid fees, costs, expenses, and charges of the DIP Lender that have not been disallowed by this Court on the basis of an objection filed by the U.S. Trustee, (Committee, if appointed) or any subsequent trustee of the Debtors' estates in accordance with the terms hereof shall constitute DIP Obligations and shall be secured by the DIP Collateral as specified in this Final Order.

              (g)    <u>Use of DIP Facility and Proceeds of DIP Collateral</u>. The Debtors shall only incur DIP Obligations and expend Cash Collateral and other DIP Collateral proceeds solely in accordance with this Final Order and the DIP Loan Documents, and for the specific purposes, and at the specific time periods, set forth in the Authorized Budget, subject to variances permitted in the Term Sheet (and in the case of the costs and expenses of the DIP Lender, in accordance with the DIP Loan Documents and this Final Order without being limited by the Authorized Budget). Without limiting the foregoing, the Debtors shall not be permitted to make any payments from the DIP Collateral, the proceeds of the DIP Facility, Cash Collateral, or otherwise on account of any pre-petition debt or obligation prior to the effective date of a confirmed chapter 11 plan or plans with respect to any of the Debtors, except (i) as provided in the "first day orders" (as such term is used in the Term Sheet) (subject to the Authorized Budget); or (ii) as expressly provided in other motions, orders, and requests for relief (subject to

the Authorized Budget), each such motions, orders, and requests for relief filed by the Debtors in form and substance reasonably acceptable to the DIP Lender prior to such motion, order, or request for such relief being filed.  Neither the DIP Facility, proceeds of the DIP Facility, nor Cash Collateral may be used by the Debtors to satisfy Cure Amounts (as defined in the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially all Assets of the Debtors; (II) Scheduling an Auction and Hearing to Consider the Sale of Assets; and (III) Approving the Form and Manner of Notice Thereof* [D.I. 71] (the "**Bidding Procedures Order**")) unless otherwise ordered by the Court (subject to the Authorized Budget).

        (h)    <u>DIP Liens</u>.  As security for the DIP Obligations, effective as of the Petition Date, the following security interests and liens, which shall immediately and without any further action by any Person be valid, binding, permanent, perfected, continuing, enforceable, and non-avoidable upon the entry of this Final Order, are hereby granted by each Debtor to the DIP Lender (all such security interests and liens granted to the DIP Lender pursuant to this Final Order and the DIP Loan Documents, including the AT&T Prepetition Liens to the extent of the Roll-Up Loans, the "**DIP Liens**"), on all of its right, title and interest in, to and under all property of the estates of the Debtors as provided for in section 541 of the Bankruptcy Code whether existing prior to the Petition Date or arising thereafter, including property of each Debtor's estate as of the Petition Date, and all of the Debtors' rights in property acquired post-petition whether now existing or hereafter acquired or arising and all proceeds thereof and recoveries related thereto, including the categories of property, rights, and interests enumerated in the Term Sheet (all of the foregoing collateral collectively referred to as the "**DIP Collateral**"):

        (I)    pursuant to section 364(c)(2) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable, and non-avoidable first priority lien on all unencumbered DIP Collateral, including the Debtors' claims and causes of action under

sections 502(d), 544, 545, 547, 548, 550 and 553 of the Bankruptcy Code and any other avoidance or similar action under the Bankruptcy Code or similar state or municipal law (collectively, the "**Avoidance Actions**") and the proceeds thereof, except to the extent that any such Avoidance Action is asserted against AT&T.  In addition, the DIP Collateral shall include the claims (and the proceeds of such claims) and non-exclusive standing to bring and settle any such claims (including, but not limited to, injunctive relief) that the Debtors may have against the Stalking Horse Bidder (or alternate Successful Bidder) (as each term is defined in the Bidding Procedures Order) as a result of such Bidder's breach of an agreement to purchase the Debtors' assets;

(II)     pursuant to section 364(d)(1) of the Bankruptcy Code, a fully perfected, binding, continuing, enforceable and non-avoidable first priority lien on all other DIP Collateral (including Cash Collateral), which DIP Lien (x) shall be subject to any adequate protection liens and (y) shall be senior to any and all valid, perfected, enforceable and non-avoidable pre-petition and post-petition liens, tax liens or other non-consensual liens in existence as of the Petition Date and properly perfected prior to the Petition Date.

(i)     Superpriority Administrative Claim Status.  In addition to the DIP Liens granted herein, effective immediately upon entry of this Final Order, all of the DIP Obligations shall constitute allowed superpriority administrative claims pursuant to section 364(c)(1) of the Bankruptcy Code, which shall have priority, subject only to the Carve-Out in accordance with this Final Order, over all administrative expense claims, adequate protection and other diminution claims, priority claims, and other unsecured claims, and all other claims against the Debtors or their estates, now existing or hereafter arising, of any kind or nature whatsoever, including administrative expenses or other claims of the kinds specified in, or ordered pursuant to, sections 105, 326, 328, 330, 331, 503(a), 503(b), 506(c), 507(a), 507(b), 546, 726, 1113, and 1114 or any other provision of the Bankruptcy Code or otherwise (the "**DIP Superpriority Claims**").  The DIP Superpriority Claims shall, for purposes of section 1129(a)(9)(A) of the Bankruptcy Code, be considered administrative expenses allowed under section 503(b) of the

Bankruptcy Code, shall be against each Debtor on a joint and several basis, and shall be payable from and have recourse to all pre-petition and post-petition property of the Debtors and all proceeds thereof, including Avoidance Actions and the proceeds thereof. Other than as expressly provided in the Term Sheet and/or this Final Order with respect to the Carve-Out, no costs or expenses of administration, including professional fees allowed and payable under sections 328, 330, or 331 of the Bankruptcy Code, or otherwise, that have been or may be incurred in these proceedings, or in any Successor Cases, and no priority claims are, or will be, senior to, prior to, or on a parity with the DIP Superpriority Claims or the DIP Obligations, or with any other claims of the DIP Lender arising under the DIP Loan Documents and/or this Final Order.

(j)     <u>Priority of DIP Liens and DIP Superpriority Claims</u>.  The DIP Liens and the DIP Superpriority Claims: (A) shall not be subject to sections 506, 510, 549, 550, or 551 of the Bankruptcy Code or the "equities of the case" exception of section 552 of the Bankruptcy Code, (B) shall not be subordinate to, or *pari passu* with, (x) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise or (y) any liens or claims of any Debtor or any direct or indirect subsidiary thereof against any Debtor or any of such Debtor's property, and (C) shall be valid and enforceable against any trustee or any other estate representative elected or appointed in the Chapter 11 Cases, upon the conversion of any of the Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code or in any other proceedings related to any of the foregoing (each, a "**Successor Case**"), and/or upon the dismissal of any of the Chapter 11 Cases.

3.     **Automatic Post-Petition Lien Perfection**.  This Final Order shall be sufficient and conclusive evidence of the validity, enforceability, perfection, and priority of the

DIP Liens without the necessity of filing or recording any financing statement, deed of trust, mortgage, or other instrument or document that may otherwise be required under the law of any jurisdiction, or the taking of any other action (including, for the avoidance of doubt, entering into any deposit account control agreement) to validate or perfect (in accordance with applicable law) such liens, or to entitle the DIP Lender to the priorities granted herein. Notwithstanding the foregoing, the DIP Lender may, in its sole discretion, enter into and file, as applicable, financing statements, mortgages, security agreements, notices of Liens, and other similar documents, and is hereby granted relief from the automatic stay of section 362 of the Bankruptcy Code in order to do so, and all such financing statements, mortgages, security agreements, notices, and other agreements or documents shall be deemed to have been entered into, filed or recorded as of the Petition Date. The applicable Debtors shall execute and deliver to the DIP Lender all such financing statements, mortgages, notices, and other documents as such parties may reasonably request to evidence and confirm the contemplated validity, perfection and priority of the DIP Liens granted pursuant hereto (including, for the avoidance of doubt, in respect to any DIP Collateral located outside the United States). Without limiting the foregoing, the DIP Lender may, in its discretion, file a photocopy of this Final Order as a financing statement with any recording officer designated to file financing statements or with any registry of deeds or similar office in any jurisdiction in which any Debtor has real or personal property, and in such event, the subject filing or recording officer shall be authorized to file or record such copy of this Final Order.

4. **Automatic Stay**. The automatic stay imposed under section 362(a) of the Bankruptcy Code is hereby vacated and/or modified pursuant to the terms of this Final Order and the DIP Loan Documents as necessary to (i) permit the Debtors to grant the DIP Liens and to

incur all liabilities and obligations to the DIP Lender, under the DIP Loan Documents, the DIP

Facility, and this Final Order, (ii) authorize the DIP Lender to retain and apply payments made in

accordance with the DIP Loan Documents and the AT&T Prepetition Credit Documents, as

applicable, (iii) to permit the DIP Lender to perform any act authorized under this Final Order

and the DIP Loan Documents, and (iv) otherwise to the extent necessary to implement and

effectuate the provisions of this Final Order and the DIP Loan Documents.  For the avoidance of

doubt, the DIP Lender (or its affiliate) may, without notice or further relief from this Court,

undertake the communications and/or messaging described in Paragraph 17(j) below and in the

Term Sheet, and the automatic stay under section 362 shall be deemed lifted without further

order or application to the Court with respect to such communications and/or messaging.

          5.     **Release of Claims**.  Subject only to the rights of parties in interest that are

specifically set forth in Paragraph 6 below, the releases provided for in the Term Sheet and in

this Final Order are approved, and effective as of the date of entry of this Final Order, any and all

claims of the Debtors and their bankruptcy estates against the DIP Lender and its affiliates

arising from or related to any matter whatsoever existing as of the date hereof are hereby waived

and released.  The foregoing waivers and releases shall include, without limitation, the waiver of

any and all rights to challenge the validity, perfection, priority, extent or enforceability of the

claims or liens securing the DIP Obligations, including without limitation seeking to equitably

subordinate or avoid the liens securing the DIP Obligations.  The foregoing waivers and releases

(and as shall be set forth in the definitive documentation for the DIP Facility in form and

substance satisfactory to the DIP Lender), shall be binding upon any trustee subsequently

appointed under chapter 7 or chapter 11 of the Bankruptcy Code or other successor in interest to

the Debtors.

6.    **Reservation of Certain Third Party Rights and Bar of Challenges and Claims**.  The Debtors' Stipulations, releases, and waivers shall be binding upon each of the Debtors and their respective estates in all circumstances upon entry of this Final Order.  All parties in interest (other than the Debtors), including any trustee subsequently appointed under chapter 7 or chapter 11 of the Bankruptcy Code, that have or have filed a motion seeking standing or have been granted standing shall have (a) seventy-five (75) days from the date of entry of the Interim Order, (b) in the case of any Committee appointed in these cases, sixty (60) days from the date of appointment of any such Committee, or (c) in the case of any trustee appointed in these cases, the later of seventy-five (75) days from the date of entry of the Interim Order and ten (10) days from the date of appointment of any such trustee if appointed prior to the Challenge Period Termination Date (collectively, (a), (b), and (c) shall be referred to as the "**Challenge Period**," and the date that is the next calendar day after the termination of the Challenge Period, in the event that no objection or challenge is raised during the Challenge Period, shall be referred to as the "**Challenge Period Termination Date**") (x) to object to or challenge the findings herein respecting the Debtors' Stipulations, releases, and waivers.  Upon the Challenge Period Termination Date, any and all such challenges and objections by any party (including, without limitation, any Committee(s), any chapter 11 or chapter 7 trustee appointed herein or in any Successor Case, and any other party in interest) shall be deemed to be forever waived and barred, and the Debtors' Stipulations, waivers, and releases shall be binding on all creditors, interest holders and parties in interest.  To the extent any such objection or complaint is filed, the findings herein shall nonetheless remain binding and preclusive on any Committee, any other official or unofficial committee, and on any other person or entity, except to the extent that such assertions were expressly challenged in such objection or complaint.  In the event of a

timely and successful challenge, this Court shall fashion the appropriate remedy with respect to AT&T, the DIP Lender, or any other party after hearing from all parties.

      7.    **Carve-Out**.  Subject to the terms and conditions contained in this paragraph, each of the DIP Liens, the DIP Superpriority Claims, and any adequate protection liens and claims shall be subject to payment of the Carve-Out in accordance with the terms of this Final Order:

      (a)    Carve-Out.  For purposes of this Final Order, "**Carve-Out**" means the sum of (i) the aggregate amount of any reasonable and unpaid fees, costs and expenses that were accrued or incurred prior to the Termination Date (defined below) by the professionals retained by the Debtors (collectively, the "**Professionals**") to the extent allowed by an order of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code but, in all cases, subject to the Authorized Budget, plus (ii) those reasonable fees, costs and expenses incurred by Professionals or any chapter 7 trustee on or after the Termination Date and subsequently allowed by order of the Bankruptcy Court pursuant to sections 330 and 331 of the Bankruptcy Code and, in all cases, subject to the Authorized Budget, in an aggregate amount not to exceed $20,000, plus (iii) fees required to be paid to the Clerk of the Bankruptcy Court and to the U.S. Trustee pursuant to 28 U.S.C. § 1930; provided that the amounts described in items (i) and (ii) of this paragraph shall not exceed $150,000 in the aggregate (the "**Carve-Out Cap**").  Following the Termination Date, the fees, costs, and expenses incurred by Professionals shall be applied first to any amounts remaining under any retainer funded by the DIP Lender prior to the Petition Date (a "**Prepetition Retainer**") until such Prepetition Retainer is exhausted and any amounts paid to Professionals by any means, including but not limited to a Prepetition Retainer, will reduce the Carve-Out and the Carve-Out Cap on a dollar-for-dollar basis.  For the avoidance of doubt, to the

extent a Professional holds a Prepetition Retainer, it must first use the retainer to reduce the amounts owed to it under items (i) and (ii).  To the extent the reasonable fees, costs, and expenses incurred by Professionals under items (i) and (ii) exceed the amount of the Prepetition Retainer, but are otherwise included in the Authorized Budget, such excess shall be paid pursuant to the Carve-Out described herein but subject to (a) the cap established in subsection (ii) hereof; (b) the Carve-Out Cap and (c) the Authorized Budget.

(b)    No Direct Obligation to Pay Professional Fees; No Waiver of Right to Object to Fees.  The DIP Lender shall not be responsible for the direct payment or reimbursement of any fees, costs, expenses or disbursements of any of the Professionals. Nothing herein shall be construed as consent to the allowance of any professional fees or expenses of any of the Debtors, the Professionals, any other official or unofficial committee in these Chapter 11 Cases or any Successor Cases or shall affect the right of the DIP Lender to object to the allowance and payment of such fees.

(c)    Payment of Allowed Professional Fees and Expenses Prior to a Termination Event.  Prior to the occurrence of a Termination Event (defined below), the Debtors shall be permitted to pay allowed fees and expenses of the Professionals (only to the extent such fees and expenses were incurred in accordance with the Authorized Budget), subject to this Final Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and any interim compensation procedures order entered by this Court.

8.    **Waiver of 506(c) Claims/Marshalling**.  (i) No costs or expenses of administration of the Chapter 11 Cases or any future proceeding that may result therefrom, including liquidation in bankruptcy or other proceedings under the Bankruptcy Code, shall be charged against or recovered from the DIP Collateral or the Cash Collateral pursuant to section

23

506(c) of the Bankruptcy Code or any similar principle of law without the prior written consent

of the DIP Lender and no such consent shall be implied from any other action, inaction, or

acquiescence by the DIP Lender; and (ii) in no event shall the DIP Lender be subject to the

equitable doctrine of "marshaling" or any other similar doctrine with respect to any of the DIP

Collateral or the Cash Collateral.

        9.    **After-Acquired Property**.  Except as otherwise expressly provided in this

Final Order, pursuant to section 552(a) of the Bankruptcy Code, all property acquired by the

Debtors on or after the Petition Date is not, and shall not be, subject to any lien of any person or

entity resulting from any security agreement entered into by the Debtors prior to the Petition

Date, except to the extent that such property constitutes proceeds of property of the Debtors that

is subject to a valid, enforceable, perfected, and unavoidable lien as of the Petition Date (or a

valid, enforceable and unavoidable lien that is perfected subsequent to the Petition Date solely to

the extent permitted by section 546(b) of the Bankruptcy Code) that is not subject to

subordination or avoidance under the Bankruptcy Code or other provisions or principles of

applicable law.

        10.    **Cash Collection and Borrower Account**.  From and after the date of the

entry of this Final Order, the proceeds of the DIP Facility, and all collections and proceeds of

any DIP Collateral, or services provided by any Debtor and all Cash Collateral that shall at any

time come into the possession, custody, or control of any Debtor, or to which any Debtor is now

or shall become entitled at any time, shall be promptly deposited in (i) the Borrower Account or

(ii) in (a) deposit accounts that are Controlled Accounts, (b) deposit accounts or lockbox

accounts that are swept on a daily basis into a Controlled Account or (c) deposit accounts subject

to a control agreement with the DIP Lender, each in accordance with the Term Sheet.  No funds

24

shall be disbursed from the Borrower Account or any such other account other than in accordance with the Term Sheet and the Authorized Budget.  Upon an Event of Default, no amounts (other than the Carve-Out) shall be disbursed from the Borrower Account or such other accounts.  All amounts in the Borrower Account and such other accounts shall remain as collateral for the DIP Facility, and shall not be subject to any liens, including in connection with any adequate protection liens, but shall be subject to the Carve-Out.  Upon the direction of the DIP Lender, at any time after the occurrence of a Termination Event and subject to the provisions of Paragraph 7, all proceeds in the Borrower Account or such other accounts shall be remitted to the DIP Lender for application to the DIP Obligations until payment in full, and the DIP Lender shall be entitled to take all action that is necessary or appropriate to effectuate the foregoing.  Unless otherwise agreed to in writing by the DIP Lender, the Debtors shall maintain no accounts except those identified in the *Order (A) Authorizing the Maintenance of Bank Accounts and Continued Use of Existing Business Forms and Checks, (B) Authorizing the Continued Use of Existing Cash Management System, and (C) Granting Limited Relief from the Requirements of Bankruptcy Code Section 345(b)* [D.I. 26] (the "**Cash Management Order**").  The Debtors and the financial institutions where the bank accounts authorized in the Cash Management Order are maintained are authorized and directed to remit funds in such accounts upon receipt of any direction to that effect from the DIP Lender.

   11. **Disposition of DIP Collateral**.

    (a) Unless the DIP Obligations are paid in full in cash upon the closing of a sale or other disposition of the DIP Collateral, the Debtors shall not sell, transfer, lease, encumber, or otherwise dispose of any portion of the DIP Collateral (or enter into any binding agreement to do so) without the prior written consent of the DIP Lender (and no such consent shall be implied from any other action, inaction, or acquiescence by the DIP Lender, or any order

25

of this Court), except as permitted in the DIP Loan Documents and this Final Order.  Except to

the extent otherwise expressly provided in this Final Order, the DIP Loan Documents or

consented to the DIP Lender, all proceeds from the sale, transfer, lease, encumbrance, or other

disposition of any DIP Collateral shall be remitted to the DIP Lender for application to

repayment of the DIP Obligations, in accordance with the terms of this Final Order and the DIP

Loan Documents.

> 12. **Termination; Rights and Remedies Upon Termination Event**.

>> (a)    The DIP Facility and the Borrower's right to use proceeds of the

DIP Facility and Cash Collateral shall automatically terminate without further notice or Court

proceedings, unless extended with the prior written consent of the DIP Lender, upon the earlier

of (i) six (6) months following the Petition Date (the "**Scheduled Termination Date**"); (ii) the

date of acceleration of any outstanding borrowings under the DIP Facility pursuant to an Event

of Default; (iii) the date a plan of reorganization or plan of liquidation for one or more of the

Debtors becomes effective; (iv) the date on which any of the Debtors agrees to a sale of all or

substantially all of its assets in one or more sales that does not provide for the payment in full of

all DIP Obligations at closing and that the DIP Lender does not consent to (including, without

limitation, a sale that requires such Debtor to use Cash Collateral or proceeds from, or that would

otherwise be available to repay, the DIP Facility to pay Cure Amounts in connection with a sale

or otherwise during these cases); (v) the Debtors do not receive a Qualified Bid by the Bid

Deadline (each as defined in the Bidding Procedures Order); (vi) the Debtors abandon the

Approved Sale (as defined in the Term Sheet) or the Approved Sale is otherwise terminated; or

(vii) the Approved Sale is modified without the DIP Lender's prior written consent (each a

"**Termination Date**"), which consent shall not be unreasonably withheld.  The Termination Date

herein supersedes any termination or maturity date in any documentation governing the Senior Prepetition Indebtedness.

        (b)    The occurrence of an "Event of Default", as set forth in the Term Sheet and as set forth below, or any other material breach, default or other violation by any of the Debtors of the terms and provisions of this Final Order shall constitute a termination event under this Final Order and the DIP Loan Documents (each, a "**Termination Event**") unless waived in writing by the DIP Lender.  Upon the occurrence of a Termination Event, but subject to the Term Sheet, any automatic stay otherwise applicable to the DIP Lender is hereby modified, without requiring prior notice to or authorization of this Court, to the extent necessary to permit the DIP Lender to exercise any and all rights and remedies available to it under the Term Sheet and applicable law.

        (c)    "**Events of Default**" shall include the occurrence of any of the following:

    (i)    the Interim Order is not entered within three (3) days after the motion seeking authority to enter into the DIP Facility is filed with the Bankruptcy Court, or at any time ceases to be in full force and effect (unless superseded by the Final Order), or is vacated, reversed or stayed, or modified or amended without the prior written consent of the DIP Lender;

    (ii)    this Final Order is not entered within twenty-one (21) days after the Petition Date or at any time ceases to be in full force and effect, or is vacated, reversed or stayed, or modified or amended without the prior written consent of the DIP Lender;

    (iii)    breach by any Debtor (or its subsidiaries or affiliates, as applicable) of (a) compliance with the Authorized Budget, (b) any Sale Process Covenant or case milestone, (c) the Variance Covenant, (d) any payment obligations under the DIP Loan Documents or in the Financing Orders or (e) any other covenant or agreement contained in the DIP Loan Documents or in the Financing Orders, subject, in the case of the foregoing clauses (d) and (e) (in respect of affirmative covenants only), to a grace period to be as provided for in the definitive documentation;

(iv)    any of the Cases is dismissed or converted to a case under Chapter 7 of the Bankruptcy Code; a Chapter 11 Trustee or an examiner with enlarged powers relating to the operation of the business of any Debtor (powers beyond those expressly set forth in section 1106(a)(3) and (4) of the Bankruptcy Code) is appointed in any of the Cases; or any other superpriority claim (other than the Carve-Out (as defined below)) or grant of any other lien (including any adequate protection lien) which is *pari passu* with or senior to the DIP Obligations and liens securing the DIP Obligations is granted or allowed in any of the Cases;

(v)     the filing of any pleading by any Debtor seeking, or otherwise consenting to or supporting, any of the matters set forth in clause (iv) above unless otherwise consented to by the DIP Lender;

(vi)    payment of principal or interest on any pre-petition claim, if any, other than pursuant to an order of the Bankruptcy Court;

(vii)   the grant of any adequate protection rights to any holder of a pre-petition claim or interest unless otherwise consented to by the DIP Lender;

(viii)  the Bankruptcy Court enters an order granting relief from the automatic stay to any person asserting a claim or other right against any of the Debtors relating to any alleged pre-petition actions or omissions unless otherwise consented to by the DIP Lender;

(ix)    the Termination Date occurs;

(x)     an "Event of Default" under the DIP Loan Documents occurs which is not otherwise cured as provided for in the Financing Orders, the DIP Loan Documents or waived;

(xi)    the waiver, loss or lapse of the exclusivity period as provided for in section 1122 of the Bankruptcy Code without the prior written consent of DIP Lender;

(xii)   the filing of any plan of reorganization or a plan of liquidation without the prior written consent of the DIP Lender, which consent shall not be unreasonably withheld, or the Debtors seek or support confirmation of a plan of reorganization or liquidation that is not reasonably acceptable to the DIP Lender;

(xiii)  the Debtors or any other party (including, without limitation, any Committee, if appointed) (a) engage in or support any challenge to the validity, perfection, priority, extent or enforceability of the DIP Facility or the liens on or security interest in the assets of the Debtors securing the DIP Obligations, or (b) commence any actions or proceedings against the DIP Lender or any of its affiliates;

(xiv)   the allowance of any claim or claims under section 506(c) or 552(b) of the Bankruptcy Code against or with respect to any of the DIP Collateral;

28

(xv) the filing by any of the Debtors of any motion or proceeding, or the entry by the Bankruptcy Court of any order, which could reasonably be expected to result in material impairment of the DIP Lender's rights under the DIP Loan Documents or Financing Orders;

(xvi) any Debtor moves the Bankruptcy Court to enter, modify or amend a Financing Order without receipt of prior written consent to the form of the proposed order from the DIP Lender;

(xvii) the Debtor fails or is unable to operate in the ordinary course of business or gives notice that it does not believe it can operate in the ordinary course of business at any time prior to the sale of all or substantially all of its assets;

(xviii) the entry by the Bankruptcy Court of a debtor-in-possession financing order or amendment thereto, the form and substance of which is not consented to by the DIP Lender;

(xix) the entry by the Bankruptcy Court of a debtor-in-possession financing order or amendment thereto that does not expressly provide for the entirety of the Senior Prepetition Indebtedness being converted to Roll-Up Loans;

(xx) the Debtors seek or propose to sell all or substantially all of their assets and such sale does not provide for the payment in full in cash of the Debtors' obligation under the DIP Facility and the DIP Lender has not otherwise consented to such sale;

(xxi) unless the DIP Lender shall have provided its prior written consent, or all DIP Obligations have been paid in full in cash, the entry by the Bankruptcy Court in any of these Chapter 11 Cases or any Successor Cases any order (including any order confirming any plan of reorganization or liquidation) that authorizes any of the following: (i) the obtaining of credit or the incurring of indebtedness that is secured by a security, mortgage, or collateral interest or other lien on all or any portion of the DIP Collateral, and/or that is entitled to administrative priority status, in each case that is superior to or *pari passu* with the DIP Liens, the DIP Superpriority Claims, and/or the other DIP Protections; (ii) the use of Cash Collateral for any purpose other than to pay in full the DIP Obligations, or as otherwise permitted in the DIP Loan Documents and this Final Order, or (iii) any modification of the DIP Lender's rights under this Final Order or the DIP Loan Documents;

(xxii) the Debtors abandon the Sale; or the Sale is otherwise terminated or modified without the DIP Lender's prior written consent;

(xxiii) the Debtors fail to have entered into a stalking horse agreement to which the DIP Lender has consented on or before October 18, 2016;

(xxiv) the Debtors fail to file a liquidating plan that pays the DIP Lender in full, to which the DIP Lender has consented, on or before October 28, 2016; or

(xxv) the Debtors fail to obtain an order confirming the plan referenced in section (xxiv) of this Paragraph, acceptable to the DIP Lender, on or before December 30, 2016.

(d)    Subject to the provisions of Paragraph 6 hereof, all proceeds realized in connection with the exercise of the rights and remedies of the DIP Lender shall be turned over <u>first</u> to the DIP Lender for application to the DIP Obligations under, and in accordance with the provisions of, the DIP Loan Documents and this Final Order until payment in full of all of the DIP Obligations.

13.    **Restriction on Use of Proceeds**.  Notwithstanding anything herein to the contrary, no loans and/or proceeds from the DIP Facility, DIP Collateral, Cash Collateral (including any retainer held by any professionals for the below-referenced parties), or any portion of the Carve-Out may be used by (a) any Debtor, any Committee, or trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of a Committee) to investigate or prosecute any challenge (including any litigation or other action) in connection with the value of the DIP Collateral (or to pay any professional fees and disbursements incurred in connection therewith) at any time; or (b) any Debtor, any Committee, or any trustee or other estate representative appointed in these Chapter 11 Cases or any Successor Cases, or any other person, party, or entity (including any of the Professionals or the members of a Committee) to (or to pay any professional fees and disbursements incurred in connection therewith): (i) request authorization to obtain post-petition loans or other financial accommodations that do not fully repay the DIP Obligations pursuant to section 364(c) or (d) of the Bankruptcy Code, or otherwise, other than from the DIP Lender, or to seek any modification to this Final Order not approved by the DIP Lender; (ii) investigate, assert, join, commence, support, or prosecute any action for any claim, counter-claim, action, proceeding, application, motion, objection, defense,

or other contested matter seeking any order, judgment, determination, or similar relief against, or

adverse to the interests of, in any capacity, the DIP Lender, its respective affiliates, assigns or

successors and the respective officers, directors, employees, agents, attorneys, representatives

and other advisors of the foregoing, with respect to any transaction, occurrence, omission, action,

or other matter (including formal or informal discovery proceedings in anticipation thereof),

including, but not limited to (A) any challenges raised during the Challenge Period and any

Avoidance Actions or other actions arising under chapter 5 of the Bankruptcy Code; (B) any

action with respect to the validity, enforceability, priority, and extent of the DIP Obligations, the

obligations under the AT&T Prepetition Credit Documents, or the validity, extent, and priority of

the DIP Liens; (C) any action seeking to invalidate, set aside, avoid, or subordinate, in whole or

in part, the DIP Liens or the other DIP Protections; (D) any action seeking, or having the effect

of, preventing, hindering, or otherwise delaying any or all of the DIP Lender's assertion,

enforcement, or realization on the Cash Collateral or the DIP Collateral in accordance with the

DIP Loan Documents or this Final Order; and/or (E) any action seeking to modify any of the

rights, remedies, priorities, privileges, protections, and benefits granted to any or all of the DIP

Lender hereunder or under the DIP Loan Documents, or any payments made thereunder or in

respect thereof; (iii) pay any fees or similar amounts to any person (other than the DIP Lender)

who has proposed or may propose to purchase interests in any of the Debtors without the prior

written consent of the DIP Lender, which shall not be unreasonably withheld; or (iv) use or seek

to use Cash Collateral or sell or otherwise dispose of DIP Collateral unless otherwise permitted

hereby, without the prior written consent of the DIP Lender, which shall not be unreasonably

withheld.

14.    **Proofs of Claim**.  Notwithstanding any order entered by this Court in relation to the establishment of a bar date in any of these Chapter 11 Cases or Successor Cases to the contrary, the DIP Lender will not be required (but is authorized) to file proofs of claim in any of the Cases or Successor Cases for any claim allowed herein.

15.    **Preservation of Rights Granted Under the Final Order**.

(a)    No Non-Consensual Modification or Extension of Final Order. The Debtors waive any right to seek any amendment, modification, or extension of this Final Order (including through any chapter 11 plan of reorganization or liquidation) without the prior written consent of the DIP Lender, and no such consent shall be implied by any other action, inaction, or acquiescence of the DIP Lender.  In the event any or all of the provisions of this Final Order are hereafter modified, amended, or vacated by a subsequent order of this Court or any other court, such modification, amendment, or vacatur shall not affect the validity, perfection, priority, allowability, enforceability, or non-avoidability of any advances, payments, or use of cash authorized or made hereby or pursuant to the DIP Loan Documents, or lien, claim, priority or other DIP Protections authorized or created hereby or pursuant to the DIP Loan Documents.  Based on the findings set forth in this Final Order and in accordance with section 364(e) of the Bankruptcy Code, which is applicable to the DIP Facility, in the event any or all of the provisions of this Final Order are hereafter reversed, modified, vacated, or stayed by a subsequent order of this Court or any other court, the DIP Lender shall be entitled to the protections provided in section 364(e) of the Bankruptcy Code, and notwithstanding any such reversal, modification, vacatur, or stay, any use of Cash Collateral or any DIP Obligations or any DIP Protections incurred or granted by the Debtors prior to the actual receipt of written notice by the DIP Lender of the effective date of such reversal, modification, vacatur, or stay shall remain in full force and effect and be binding on all parties in interest and be governed in all respects by

32

the original provisions of this Final Order (and shall maintain their respective priorities as provided by this Final Order), and the DIP Lender shall be entitled to all of the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted pursuant to section 364(e) of the Bankruptcy Code, this Final Order, or the DIP Loan Documents.

        (b)    <u>Survival of Final Order</u>.  The provisions of this Final Order and the DIP Loan Documents and Maintenance Agreements, any actions taken pursuant hereto or thereto, and all of the DIP Protections, and all other rights, remedies, liens, priorities, privileges, protections, and benefits granted to any or all of the DIP Lender, or AT&T Capital (in its capacity as prepetition lender) shall, in each case, survive, and shall not be modified, impaired, or discharged by, the entry of any order confirming any plan of reorganization or liquidation in any Chapter 11 Case or Successor Case, converting any Chapter 11 Case to a case under chapter 7, dismissing any of the Chapter 11 Cases, withdrawing of the reference of any of the Chapter 11 Cases or any Successor Cases, providing for abstention from handling or retaining of jurisdiction of any of the Chapter 11 Cases or any Successor Case in this Court, or terminating the joint administration of these Chapter 11 Cases or any Successor Case or by any other act or omission. The terms and provisions of this Final Order, including all of the DIP Protections and all other rights, remedies, Liens, priorities, privileges, protections, and benefits granted to the DIP Lender or AT&T Capital (in its capacity as prepetition lender) shall, in each case, continue in full force and effect and be binding on all parties in interest notwithstanding the entry of any such order, and such DIP Protections, and such other rights, remedies, Liens priorities, privileges, protections and benefits, shall continue in full force and effect in these Chapter 11 Cases and in any Successor Cases and after dismissal of any thereof, and shall maintain their respective

priorities as provided by this Final Order. The DIP Obligations shall not be discharged by the

entry of an order confirming any chapter 11 plan of reorganization or liquidation, the Debtors

having waived such discharge pursuant to section 1141(d)(4) of the Bankruptcy Code.

16.    **Insurance Policies**. Upon entry of this Final Order, the DIP Lender shall

be, and shall be deemed to be, without any further action or notice, named as an additional

insured and loss payee, as applicable, on each insurance policy maintained by the Debtors that in

any way relates to the DIP Collateral, and the Debtors shall take such actions as are reasonably

requested by the DIP Lender from time to time to evidence or effectuate the foregoing.

17.    **Other Rights and Obligations**.

(a)    Expenses. As provided in the Term Sheet (and without limiting

the Debtors' respective obligations thereunder), on the Termination Date the applicable Debtors

will pay all reasonable expenses incurred by the DIP Lender (including the reasonable fees and

disbursements of the DIP Lender's professionals, including professionals engaged by counsel to

the DIP Lender) in connection with the preparation, execution, delivery, and administration of

the DIP Loan Documents, the Interim Order, this Final Order, and any other agreements,

instruments, pleadings, or other documents prepared or reviewed in connection with any of the

foregoing, subject to review and objection by the U.S. Trustee and Committee, if any.

(b)    Binding Effect. The provisions of this Final Order, including all

findings herein, and the DIP Loan Documents shall be binding upon all parties in interest in

these Chapter 11 Cases, in any Successor Cases, or upon dismissal of any such Chapter 11 Case

or Successor Case, including the DIP Lender, any Committee, and the Debtors and their

respective estates, successors and assigns (including any chapter 7 or chapter 11 trustee

hereinafter appointed or elected for the estate of any of the Debtors, an examiner appointed

pursuant to section 1104 of the Bankruptcy Code, or any other fiduciary or responsible person

34

appointed as a legal representative of any of the Debtors or with respect to the property of the estate of any of the Debtors); provided, however, that the DIP Lender shall have no obligation to permit the use of Cash Collateral or to extend any financing to any chapter 7 or chapter 11 trustee or other responsible person appointed for the estates of the Debtors in any Chapter 11 Case or Successor Case.

(c)     No Waiver.  The failure of the DIP Lender to seek relief or otherwise exercise its rights and remedies under this Final Order, the DIP Loan Documents, or otherwise (or any delay in seeking or exercising same) shall not constitute a waiver of any of such parties' rights hereunder, thereunder, or otherwise.  Except as prohibited by this Final Order, the entry of this Final Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair, any right or ability of the DIP Lender under the Bankruptcy Code or under non-bankruptcy law to (i) request conversion of these Chapter 11 Cases or any Successor Cases to cases under chapter 7, dismissal of these Chapter 11 Cases or any Successor Cases, or the appointment of a trustee or examiner in these Chapter 11 Cases or any Successor Cases, or to oppose the use of Cash Collateral in any Successor Case, (ii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, any chapter 11 plan or plans with respect to any of the Debtors or seek early termination of the Debtors' exclusive rights to propose a plan under the Bankruptcy Code, or (iii) except as expressly provided herein, exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender.

(d)     No Third Party Rights.  Except as explicitly provided for herein or in any DIP Loan Document, this Final Order does not create any rights for the benefit of any third party, creditor, equity holder, or direct, indirect, or incidental beneficiary.

(e)    <u>Amendments</u>.  The Debtors and the DIP Lender are authorized and empowered, without further notice and hearing or approval of this Court, to make any non-material modifications to the DIP Loan Documents, in accordance with the Term Sheet.

(f)    <u>Inconsistency</u>.  In the event of any inconsistency between the terms and conditions of the DIP Loan Documents and of this Final Order, the provisions of this Final Order shall govern and control.

(g)    <u>Enforceability</u>.  This Final Order shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rule 7052 and shall take effect and be fully enforceable *nunc pro tunc* to the Petition Date immediately upon execution hereof. Notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062 or 9024 or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, this Final Order shall be immediately effective and enforceable upon its entry, and there shall be no stay of execution or effectiveness of this Final Order.

(h)    <u>Reservation of Rights</u>.  Nothing in this Final Order shall be deemed to constitute the consent of the DIP Lender, and the DIP Lender expressly reserves the right to object to entry of any order of the Bankruptcy Court that provides for the sale or other disposition of all or substantially all of the assets of the Debtors (or any other sale or other disposition of assets of any of the Debtors outside the ordinary course of business) to any party unless, in connection and concurrently with any such event, the proceeds of such sale are or will be sufficient to pay in full the DIP Obligations on the closing date of such sale.

(i)    <u>Headings</u>.  Paragraph headings used herein are for convenience only and are not to affect the construction of, or to be taken into consideration in, interpreting this Final Order.

(j)    <u>Messaging</u>. (x) In the event any Termination Date or Termination Event occurs, (y) upon the occurrence of a default under the DIP Loan Documents or (z) in the event the DIP Lender (1) receives notice from the Debtors that they are unable to operate in the ordinary course of business or (2) prior to the receipt of any notice from the Debtors, the DIP Lender believes in good faith that the Debtors are unable to operate in the ordinary course of business, then the DIP Lender (or its affiliate) shall, without notice, have the right (but not the obligation) (and the automatic stay under section 362 shall be deemed lifted without further order or application to the Court), to communicate to the Debtors' primary account holders and the customers' wearable phone and locater devices of the Business (as defined in the Supplemental Maintenance Agreement) by text message and/or electronic mail, (a) the impending shutdown of the servicing and operation by the Debtors of the wearable phone and locater devices, (b) where such account holders and customers may obtain further information with respect to such impending shutdown and (c) if the DIP Lender (or its affiliates) so elects, the offering and solicitation by the DIP Lender (or its affiliates) of an alternative communication service to such customers and (ii) at the DIP Lender's (or its affiliates) written request, to require (or cause its affiliates to require) the Debtors to promptly deliver the message set forth in <u>Exhibit 2</u> to the Supplemental Maintenance Agreement to the primary account holders and the customers' wearable phone and locater devices of the Business, by text message and/or electronic mail.

18.    **Retention of Jurisdiction**. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

Dated: _October 27,_ 2016
Wilmington, Delaware

_____
KEVIN GROSS
UNITED STATES BANKRUPTCY JUDGE